SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, Decedent, Plaintiffs,

Index No.: 101628/2017

- Against -

**NOTICE OF MOTION FOR AN ORDER OF RECUSAL AND/OR WITHDRAWAL OF JUDGE JOAN MADDEN AND TO ASSIGN A NEW JUDGE TO THIS IMPORTANT 911 CIVIL RIGHTS MEDICAL MALPRACTICE ACTION**

RECEIVED
SEP 18 2019
NEW YORK
COUNTY CLERK'S OFFICE

RECEIVED
SEP 18 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

**RETURNABLE SEPTEMBER 27, 2019**

**TO JUDGE MADDEN**

GENERAL CLERK'S OFFICE
NYS SUPREME COURT - CIVIL
SEP 18 2019
RECEIVED

Mount Sinai Hospital, John Doe, Jane Doe, Et als., Defendants,

**PLEASE TAKE NOTICE** that upon the annexed Affidavit of Alberto Betancourt and Ada Rodriguez, Plaintiffs Pro Se, sworn to on September 18th, 2019, and upon the exhibits attached thereto submitted in support of the foregoing Plaintiffs' Notice of Motion, and also upon all the pleadings and proceedings had hereto before in this action, the Plaintiffs will move this Supreme Court, at Motion Submission Part Courtroom (Room 130), to be held at the Courthouse, 60 Centre Street, New York, New York, on the day of 27th of September 2019 at 9:30 am or as soon thereafter as Plaintiffs or their attorney may be heard for an Order:

a. Pursuant to the ABA Model Code of Judicial Conduct, Canons 1, 2, and 3, the CPLR, the New York State Constitution and the United States Constitution, recusing and or withdrawing the judge assigned to the case under the I.A.S. (Judge Joan Madden) and

b. Upon issuing an order of recusal or withdrawal of the presiding judge thereof, assigning a new judge to the case, based upon the foregoing facts and circumstances described herein and in the attached Plaintiffs' Affidavit in Support of Notice of Motion of Recusal/Withdrawal and evidence annexed in support thereto as well as prior proceedings had hereto before in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

c. Granting plaintiffs such further relief as this Supreme Court deems just and proper under the Law, the ABA Model Code of Judicial Conduct, Canons 1, 2, and 3, the CPLR, the New York State Constitution and the United States Constitution, and **"in the interest of Justice."**

Respectfully yours,

Dated September 18, 2019

Alberto Betancourt
Ada Rodriguez, ***deceased in the Material World and Alive in Spirit***
601 West 112th Street, Apt.5B
New York, New York 10025
(917) 623-6873

RECEIVED
SEP 18 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

TO:

Kaufman Borgeest & Ryan LPP
Eldar Mayouhas
Attorneys for defendants Mount Sinai Hospital et al.,
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600

The United States Congress
The New York State Congress

RECEIVED
SEP 18 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, Decedent, Plaintiffs,

Index No.: 101628/2017

- Against -

**PLAINTIFFS AFFIDAVIT IN SUPPORT OF NOTICE OF MOTION FOR AN ORDER TO RECUSE AND/OR WITHDRAW PRESIDING JUDGE JOAN MADDEN AND TO ASSIGN A NEW JUDGE TO THIS IMPORTANT 911 CIVIL RIGHTS MEDICAL MALPRACTICE CIVIL ACTION**

RECEIVED
SEP 18 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

**RETURNABLE SEPTEMBER 27, 2019**

Mount Sinai Hospital, John Doe, Jane Doe, Et als.,
Defendants,

I Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, *deceased in the material world but alive in Spirit and present here today*, plaintiffs pro se, hereby state the following is true under penalty of perjury:

## Judge Joan Madden is Respectfully Asked to Recuse Herself from this Important 911 Civil Rights Medical Malpractice Civil Action

1. Plaintiffs respectfully submit this affidavit in support of the present meritorious motion properly made on notice seeking relief pursuant to the ABA Model Code of Judicial Conduct, Canons 1, 2, and 3, the CPLR, the New York State Constitution and the United States Constitution, recusing and or withdrawing the judge assigned to the case under the I.A.S. (Judge Joan Madden), and upon issuing an order of recusal or withdrawal of the presiding judge thereof,

assigning a new judge to the case, based upon the foregoing facts and circumstances described herein and in the attached Plaintiffs' Affidavit in Support of Notice of Motion of Recusal/Withdrawal and evidence annexed in support thereto as well as prior proceedings had hereto before in this important 911 Civil Rights Medical Malpractice civil action.

2. As plaintiffs have shown in their recently filed Notice of Motion to Reargue, Reconsider and Correct Prior Orders, filed September 17, 2019, and made returnable September 26, 2019, plaintiffs have experienced too many instances of court bias and prejudice from the court (Judge Madden) that has adversely injured their rights and, to some extent, damaged their case already.

3. Also as plaintiffs have fully shown in their September 17, 2019 Notice of Motion, Judge Madden has permitted and entertained the ongoing unethical and abusive conduct being exercised by counsel Eldar Mayouhas and the firm Kaufman, Borgeest and Ryan that is representing the powerful and influential corporation Mount Sinai Hospital.

4. Additionally, it is submitted that Judge Madden's impartiality has been impaired by reason of the fact that she has acted and is acting under the influence of the powerful influential corporation Mount Sinai Hospital, as the record shows.

5. Judge Madden's most recent order filed September 3, 2019 prohibiting plaintiffs from filing future motions made on notice and declaring/directing that only motions made by order to show cause are to be filed in this civil action is in fact arbitrary and capricious constituting an excessive, unauthorized and unconstitutional exercise of the judge's power and an abuse of discretion, thereby depriving plaintiffs' constitutional due process rights. See Judge Madden's order filed September 3, 2019 annexed hereto as **Exhibit "A"**.

6. The court is referred to the plaintiffs' Notice of Motion to Reargue, Reconsider and Correct Prior Orders, filed September 17, 2019 for a full understanding of the foregoing matter concerning Judge Madden's unethical and abusive actions.

7. In support of the present Notice of Motion for an Order to Recuse and/or to Withdraw the Presiding Judge Joan Madden, plaintiffs hereby incorporate the said "Notice of Motion to Reargue, Reconsider and Correct Prior Orders, for Court Assigned Expert Witness and Counsel, to Stay Proceedings and the Court's Prior Orders, to Extend Time of Service and Filing of Complaint, to Impose Sanctions Against Attorney and the Firm Kaufman, Borgeest, and Ryan LPP, to Strike Prior Order as Unconstitutional Depriving Plaintiffs' Due Process Rights, and to Recuse and/or Withdraw the Judge Assigned to the Case," filed September 17, 2019, together with all the exhibits and evidence attached thereto.

8. It is stated that Judge Madden's impartiality is reasonably questioned and has been seriously compromised by reason of the foregoing.

9. Principally, indigent self-represented plaintiffs honestly believe and state under oath, and proceedings in the record do reveal, that Judge Madden, in fact, is exercising certain personal bias and prejudice against them.

10. Also in presiding over the case Judge Madden has demonstrated, insofar as a reasonable mind may ascertain of the judge's actions thereof, an intention to injure plaintiffs and to damage their case, by inter alia unlawfully disregarding and prohibiting plaintiffs' rights while tolerating and allowing the ongoing abuse and misconduct of the corporate defendant Mount Sinai Hospital's attorneys to continue being exercised against plaintiffs in her court.

11. Furthermore, the judge's conduct gives rise to an inference that she is not performing her judicial duties in a manner that promotes fairness and decorum; and plaintiffs in their affidavits have stated that Judge Madden is inclined to act in favor of the corporation defendant Mount Sinai Hospital or that the judge is not being impartial at all, which judicial conduct is in violation of the plaintiffs' civil and constitutional rights to due process, the CPLR, and the ABA Model Code of Judicial Conduct.

12. ***It is respectfully submitted that in litigating this case the indigent plaintiffs have experienced much unfairness, bias and prejudice both from the corporation defendants Mount Sinai Hospital and the court Judge Madden; and judging by the court's order dated August 29, 2019 and filed September 3, 2019 it must be reasoned that such judicial action denying indigent plaintiffs' request for court assigned attorney and failing to decide or ignoring their request for court assigned expert witness doctor primarily benefits the corporation defendants Mount Sinai Hospital, constituting what can be deemed as "judicial corporate favoritism."***

13. Again there is no basis at law warranting the decision by the court that basically limits and prohibits the rights and powers of civil litigants to properly and fully litigate their case under the law. The court's order of today, which at first sight is unprecedented and unsupported by the record, directly violates the Law, the New York Civil Practice Law and Rules, the New York State Constitution, the United States Constitution and it constitutes a patent violation of plaintiffs' rights to due process.

14. As such it is submitted that at this juncture in the case one sincerely doubts Judge Madden's ability to render a proper and fair determination. Judge Madden's decision was in fact influenced and motivated by corporation Mount Sinai Hospital's counsel Mayouhas' false, misleading and unethical statements at the August 15, 2019 hearing that verbatim "*plaintiffs are making many motions and it is costing our office money*," in effect a request that the court limits the plaintiffs' rights in this case.

15. It is noted and as was stated above, that this is not the first time that counsel Mayouhas has made such frivolous and unethical requests to Judge Madden that basically asks the court to limit and to deprive the plaintiffs' rights under the law and to adversely affect their ability to litigate their action against corporate Mount Sinai Hospital Defendants. The record clearly supports our conclusion today.

16. **Accordingly plaintiffs respectfully submit that they have lost faith in Judge Madden's competence to act neutral and fair under the law and to make decisions, orders and judgment respecting plaintiffs' rights without exercising any degree of bias and prejudice, and particularly without lending any favors to the opposite side corporation Mount Sinai Hospital.**

17. **The impartiality and decorum of the court today is seriously questionable and under the circumstances present in this case, therefore, the court (Judge Madden) is respectfully asked to recuse herself from this important 911 Medical Malpractice Civil Action.**

18. Furthermore, after careful consideration of the facts and circumstances of the case, we submit that the record supports that since commencing their case the indigent self-represented plaintiffs have not been and are not being treated fairly in Judge Madden's court and that the New York State Supreme Court, as it stands now, is not a proper forum where their important 911 Civil Rights and Medical Malpractice claims can be properly and fairly adjudicated, and based on the foregoing reasons.

19. Also for the record it is submitted that the court's orders appear to be one sided and extending favors to the corporation defendants Mount Sinai Hospital since the presiding judge knows that already the corporation defendants Mount Sinai Hospital have their expert witness doctors available and ready to testify under oath against any claims of negligence and wrongful death presented by plaintiffs in the complaint.

20. Hence viewing the legal matters at hand, it is now obvious that the presiding judge (J Madden) is not acting fairly under the law and that plaintiffs are being aggrieved consequently. The record supports our conclusion.

21. Furthermore, based on all the foregoing reasons herein mentioned above, recusal is demanded in order to allow plaintiff the right to a fair trial, to due process, substantive and procedural, to equal access to the judicial system, to a meaningful opportunity to litigate their claims in a manner that is both fair and free of bias and prejudice, and to obtain Justice.

22. ***Clearly Judge Madden, as can be evinced from her recent controversial orders denying plaintiffs' request for court appointed counsel as of right under the US Constitution but without even stating anything regarding the court's discretionary power to assign counsel to indigent self-represented civil litigants in a case where clearly there are obvious legal differences between the parties that if left uncorrected by the court will inevitably result in undue prejudice against the civil litigants and possibly damage their case, ignoring evading and not deciding plaintiffs' request for court assigned expert witness doctor, while at the same time requiring plaintiffs to serve and file the complaint within 60 days from her order of August 1, 2019, and then suddenly and without legal cause issuing an order unconstitutionally prohibiting the plaintiffs' right to file future motions properly made on notice in the case, has indeed exercised judicial partiality and gratuitous corporate favoritism.***

23. Judge Madden's order of September 3, 2019 constitute an abuse of judicial power and discretion and the exercise of undue bias and prejudice against plaintiffs that has generally removed any faith and trust that plaintiffs may have in the judge and her ability to supervise their case fairly and to render a just determination or final judgment after trial.

24. ***We sincerely say, with all due respect to the presiding judge, that in rendering her recent orders, which for all intents and purposes under the law do present unquestionable elements of bias and prejudice toward indigent pro se plaintiffs, in this particular case Judge Madden has failed to uphold her oath and duty to Justice and such unethical judicial conduct must not be reasoned with nor tolerated, and certainly not in this important civil action that concerns the loss of life and severe pains and sufferings committed by the corporate defendants Mount Sinai Hospital against plaintiff Ada Rodriguez.***

25. It is submitted these inappropriate, abusive or unfair actions by the assigned judge are in fact allegedly purposeful and calculated judicial actions intended to weaken and to damage plaintiffs' case and all to the benefit of the powerful influential corporate defendant Mount Sinai Hospital acting through their Wall Street Law Firm of Kaufman, Borgeest and Ryan.

26. That in so doing Judge Madden has demonstrated an inability to act fairly and free of bias and prejudice in the exercise of her judicial duties in this case and, furthermore, the judge has shown undue indifference toward the rights and interests of the civil litigants.

27. As the recent plaintiffs' Notice of Motion filed September 17, 2019 shows fully, Judge Madden's inappropriate unethical conduct has clearly given rise to an inference of bias prejudice and abuse that the judge is practicing against indigent civil litigants in this important 911 Civil Rights Medical Malpractice case, constituting judicial misconduct as far as can be perceived by a reasonable person and understood under the law.

28. That Judge Madden's inappropriate, unfair, unethical and/or abusive conduct extends beyond matters of court orders that have been rendered against indigent plaintiffs and/or in favor of the corporation defendants Mount Sinai Hospital in this case, and which judicial misconduct, if it is allowed to continue, will ultimately damage the plaintiffs' case beyond repair.

29. Again we reiterate that in this case there have been far too many instances of the court (Judge Madden) exercising bias and prejudice toward civil litigants, inter alia (a) holding communications and conferences with the corporation defendants Mount Sinai Hospital's attorneys without allowing plaintiffs to participate, (b) denying plaintiffs the right to receive ex parte orders that the assigned judge had signed on plaintiffs' OSC, (c) failing to inform plaintiffs of court adjournments and hearings, (d) rendering orders that are incomplete or that ignore and do not decide important requests made by plaintiffs, (e) allowing the submission of papers by defendants seeking the reargument and vacatur of a prior judge Goetz's March 18, 2108 order extending plaintiffs' time to serve and file the Summons with Notice without there being shown any legal basis for the presiding judge to entertain such frivolous request; (f) allowing without caution and imposition of sanctions the ongoing unethical abusive misconduct of counsel Eldar Mayouhas and the firm Kaufman, Borgeest, and Ryan representing corporation defendants Mount Sinai Hospital; (g) issuing seriously questionable unconstitutional order of prohibition against the plaintiffs' right to file future motions on notice in this case, in violation of the law, the **CPLR Article 22** provisions authorizing civil litigants to file motions on notice, to litigate their case effectively under the law, and to communicate with the court primarily through motions made on notice, thereby depriving the due process rights of plaintiffs under the Constitution, and violating the Appellate Division's orders rejecting that kind of inappropriate abusive draconian judicial action that Judge Madden has demonstrated in this case.

30. Therefore, it is submitted respectfully that Judge Madden has in fact violated the Model Code of Judicial Conduct, Canons 1, 2, and 3, as enacted by the American Bar Association, warranting the recusal and/or withdrawal of the judge accordingly.

31. Particularly the conduct complained of Judge Madden violates the law Model Code of Judicial Conduct, Canons 1, 2, and 3, as enacted by the American Bar Association, which expressly states the following:

## THE AMERICAN BAR ASSOCIATION MODEL CODE OF JUDICIAL CONDUCT (1990)

### CANON 1

**A Judge Shall Uphold the Integrity and Independence of the Judiciary**

**A. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.**

**Commentary**

**Deference to the judgments and rulings of the courts depends upon public confidence in the integrity and independence of judges. *The integrity and independence of judges depends in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under the law.***

**CANON 2**

**<u>A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities</u>**

**A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.**

**Commentary**

**Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. *A judge must avoid all impropriety and appearance of impropriety.* A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.**

**The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. *Actual improprieties under this standard include violations of law, court rules or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.***

**CANON 3**

**E. Disqualification**

**(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:**

**(a)** ***the judge has a personal bias or prejudice concerning a party or a party's lawyer…***

**AMERICAN BAR ASSOCIATION CODE OF JUDICIAL CONDUCT (1972)**

**As amended until 1989**

**CANON 1**

**A Judge Should Uphold the Integrity and Independence of the Judiciary**

**An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should [herself] observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.**

**CANON 2**

**A judge Should Avoid Impropriety and the Appearance of Impropriety in All [Her] Activities**

**A.** ***A Judge should respect and comply with the law and should conduct [herself] at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.***

**B.** ***…[She] should not lend the prestige of [her] office to advance the private interests of others; nor should [she] convey or permit others to convey the impression that they are in a special position to influence [her].***

**CANON 3**

**A Judge Should Perform the Duties of [Her] Office Impartially and Diligently**

**The judicial duties of a judge take precedence over all [her] other activities. [Her] judicial duties include all the duties of [her] office prescribed by law. In the performance of these duties, the following standards apply:**

**A. Adjudicative Responsibilities**

**(1)** ***A judge should be faithful to the law and maintain professional competence in it.*** **[She] should be unswayed by partisan interests, public clamor, or fear of criticism.**

**(2)** ***A judge should maintain order and decorum in proceedings before [her].***

***(3)*** ***A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom [she] deals in [her] official capacity, and should require similar conduct of lawyers, and of [her] staff, court officials, and others subject to [her] discretion and control.***

**Commentary**

***The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court.*** **Courts can be efficient and business-like while being patient and deliberate.**

***(4)*** ***A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to the law…***

**B. Administrative Responsibilities**

**(3)** ***A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.***

**Commentary**

**Disciplinary measures may include reporting a lawyer's misconduct to an appropriate disciplinary body**

**C. Disqualification.**

**(1) A judge should disqualify [herself] in a proceeding in which [her] impartiality might reasonably be questioned, including but not limited to instances where:**

***(a) [she] has a personal bias or prejudice concerning a party…***

32. Therefore, it is submitted respectfully that Judge Madden has in fact violated the plaintiffs' civil and constitutional rights to due process in this case by reason of the ongoing judicial misconduct herein described and as demonstrated in the plaintiffs' September 17, 2019 Notice of Motion and prior proceedings had in this case.

33. Therefore, it is submitted respectfully that Judge Madden's conduct is in fact in violation of the law, CPLR, the Model Code of Judicial Conduct, Canons 1, 2, and 3, as enacted by the American Bar Association, the American Bar Association Code of Judicial Conduct (1972), Canons 1, 2 and 3, and the New York State Constitution and US Constitution.

34. Plaintiffs do not have faith and trust in Judge Madden's impartiality and they reasonably believe, perceive, and do hold true in their minds that the judge assigned to their case is acting in the best interests of and lending favors to the corporation defendant Mount Sinai Hospital. Judge Madden's conduct, as far as any reasonable person may perceive, has irrevocably impaired her ***ability to carry out judicial responsibilities with integrity, impartiality and competence***.

35. Accordingly, plaintiffs request, and do so demand, that Judge Madden recuses herself from this case and that another judge is assigned to the case, so as to allow for the appearance of Justice or Justice itself to function in this important 911 Civil Rights Medical Malpractice Case.

36. ***Furthermore, the record shows that there have been just too many instances of unfairness and prejudice exercised against the civil litigants at Judge Madden's court, warranting the recusal or withdrawal of the judge assigned to the case.*** The court is reminded also that this case is about a human being Ada Rodriguez, a 911 Hero who died for this United States Nation and Humanity. The court by its decisions today appears to also have ignored this fact.

## Judge Madden's Orders Unfairly Deprive Plaintiffs of Constitutional Due Process and The Court Has Failed to Impose Sanctions Against Attorney Eldar Mayouhas and the Firm Kaufman, Borgeest & Ryan or Otherwise the Court Has Failed to Stop the Continuous Unethical Abusive Practices and Frivolous Motion Practice Performed by the Corporation Defendant Mount Sinai Hospital's Attorney and Firm in this Case

37. It is respectfully submitted that Judge Madden's order in page 3 at the end where it states verbatim that "any further motions by notice will be denied automatically and that only orders to show cause will be allowed in this action constitutes an excessive arbitrary and capricious judicial act that violates the plaintiffs' constitutional due process rights and also unfairly injuries plaintiffs.

38. The court's decision raises serious concerns about its impartiality and ability to render a fair determination in this important 911 Civil Rights Medical Malpractice case.

39. ***Here Judge Madden's order was influenced by the false and misleading statements that counsel Mayouhas made at the hearing held in Judge Madden's chamber on August 15, 2019 verbatim "plaintiffs have made many motions and it is costing his firm money," thereby asking the court to take action precluding pro se plaintiffs from filing future motions with the court.***

40. Counsel Mayouhas's statements are completely unjustified, misleading and fabricated, intended to persuade the court to act with prejudice against the pro se plaintiffs and in order to damage their case.

41. ***What Judge Madden did not know at the time is that counsel Mayouhas had written to plaintiff Betancourt via email stating that verbatim "Judge Madden's clerk had called counsel and informed him that plaintiff Betancourt had filed another motion," which information counsel then intentionally distorted to argue before Judge Madden that plaintiffs were making too many motions and that it was costing his law firm money. See Counsel Mayouhas' email annexed as Exhibit "E" of Plaintiffs' September 17, 2019 Notice of Motion.***

42. Evidently, counsel Mayouhas has exercised the unethical practice of purposefully and intentionally distorting court communications with the intent to mislead confuse and influence the court to act adversely against the pro se plaintiffs and in order to damage their case. Counsel Mayouhas would then further fabricate and misrepresent the said court information to Judge Madden in order to cast plaintiff in a negative light with respect to the foregoing matter respecting the alleged plaintiffs' motion practice, thereby requesting in a frivolous manner and without legal basis relief that is primarily intended to confuse the court and to obtain a decision adversely affecting the rights of plaintiffs, which is exactly what is happening in this case.

43. **Yet Judge Madden knew or should have perceived the frivolous nature of counsel's statements and the fact that his complaint lacked merit since plaintiffs have only made one single motion on notice in the case, which is the motion that was pending before Judge Madden seeking to reargue and reconsider her prior order of May 23, 2019 denying plaintiffs' request for assigned counsel.**

44. **It is stated for the record, and this court is reminded also, that plaintiffs' notice of motion to reargue/reconsider the court's prior order denying assignment of counsel was in fact the first and only motion made by notice that plaintiffs submitted in this case.**

45. **Therefore, there was then no reason for the court to issue such extraordinary and draconian ruling at that juncture in the case.**

46. ***It is further noted that the decision of the court, for all its appearances and purported motives and purposes under the law, is mainly intended to affect and to deprive plaintiffs' rights rather than the rights of the corporation defendants Mount Sinai Hospital represented by the law firm of Haufman, Borgeest and Ryan LPP, and as such the court's order is unfair and constitutes an unauthorized excessive use and abuse of judicial power in the management of a legal case and the administration of justice.***

47. ***Furthermore, it must be noted that already in this case there is a history of pro se plaintiffs suffering much bias and prejudice both by the court and the attorneys representing the corporation defendants.***

48. Here we delineate in showing the continues unfairness and prejudice that plaintiffs pro se have experience in Judge Madden's court, and to make matters clear for the record, and also for purposes of appeal, counsel Mayouhas and the firm of Kaufman Borgeest & Ryan LPP initially filed a motion to dismiss by notice of motion. **Counsel Mayouhas filed the motion to dismiss without first inspecting the record of the case so as to have been fully informed of all the facts and circumstances relevant thereto and the proceedings had in the case therewith.**

49. Judge Madden never questioned counsel's unethical conduct that ultimately caused prejudice to the plaintiffs.

50. Had counsel Mayouhas reviewed the record of the case, he then would have known that Judge Goetz had issued an order ex parte filed on March 15, 2018 that extended the time for plaintiffs to serve the summons with notice by an additional 120 days to July 13, 2018. Counsel's first point of the notice of motion to dismiss then would have been deemed improper and entirely frivolous.

51. Yet it is not known if Mount Sinai Hospital's counsel Mayouhas and the firm Kaufman Borgeest & Ryan LPP had intentionally, purposefully and willfully filed the said notice of motion to dismiss despite being aware of the said Judge Goetz's order or if they did so in complete disregard defiance and dishonor of the same.

52. The record supports to some extent that counsel for defendant Mount Sinai Hospital did in fact dishonored and violated Judge Goetz's ex parte order by cross-moving for an order seeking reargument and vacatur of Judge Goetz's order, frivolously and without legal basis arguing that Judge Goetz had erred in granting plaintiffs ex parte relief of service time extension and without showing any real injury suffered to defendants as a result of Judge Goetz's order.

53. However the frivolous unethical conduct of counsel Mayouhas and the firm Kaufman Borgeest & Ryan LPP became evident at the January 10, 2019 hearing had in Judge Madden's Chamber when after plaintiff Betancourt presented Judge Madden a copy of Judge Goetz's ex parte order counsel asked to reargue and remove that order.

54. Judge Madden allowed counsel Mayouhas to reargue Judge Goetz's order by way of reply, which decision was not authorized by the law CPLR since Judge Goetz's order was made on an ex parte application which renders the same not appealable.

55. Notwithstanding, as noted counsel's request lacked merit and nothing substantively was stated to Judge Madden that under the law would legally warrant or justify entertaining any reargument and or any attempt to vacate and to remove a prior Judge Goetz's ex parte order extending the time of service of the summons with notice.

56. Although ultimately by order dated and filed May 23, 2019 Judge Madden denied the defendants' notice of motion to dismiss, the attorneys were never sanctioned or even cautioned with respect to the frivolous nature of their actions in filing what was clearly meritless motions, which we restate were made by notice of motion.

57. Furthermore, we state that counsel Mayouhas after the January 10, 2019 hearing did ultimately moved the court by notice of cross-motion seeking to have Judge Goetz's ex parte order of March 15, 2018 removed and vacated and the case dismissed.

58. Counsel's motion was made about a year after Judge Goetz's order was entered and after plaintiffs pro se filed an OSC seeking an order to enforce Judge Goetz's order.

59. **It is noted that this was counsel's second motion filed on notice in the case.**

60. **Thereafter, counsel filed another (defendant Mount Sinai Hospital's third (3) notice of motion) amended notice of cross-motion in this matter.**

61. *In none of these instances however Judge Madden issued any order indicating that the court was to limit the amount of motion practice by defendants Mount Sinai Hospital acting through their counsel.*

62. Notwithstanding, plaintiffs were forced to file two (2) orders to show cause ex parte motions (one OSC was signed by Judge Borrok on January 22, 2019 and another by Judge Madden) seeking to enforce Judge Goetz's ex parte order of March 15, 2018, since the attorneys for Mount Sinai Hospital were in fact violating and dishonoring Judge Goetz's ex parte order, and violating the law CPLR's provisions authorizing the extension of time of service of summons with notice, and violating plaintiffs' due process rights in frivolously and without any legal basis seeking to have Judge Madden remove and vacate that order and to obtain an otherwise unlawful forced dismissal of the case.

63. It is noted that ***"plaintiffs were forced to file their ex parte motions in order to have Judge Goetz's ex parte order enforced and since at the time plaintiffs' due process rights were being patently violated by reason of the same order not being honored by defendants and enforced by Judge Madden."***

64. ***Further, it was Judge Madden's duty to have then and there immediately denied counsel's request to reargue and remove Judge Goetz's ex parte order, but to no avail. At the January 10, 2019 hearing Judge Madden entertained counsel's frivolous baseless bogus request despite knowing that it lacked merit and could not be sustained under the law.***

65. ***Also at that hearing plaintiff Betancourt was not allowed to fully counter against counsel Mayouhas's request to reargue Judge Goetz's ex parte order, and he basically had to plead that Judge Madden would grant him the opportunity to say a word in opposition, but to no avail.***

66. ***Hence since the beginning of this case pro se plaintiffs have been aggrieved and overburdened by the frivolous and unethical practices of corporation defendants Mount Sinai Hospital and their attorneys at Kaufman Borgeest & Ryan LPP, which unethical abusive conduct Judge Madden has allowed to continue undeterred without any court warning and imposition of sanctions.***

67. **We seriously think that such unethical behavior would not have happened had plaintiffs been represented by an attorney.**

68. However there have been numerous other instances of unfairness bias and prejudice suffered by the pro se civil litigants in this case involving a powerful influential and wealthy corporation Mount Sinai Hospital that is represented by the Wall Street law firm Kaufman, Borgeest and Ryan LPP before Judge Madden.

69. ***Here at the March 1, 2019 hearing held at Judge Madden's courtroom counsel Mayouhas "asked Judge Madden to issue an order prohibiting plaintiffs' rights to appeal and to seek relief at the Appellate Division."***

70. **Counsel Mayouhas' request was totally inappropriate unethical unlawful and abusive, and Judge Madden should not have allowed counsel to continue exercising that kind of misconduct in her court.**

71. ***Although Judge Madden denied counsel Mayouhas' request that basically sought the extraordinary unlawful relief of having a Supreme Court Judge violate a civil litigants' due process rights in litigating their case and on appeal, Judge Madden did so lightly and never sanctioned counsel's unethical abusive and frivolous conduct. Judge Madden at the time stated verbatim "counsel if you are asking me to stop Mr. Betancourt from appealing to the Appellate Division I cannot do that. Mr. Betancourt has the right to seek relief before the Appellate Division as any other litigant does."***

72. However counsel's unethical conduct was sufficient basis to impose sanctions and in order that the court is not any further influenced adversely against the pro se plaintiffs.

73. Yet counsel's request to Judge Madden of an order prohibiting plaintiffs from exercising their due process rights in this action and on appeal further evinces about the desperate and deceptive attempts by corporation defendants Mount Sinai Hospital's attorneys to influence the presiding judge against pro se plaintiffs and to obtain an otherwise quick and unlawful dismissal of this rather important 911 Civil Rights Medical Malpractice civil action.

74. Furthermore, plaintiffs on numerous occasions have been prejudiced by ongoing inappropriate actions by the court and frivolous unethical conduct by the attorneys of defendants.

75. ***For instance, right from the start of this case pro se plaintiffs have had to rely on counsel Mayouhas to be informed of court proceedings, orders, and adjournments, since the court was not notifying plaintiffs of such court matters.***

76. ***Throughout the proceedings of this case pro se plaintiffs have complained of the fact that the court was not informing them of the dates of adjournments and hearings that the court agreed to in conference held only with defendants' counsel.***

77. In fact plaintiff Betancourt informed Judge Madden of the situation and that the court was not providing him copies of orders after the judge had signed plaintiffs' OSCs (2).

78. At one point during a hearing held at her courtroom Judge Madden questioned her clerk about plaintiffs' complaints that her orders were not being provided to plaintiffs, but the clerk refused to answer since she did not wanted to be personally implicated in the matter.

79. Here at the August 1, 2019 hearing counsel Mayouhas stated to Judge Madden that he objected to the alleged lack of proper service of the plaintiffs' order to show cause to amend the caption of the case to substitute plaintiff Betancourt as the administrator of the estate of his mother Ada Rodriguez.

80. However plaintiff Betancourt tried within a limited brief time to explain the Truth to Judge Madden, but it was not possible.

81. The Truth is that days earlier plaintiff Betancourt had visited the courtroom and personally asked Judge Madden's clerk if Judge Madden had signed the order to show to cause to amend caption that plaintiffs filed on June 27, 2019. At the time the clerk stated the following: "the Judge wants to hear arguments on the OSC on August 1, 2019." Plaintiff Betancourt then asked to be provided a copy of the OSC but the clerk did not provided him the said order. At the time she stated that "she does not know where the order is and referred plaintiff Betancourt to visit the court's office of self represented Room 116."

82. Then Mr. Betancourt visited the office of Room 116 and after searching for the order they said that Judge Madden had it, redirecting plaintiff Betancourt to return to Judge Madden's courtroom to obtain a copy. Thereafter plaintiff Betancourt again asked for the order but the clerk did not provided it to him, stating "just come on August 1, 2019 and anything that you have to say to the judge say it at that time."

83. Hence, in the end, the court never provided plaintiffs the order that Judge Madden had signed and, therefore, they were not able to serve it upon defendants. Plaintiff Betancourt never had a chance to review the said order prior to the August 1, 2019 hearing and in order to follow the court's instruction regarding the time and manner of service of the same.

84. However, plaintiff Betancourt did informed counsel Mayouhas by email communications about the foregoing and that he had just learned that Judge Madden was having a hearing on the said order on August 1, 2019.

85. We respectfully submit that the court on numerous occasions has not informed pro se plaintiffs of the dates of many hearings, with the exception of the January 10, 2019 hearing which the court had scheduled after holding a telephone conference with both parties on December 13, 2019, another hearing that the court adjourned during a telephone conference had with the parties while the parties were litigating matters on appeal at the Appellate Division on April 3, 2019, and other court hearings that Judge Madden personally scheduled and notified the parties about during hearings held at her courtroom and chambers.

86. However, as noted above, on numerous times plaintiffs have learned about court dates and hearings only after they personally visited Judge Madden's courtroom and the clerk then provided them the information for the first time.

87. *Nonetheless, respecting plaintiffs' order to show cause to amend caption filed on June 27, 2019, at the close of the August 1, 2019 hearing Judge Madden did not understand that Betancourt made various efforts to obtain her order and that neither her clerk nor the office of self represented Room 116 provided him the said order.*

88. ***Yet as the record shows, the same scenario happened previously in the action when Judge Madden's clerk did not provide Betancourt another OSC that Judge Madden had signed. At the time, the clerks looked for the OSC and said they could not find it and that they did not know where the case's record was. The clerks also stated that he must appear at the hearing and ask the judge about the OSC.***

89. ***In fact Betancourt repeatedly asked to be provided Judge Madden's order pertinent to an OSC to enforce Judge Goetz's ex parte order of March 15, 2018, but to no avail. In the end, plaintiff Betancourt was forced to leave the courtroom without being provided a copy of the OSC that Judge Madden had signed.***

90. We respectfully submit that we delineate these matters only in order to explain and to show the many undue biases and prejudices and difficult hurdles that pro se plaintiffs have experienced and continue to experience in litigating this civil action in the Supreme Court. Consequently, we submit, plaintiffs pro se are not been treated fairly under the law in Judge Madden's courtroom.

91. **Again we sincerely doubt that any such biases and prejudices suffered against pro se plaintiffs would have been exercised and allowed to continue had they been properly represented by an attorney in this civil action.**

92. We seriously believe that it is because of their pro se poor person status that plaintiffs are inappropriately and unfairly treated in this case, and we can only ask that the court, in now being aware of these serious important matters, does something about them, so as to avoid damaging plaintiffs' case any further and to prevent their suffering more irreparable harm during the course of this civil action.

93. Likewise, we inform the Court that there have been many instances of counsel Mayouhas intentionally and purposefully lying to Judge Madden with respect to proceedings of this case, intended to prejudice the plaintiffs and to damage their case brought against corporation Mount Sinai Hospital.

94. *Regarding the frivolous unethical conduct of counsel Mayouhas and the firm Kaufman Borgeest & Ryan LPP, as described herein, we also sincerely think that their misconduct shows "a clear calculate purposeful and determined pattern of abuse intended to overburden and injure plaintiffs so as to damage their case and deny them Justice."*

95. *Accordingly, Plaintiffs request that the court imposes sanctions against the attorney Mayouhas and the firm Kaufman, Borgeest & Ryan LPP for the continuous unethical abusive conduct and frivolous motion practice.*

96. **Nevertheless, today Judge Madden's recent order dated August 30, 2019 and filed September 3, 2019 clearly reveals that the court was influenced by the misleading and false statements of counsel at the August 15, 2019 hearing that basically requested that the court precludes plaintiffs from filing further motions.**

97. **Judge Madden's order in fact fulfills counsel Mayouhas's earlier frivolous request at the March 1, 2019 hearing that Judge Madden stops plaintiffs from seeking relief at the Appellate Division and that the court deprives them of their rights on appeal.**

98. Moreover, it is noted for the record that Judge Madden's order unconstitutionally deprives plaintiffs' due process rights, substantive and procedural, and adversely affects their meritorious case. Fundamentally Judge Madden purposefully issued the controversial unconstitutional order at a juncture in the case when pro se plaintiffs were consulting various attorneys and firms regarding legal representation.

99. However now that the judge has prohibited the civil practice of motions on notice, stating without or in excess of jurisdiction that the court will automatically deny every motion filed on notice, it is submitted no attorney will take the plaintiffs' case. Consequently in effect the judge has irreparably prejudiced indigent pro se plaintiffs and deprived them of the right and any chances they might have had to obtain legal representation of attorneys of the private bar.

100. Thus, it is submitted Judge Madden's order violates plaintiffs' right to obtain an attorney and to receive legal representation in this case.

101. Judge Madden's order depriving plaintiffs' right to file motions on notice was calculated and intentional since the same order also denied the plaintiffs' motion seeking relief of court assigned attorney. We reiterate that in the same order Judge Madden ignored and did not decided the plaintiffs' requests that the court provides them an expert witness doctor since they cannot afford one and that it also appoints an attorney to represent them as a matter of the court's discretion.

102. By so doing, Judge Madden has managed to ensure that indigent pro se plaintiffs are not represented by counsel in litigating their meritorious claims against the corporate Mount Sinai Hospital defendants.

103. Judge Madden knew or should have known then that in drawing her prohibition order the court was also unlawfully adversely affecting plaintiffs' rights and limiting ond/or denying them any chance of finding an attorney of the private bar who might take their case.

104. Additionally, in issuing the said prohibition order Judge Madden performed or purports to perform administrative functions and duties that are not expressly authorized by law the CPLR Article 22 or the Rules of the Chief Administrator of the courts. By law Judge Madden lacks the power and authority to decide whether to exclude or to prohibit permanently the practice of properly submitted motions on notice in a civil action supervised by her, and since there is no evidence in the record justifying or warranting that kind of judicial action.

105. Moreover, as we have stated herein above, by issuing that order Judge Madden did in fact abused the court's discretion and unlawfully violated plaintiffs' rights to appeal and to obtain proper judicial review of her orders on appeal, insofar as now plaintiffs are unjustly limited to the strict civil practice of filing only ex parte motions that under the CPLR §5701(a)(2) are not appealable as of right to the Appellate Division.

106. **Constitutional wise, and also as a matter of legal practice, we object to the force and wording of Judge Madden's order. It is in effect, as we stated *supra*, an order that (1) limits and deprives, without valid legal reasons and justifications thereof, pro se litigants' due process rights, and (2) adversely affects their case since by law and as a matter of civil procedure, law and rules it restricts the litigants' ability to properly and successfully represent their cause both at the trial court and on appeal to the appellate courts, in violation of the law CPLR.**

107. ***Fundamentally, the said order is in fact at first instance "capricious and arbitrary," and the court has overreached its powers and authority since there is nothing in the record justifying issuing that draconian extraordinary ruling.***

108. ***As we have explained supra, "plaintiffs pro se have only filed before Judge Madden one single Notice of Motion which above all things bears merit since they merely asked for appropriate and needed relief, under the law CPLR and the federal and state constitutions, seeking to reargue and to reconsider Judge Madden's prior order that in error denied their ex parte application for a court appointed counsel"; and "seeing the court's order today it appears that plaintiffs are being wrongfully punished for no valid reason other than that they rightfully moved to reargue this court's prior order for relief of court assistance pertaining to their inability to hire the services of an expert witness doctor and an attorney to represent their case, which relief Judge Madden should have granted under the Law, US Constitution and CPLR, and also in consideration of plaintiffs' case."***

109. ***Yet Judge Madden's order goes further in sua sponte stating that the court will outright deny any future motions on notice filed in the action regardless of their merit, and permitting only the filing of an order to show cause, which prohibition denies plaintiffs due process and the right to appeal the court's orders, since by law an OSC is not appealable to the Appellate Division as of right. CPLR §5701(a)(2).***

110. *The Appellate Division has prohibited the practice of judges imposing requirements or restrictions prior to litigants filing motions. See Goldheart International, Ltd. V. Vulcan Constr. Corp. 120 A.D.2d 507, 508 N.Y.S.2d 182 (1st Dep't 1986). The Second Circuit also curtailed the get-permission-first rule used by some federal district judges. See Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647 (1987).*

111. *Professor Siegel in New York Practice, 3rd Ed. states that "The appellate division rejected that restriction, holding in Goldheart International, Ltd. V. Vulcan Constr. Corp. that a judge can't refuse to entertain a properly made motion."*

112. *Professor Siegel furthermore states the following regarding motion practice in New York courts:*

> *"Although New York statutory law is not explicit on the point, the general rule from the cases is that motions must be made on notice.*
>
> *Practically speaking, the only time a party should attempt to move ex parte is when a statue or rule explicitly authorizes it.*
>
> *Lawyers should make it their business to make all motions on notice unless there is an unambiguous statue or rule at hand authorizing the particular motion to be made ex parte."*

113. *Hence clearly Judge Madden's order violates the CPLR provisions regarding a civil litigant's right to file motions on notice, the Appellate Division's orders rendered in legal precedents supra, and plaintiffs' due process rights. The said order also shows a disposition by the presiding judge to automatically deny all future notice of motions that plaintiffs file in the action, thereby casting doubt into the judge's impartiality and her ability to render decisions and judgment in a manner that is both fair and free of bias, prejudice and favors.*

114. *Finally, it must be stated for the record that the plaintiffs in moving this court by way of notice of motion properly made pursuant to the CPLR do so "in protest knowing that the court's prior order of August 29, 2019 and filed September 3, 2019 prohibiting the filing of future motions on notice is unconstitutional as it deprives them the right to litigate their cause as any other civil litigant, individual or corporate, is permitted by law.*

115. *The Law CPLR and state and federal constitutions forbid that kind of abuse and unauthorized judicial prohibition exercised against the rights of civil litigants to properly and effectively represent their case in the New York State Supreme Court, and the presiding Judge Madden should abide by the law, rules and practice of civil procedure and the federal and state constitutions' guarantee of Due Process.*

116. *As it is established herein above, Judge Madden's order, at first instance, clearly evinces an abuse of judicial power and undue bias and prejudice being performed against the self-represented civil litigants. The said order also reveals an inference of judicial intent to aggrieve the pro se indigent civil litigants and to damage their case.*

117. *It is quite evident that the powerful influential corporate defendant Mount Sinai Hospital has managed to influence the presiding judge to act adversely against the indigent self-represented civil litigants and, therefore, Judge Madden should recuse herself and/or the judge should be withdrawn, and this case should be assigned to another judge who may then decide the present motion and conduct the business of the court in a manner that is both proper and fair, unaffected by any inference of judicial bias, prejudice and favors, and based upon the foregoing valid reasons and meritorious points at law.*

118. Furthermore, that the defendants will not be in the least prejudiced by the relief that plaintiffs seek from the court today.

119. Plaintiffs request the opportunity to submit a reply to any opposition papers that defendants might submit in response to this motion.

120. Plaintiffs request the opportunity to be heard at a fair hearing where the merits of plaintiffs' present motions may be properly decided under the law and based on the foregoing.

121. Lastly, since this case concerns the deprivation of a person Ada Rodriguez's privacy, liberty and life suffered at the hands of the corporation Mount Sinai Hospital, and which delicate and serious matter plaintiffs are to establish at trial before a jury, they are forced to take action against what they reasonably perceive is the wrongful unethical unlawful conduct being performed freely by both the judge and the attorneys of the corporation Mount Sinai Hospital.

122. Unfortunately we must state that plaintiffs are sincerely disappointed with the way the judge has affected their rights and mishandled their important case. Consequently they have lost faith and trust in the judge's impartiality because of the foregoing reasons, although they wish to not have been forced to move this Supreme Court for relief of order seeking the recusal and/or withdrawal of the assigned judge Joan Madden.

**WHEREFORE**, I Alberto Betancourt plaintiff, acting personally and as Administrator of the Estate of my dear mother Ada Rodriguez, *deceased in the material world and alive in Spirit and present here today hence*, respectfully request is granted relief of (1) recusal of the presiding Judge Madden by her own order, and (2) withdrawal of Judge Madden from the case, and (3) assignment of another judge under the Individual Assignment System of the Supreme Court to supervise and to decide this important 911 Civil Rights Medical Malpractice Civil Action, pursuant to the ABA Model Code of Judicial Conduct (1990), Canons 1, 2, and 3, the CPLR, and the Constitution, and together with any such further relief as to this court seems just and proper under the Law and in the "**interest of Justice.**"

RECEIVED
SEP 18 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

Respectfully yours,

Dated September 18, 2019

Alberto Betancourt
Ada Rodriguez, ***deceased in the Material World and Alive in Spirit***
601 West 112th Street, Apt.5B
New York, New York 10025
(917) 623-6873

Subscribed & sworn to before me this 18 day of September 2019.

PERLA I TORIBIO
Notary Public - State of New York
NO. 01TO6276703
Qualified in Bronx County
My Commission Expires May 30, 2021

TO:

Kaufman Borgeest & Ryan LPP
Eldar Mayouhas
Attorneys for defendants Mount Sinai Hospital et al.,
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600

The United States Congress
The New York State Congress

**EXHIBIT A**

E.A
9/3/19
JE

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**

**PRESENT:HON. JOAN A. MADDEN** **PART 11**

***Justice***

**ALBERTO BETANCOURT, personally, and as Next of Kin and on behalf of ADA RODRIGUEZ,**

**Index No. 101628/17**
**Motion seq 006**

**Plaintiff,**

**- v -**

**MOUNT SINAI HOSPITAL, and JOHN DOE/JANE DOE, ET AL.,**

**Defendants.**

FILED
SEP 03 2019
COUNTY CLERK'S OFFICE
NEW YORK

RECEIVED
SEP 03 2019
GENERAL CLERK'S OFFICE
NYS SUPREME COURT - CIVIL

The following papers, numbered 1 to _____ were read on this motion to reargue.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ________ | |
| Answering Affidavits — Exhibits ________ | |
| Replying Affidavits ________ | |

Cross-Motion: [ ] Yes [ x ] No

Plaintiff, appearing *pro se*, moves for reargument of this court's supplemental and amended order dated May 23, 2019 ("the prior order"), declining to sign plaintiff's order to show cause which sought, *inter alia*, appointment of counsel to represent him in this medical malpractice action.

The motion is denied as in its prior order the court did not misapprehend the relevant law or facts. See generally William P. Pahl Equipment Corp v. Kassis, 182 AD2d 22 (1st Dept), lv denied 80 NY2d 1005 (1992).

While criminal defendants have a constitutional right to counsel (People v. Ramos, 99 NY2d 27, 32-33 (2002), there is no such right in a civil matter like the instant case. The right to counsel in criminal cases is rooted in the federal and state constitutional provisions, and

emanating from such provisions is the right to have assigned counsel if a defendant is unable to obtain one due to indigency. Matter of Smiley, 36 NY2d 443, 437 (1975), citing Gideon v. Wainwright, 372 U.S.335 (1963). "The underlying principle is that when the State or Government proceeds against the individual risk of loss of liberty or grievous forfeiture, the right to counsel and due process of law carries with it the provision of counsel if the individual to be charged is unable to provide it for himself." Id.

In civil proceedings involving one's physical liberty, or in which one's "liberty interests" are at issue, the right to counsel has been recognized, and in certain instances, codified. See Lassiter v. Department of Social Servs., 452 U.S. 18 (1981)("It is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendment right to counsel in criminal cases, which triggers the right to appointed counsel" ). For instance, Family Court Act § 262 provides for the appointment of counsel if a litigant is financially unable to obtain an attorney, in various types of proceedings, including those involving, parental rights, custody, paternity and adoptions. Debella v Debella, 161 AD3d 1239 (2d Dept 2018). Statutes also provide for assigned counsel in proceedings pursuant to the Mental Hygiene Law and in Article 81 proceedings for the appointment of a guardian of the person and or property. Matter of St. Luke's–Roosevelt Hosp. Center, 159 Misc.2d 932, 934-940 (Sup Ct NY Co.1993) mod on other grounds and remanded, 215 AD2d 337 (1st Dept 1995).[1]

The instant case is not one where plaintiff's personal freedom or liberty interests are at stake. Here, plaintiff seeks assigned counsel to pursue private litigation in a medical malpractice case involving the care and treatment of his mother. While Mr. Betancourt makes an impassioned plea for assignment of counsel, absent constitutional, statutory authority, or the implication of liberty interests, the circumstances here do not warrant assignment of counsel.[2]

---

[1]Moreover, as there is no statutory provision for assignment of counsel in private medical malpractice litigation, counsel would be uncompensated unless the litigation was successful and compensation was provided for in a retainer agreement.

[2]The cases relied on by plaintiff do not support the appointment of counsel to prosecute this medical malpractice action. Specifically, Hotel Washington Co. v. Swinick, 66 Misc2d 833 (App Term 1971) involved an indigent tenant being evicted from her apartment, while Barlett v.

Accordingly, it is

ORDERED that plaintiff's motion for reargument is denied; and it is further

ORDERED that all further motions in this action shall be made by order to show cause and failure to move by order to show cause will provide a basis for denial of the motion.

DATED: August 29, 2019

J.S.C.

FILED
SEP 03 2019
COUNTY CLERK'S OFFICE
NEW YORK

---

Kitchin, 76 Misc2d 1087 (Sup Ct NY Co. 1973), concerned an indigent petitioner, who was the sole provider of support for two minor children, and sought counsel to assist him in obtaining a divorce.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

2021 DEC 10 PM 4:49
COURT OF APPEALS
DEPOSITORY

Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, Decedent, Plaintiffs,

Index No.: 101628/2017

- Against -

**NOTICE OF MOTION REQUESTING RELIEF OF ORDER (1) TO REARGUE RECONSIDER AND CORRECT PRIOR COURT ORDERS AND (2) TO ASSIGN EXPERT WITNESS AND (3) TO APPOINT AN ATTORNEY TO REPRESENT INDIGENT PLAINTIFFS IN THIS IMPORTANT 911 CIVIL RIGHTS MEDICAL MALPRACTICE ACTION AND (4) TO TEMPORARY STAY PROCEEDINGS AND PRIOR ORDER REQUIRING PLAINTIFFS TO FILE COMPLAINT WITHOUT EXPERT WITNESS AND (5) FOR AN EXTENSION OF TIME TO FILE COMPLAINT AND (6) TO AMEND CAPTION TO INCLUDE A DEFENDANT (7) TO STRIKE IN PART PRIOR ORDER UNCONSTITUTIONALLY RESTRICTING THE FILING OF MOTION ON NOTICE AND (8) TO IMPOSE SANCTIONS AGAINST ATTORNEY MAYOUHAS AND LAW FIRM KAUFMAN, BORGEEST & RYAN LPP AND (9) TO RECUSE THE ASSIGNED JUDGE**

RECEIVED
SEP 17 2019
NEW YORK
COUNTY CLERK'S OFFICE

RECEIVED
SEP 17 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

**<u>RETURNABLE SEPTEMBER 26, 2019</u>**

**TO JUDGE MADDEN**

2021 DEC 10 PM 4:49
COURT OF APPEALS
2ND CIRCUIT
DEPOSITORY

Mount Sinai Hospital, John Doe, Jane Doe, Et als., Defendants,

**PLEASE TAKE NOTICE** that upon the annexed Affidavit of Alberto Betancourt and Ada Rodriguez, Plaintiffs Pro Se, sworn to on September 17th, 2019, and upon the exhibits attached thereto submitted in support of the foregoing Plaintiffs' Notice of Motion, including as Exhibit "A" Judge Madden's Order dated August 29, 2019 and entered September 3, 2019, and Exhibit "B" Judge Madden's Order dated August 1, 2019 and entered on August 13, 2019, and as Exhibit "C" Plaintiffs' Affidavit in Further Support of Motion to Reargue and to Reconsider Prior Order and to Assign Counsel dated and verified on August 30, 2019, and as Exhibit "D" Attorney's email letter to Plaintiff Betancourt, and as Exhibit "E" Attorney Eldar Mayouhas' email letter to Plaintiff Betancourt, and also upon all the pleadings and proceedings had hereto before in this action, the Plaintiffs will move this Supreme Court, at Motion Submission Part Courtroom (Room 130), to be held at the Courthouse, 60 Centre Street, New York, New York, ~~before Judge Madden's IAS Part 11, Room 351~~ of this Supreme Court, on the day of 26th of September 2019 at ~~10~~ 9:30 am or as soon thereafter as plaintiffs or their attorney may be heard for an Order:

AB.

a. Pursuant to CPLR § 2211, § 2214 and § 2221 granting leave to reargue and reconsider the Court's prior order dated August 1, 2019 and filed on August 13, 2019 which required indigent plaintiffs to file a complaint pro se without an expert witness within 60 days from the date of the said order in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

b. Pursuant to CPLR § 2201, issuing a temporary stay of the Court's proceedings and order dated August 1, 2019 and filed August 13, 2019 that required pro se plaintiffs to file a complaint without an expert witness within 60 days from the date of said order in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

c. Pursuant to CPLR § 2211, § 2214 and § 2221 granting leave to reargue, reconsider and correct the Court's prior order dated August 29, 2019 and filed on September 3, 2019 which in error and unconstitutionally denied plaintiffs relief of court appointed counsel as a constitutional matter, but ignored and did not decided plaintiff's request for assigned counsel as a matter of discretion pursuant to the CPLR and the court's inherent power and authority, and also ignored and did not decided plaintiffs' request for court assigned expert witness doctor to assist plaintiffs in filing their complaint and to testify under oath at trial in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

d. Granting plaintiffs leave to amend caption to include a necessary party defendant Saint Luke's Hospital at Mount Sinai; and furthermore

e. Extending the time for plaintiffs to file a complaint in this action; and furthermore

f. Striking amending and correcting that part of the Court's order dated August 29, 2019 and filed on September 3, 2019 that unfairly and without legal basis denied plaintiffs the right to file further properly submitted motions on notice, all in violation of the due process under the law and CPLR provisions concerning the rights of litigants to file motions on notice, the New York State Constitution and United States Constitution guarantee of Due Process in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

g. Imposing sanctions against the attorney Eldar Mayouhas and the law firm Kaufman, Borgeest and Ryan LPP; and furthermore

h. Recusing and withdrawing from the case the presiding Judge Joan Madden; and furthermore

i. Upon granting reargument reconsideration and correction thereof, granting plaintiffs relief of "court appointed counsel to represent plaintiffs in this civil case, being that plaintiffs have shown that this case presents a fundamental right under the Constitution, or otherwise the court in its discretion under the law CPLR's provisions and pursuant to its inherent and jurisdictional powers and also the court's authority to regulate cases before it and to serve the interests of Justice, hereby finds that appointment of counsel is necessary in way of affording indigent plaintiffs pro se a meaningful opportunity to adjudicate their legal claims and to grant them equal access to the judicial system and to guarantee plaintiffs due process under law, thereby meeting the demands of the US Constitution in this important 911 Civil Rights Medical Malpractice civil action"; and furthermore

j. Granting plaintiffs relief of "court assigned expert witness doctor to review the medical records, to submit an affidavit of merit, to assist plaintiffs in preparation for trial, to support validate substantiate and establish the meritorious causes of action in filing the complaint, and to testify at trial under oath and submit further verified affidavits and medical documents respecting the nature and extent of the corporate defendants Mount Sinai Hospital's negligence and wrongful unprofessional actions or torts committed against plaintiff-patient Ada Rodriguez in this important 911 Civil Rights Medical Malpractice civil action"; and furthermore

k. Granting plaintiffs leave to amend caption by Notice of Motion to serve and include the corporate defendant Saint Luke's Hospital at Mount Sinai Hospital, a necessary party that is owned, managed, operated and controlled by the corporation defendants Mount Sinai Hospital in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

l. Granting plaintiffs relief of "striking from that part of the Court's order dated August 29, 2019 and filed September 3, 2019 at page 3 the extraordinary unconstitutional prohibition against filing further motions properly submitted to the court by way of notice of motion, finding and declaring the said restriction to be unconstitutional per se and in direct violation of the Due Process clause and the civil rights of plaintiffs under the law CPLR and the state and federal constitutions to litigate their claims freely in a judicial forum that is fair and unhindered by unjustifiable excessive judicial limitations and the abuse of discretionary power and authority, and or otherwise a judicial forum that is free of unwarranted prohibited unethical exercise of judicial bias, prejudice and favoritism in this important 911 Civil Rights Medical Malpractice civil action"; and furthermore

m. Granting plaintiffs relief of "temporary stay of proceedings and the Court's order dated August 1, 2019 and filed on August 13, 2019 which required indigent pro se plaintiffs to file a complaint without an expert witness within 60 days from the date of said order, finding that said order is unconstitutional as it deprives plaintiffs of due process under the New York State Constitution and US Constitution and the provisions of CPLR in this important 911 Civil Rights Medical Malpractice civil action"; and furthermore

n. Upon temporarily staying the said order and proceedings pending the court's decision and final resolution of the fundamental expert witness constitutional matter by the appeals courts, "issuing an order extending the time within which plaintiffs are to file the complaint in this important 911 Civil Rights Medical Malpractice civil action"; and furthermore

o. Imposing sanctions against the attorney Eldar Mayouhas and the firm Kaufman, Borgeest and Ryan LPP for their ongoing calculated intentional unethical abusive conduct that they have exercised and continue to practice against plaintiffs in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

p. Pursuant to the ABA Model Code of Judicial Conduct, Canons 1, 2, and 3, recusing and or withdrawing the judge assigned to the case under the I.A.S. (Judge Joan Madden), and upon issuing an order of recusal or withdrawal of the presiding judge thereof, assigning a new judge to the case, based upon the foregoing facts and circumstances described herein and in the attached Plaintiffs' Affidavit in Support of Notice of Motion and evidence annexed in support thereto as well as prior proceedings had hereto before in this important 911 Civil Rights Medical Malpractice civil action; and furthermore

q. Granting plaintiffs such further relief as the Court Judge Joan Madden reasons, considers and determines to be correct, just and proper under the Law, the ABA Model Code of Judicial Conduct, Canons 1, 2, and 3, the CPLR, the New York State Constitution and the United States Constitution, and **"in the interest of Justice."**

Respectfully yours,

Dated September 11, 2019

Alberto Betancourt
Ada Rodriguez, ***deceased in the Material World and Alive in Spirit***
601 West 112th Street, Apt.5B
New York, New York 10025
(917) 623-6873

RECEIVED
SEP 17 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

TO:

Kaufman Borgeest & Ryan LPP
Eldar Mayouhas
Attorneys for defendants Mount Sinai Hospital et al.,
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, Decedent, Plaintiffs,

Index No.: 101628/2017

- Against -

**PLAINTIFFS AFFIDAVIT IN SUPPORT OF NOTICE OF MOTION REQUESTING RELIEF OF ORDER (1) TO REARGUE RECONSIDER AND CORRECT PRIOR COURT ORDERS AND (2) TO ASSIGN EXPERT WITNESS AND (3) TO APPOINT AN ATTORNEY TO REPRESENT INDIGENT PLAINTIFFS IN THIS IMPORTANT 911 CIVIL RIGHTS MEDICAL MALPRACTICE ACTION AND (4) TO TEMPORARY STAY PROCEEDINGS AND PRIOR ORDER REQUIRING PLAINTIFFS TO FILE COMPLAINT WITHOUT EXPERT WITNESS AND (5) FOR AN EXTENSION OF TIME TO FILE COMPLAINT AND (6) TO AMEND CAPTION TO INCLUDE A DEFENDANT (7) TO STRIKE IN PART PRIOR ORDER UNCONSTITUTIONALLY RESTRICTING THE FILING OF MOTION ON NOTICE AND (8) TO IMPOSE SANCTIONS AGAINST ATTORNEY MAYOUHAS AND LAW FIRM KAUFMAN, BORGEEST & RYAN LPP AND (9) TO RECUSE THE ASSIGNED JUDGE**

RECEIVED
SEP 17 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

**RETURNABLE SEPTEMBER 2~~5~~6, 2019**

**TO JUDGE MADDEN**

Mount Sinai Hospital, John Doe, Jane Doe, Et als.,
Defendants,

---

I Alberto Betancourt personally and as Administrator of the Estate of Ada Rodriguez, deceased but alive in Spirit, plaintiffs pro se, hereby state the following is true under penalty of perjury:

## PRELIMINARY ARGUMENTS IN SUPPORT OF PLAINTIFFS' MOTION

1. Plaintiffs respectfully submit this affidavit in support of the present meritorious motion properly made and filed by way of notice of motion seeking relief pursuant to CPLR § 2211, § 2214 and § 2221 to reargue, reconsider and to correct the court's prior order dated August 29, 2019 and filed September 3, 2019, and to assign an expert witness doctor to submit verified affidavit of merit and to testify at trial under oath as to the wrongful unethical actions and negligence of defendants Mount Sinai Hospital, and to appoint counsel, both as of right under the US Constitution and as a matter of judicial discretion pursuant to the law CPLR in this important 911 Civil Rights Medical Malpractice civil action, and furthermore relief striking and removing from the said order mentioned herein above that part at page 3 that unfairly and unconstitutionally deprives plaintiffs the right to file further properly submitted motions on notice, all in violation of the law CPLR and due process under the law and the state and federal constitutions, and furthermore relief of order staying temporarily the court's proceedings and prior order dated August 1, 2019 and filed August 13, 2019 requiring indigent plaintiffs to file the complaint pro se without an expert witness doctor within 60 days from the date of that order until the constitutional matter concerning plaintiffs' request and need of an expert witness doctor is properly decided and finally resolved by the appeals courts, and furthermore relief of order extending the time within which plaintiff are to file the complaint, and furthermore relief of order granting the plaintiffs leave to amend the complaint to include the necessary interested party corporation Saint Luke's Hospital at Mount Sinai, a corporate defendant that is owned, operated, managed and controlled by the corporate defendant parent company Mount Sinai Hospital in this civil action, and furthermore relief of order imposing sanctions against the attorney Eldar Mayouhas and the law firm Kaufman, Borgeest & Ryan LPP for the unethical conduct and frivolous motion practice exercised against plaintiffs in this action, and furthermore relief of order self recusing and withdrawing the judge assigned to the case (Judge Joan Madden) under the individual assignment system, and together with such further relief as the Supreme Court reasons, considers and determines to be correct, just and proper under the Law, the CPLR, the Constitution, and **"in the interest of Justice."**

2. It is submitted that the court misapprehend important relevant facts and law in deciding the previous motions by plaintiffs, and particularly with respect to the plaintiffs' request for court assigned expert witness doctor which fundamental issue Judge Madden totally ignored and did not decided, thereby warranting as of right the submission of the present motion.
3. Additionally, since the court *sua sponte* issued the shocking and extraordinary ruling restricting without legal reasons the plaintiffs' due process rights respecting the filing of future motions properly made on notice, stating that only further motions in the case are to be filed by order to show cause and any future motions on notice will be denied, it is stated that the present motion submitted on notice to reargue reconsider and correct prior order is warranted and authorized by law since the plaintiffs never had an opportunity to properly and fully respond to the court's draconian decision.
4. Moreover, it is submitted that the court's order, at first instance, shows that the court misapprehended facts and law as it violates without notice the plaintiffs' due process rights under the federal and state constitutions and their civil rights under the law CPLR provisions authorizing a civil litigant to file properly made motions on notice.
5. <u>Likewise, the court's order limiting the plaintiffs' rights to file motions on notice is prohibited by the Appellate Division and case law supports our arguments below.</u>
6. There are stated herein other relevant imperative meritorious points and requests that plaintiffs stated in their recent Affidavit in Further Support of Motion to Reargue and Reconsider and to Assign Counsel dated and filed (with Judge Madden's courtroom 351 Part 11) on August 30, 2019 which the court entirely ignored and never considered and decided in making its September 3, 2019 decision. See Plaintiffs' August 30, 2019 Affidavit annexed hereto as Exhibit "C".
7. It is submitted that the court should discern, review and consider the merits of those important issues and requests in deciding the present motion to reargue reconsider and correct prior order.

## The Order of the Court Totally Ignores and Fails to Decide the Fundamental Issue of Court Assigned Expert Witness Doctor in this Important 911 Civil Rights Medical Malpractice Civil Action

8. Plaintiffs respectfully state that the Court's order dated August 29, 2019 and filed September 3, 2019 at first instance is incomplete and deserving of reargument, reconsideration and renewal as it did not answered and decided the rather important constitutional issue of first impression concerning plaintiffs' request of court assigned expert witness in this 911 Civil Rights Medical Malpractice civil action. See Judge Madden's Order annexed hereto as Exhibit "A".
9. Specifically in paragraphs 10 & 11 at page 3 of their Affidavit in Support of Motion to Reargue and Reconsider Prior Order and to Assign Counsel that was submitted on August 1, 2019 the plaintiffs stated to the court that they cannot afford an expert witness that is required in medical malpractice actions and that the court, thus, should assist them by assigning counsel and an expert witness.
10. As plaintiffs show convincingly herein, the principal expert witness constitutional issue is vital to their ability to file a properly prepared complaint that meets the law's requirements and to competently prove their claims of negligence and wrongful death in this medical malpractice civil action, and, thus, the court must decide it.
11. ***The expert witness issue also is directly connected to the plaintiffs' request for court appointed counsel and without which the plaintiffs cannot properly proceed on their claims and their case can potentially suffer serious irreparable damage.***
12. ***It is respectfully stated that the said expert witness doctor(s) are needed in order to corroborate and demonstrate the claims of negligence and wrongful death. The plaintiffs request that the court assists them by assigning two (2) doctors (1) a cardiologist who may review the medical records and submit affidavits and testify under oath about the failure of Mount Sinai Hospital defendants to monitor plaintiff Ada Rodriguez's pulmonary embolism before surgery and to prevent her dying from said pulmonary embolism post surgery.***

13. *Upon information and belief, and at all times herein mentioned, plaintiffs state and restate that defendants Mount Sinai Hospital failed to monitor plaintiff Rodriguez's health and to provide her proper and complete medical care post surgery.*
14. *That in so doing the corporation defendant Mount Sinai Hospital failed to prevent the said pulmonary embolism from developing in plaintiff Ada Rodriguez's lungs and body and that its negligent actions did in fact caused serious injuries to plaintiff Ada Rodriguez and consequently her death.*
15. *Therefore, this court should assign an expert witness physician cardiologist so as to hear medical testimony and to review material medical evidence regarding the pulmonary embolism that defendants Mount Sinai Hospital caused plaintiff Ada Rodriguez, and which pulmonary embolism the defendants Mount Sinai Hospital ignored and failed to monitor and to cure, thereby ultimately causing her death, and as is supported by the autopsy report of Saint Luke's Hospital at Mount Sinai.*
16. *As the court can observe of the autopsy report, plaintiff Ada Rodriguez died from the pulmonary embolism and complications of colon cancer, the two medical conditions that plaintiffs allege were caused and made worse by defendant Mount Sinai Hospital as a result of their negligence and failure to provide plaintiff Ada Rodriguez the proper and complete medical services.*
17. *It is submitted that had defendants Mount Sinai Hospital performed its duty of care to patient plaintiff Ada Rodriguez, then patient plaintiff Ada Rodriguez would not have suffered the unnecessary pains and sufferings that she endured while under the care of Mount Sinai Hospital and she would have been alive still to this day.*
18. *Furthermore, that in neglecting patient plaintiff Ada Rodriguez's health both prior to and after surgery the defendant Mount Sinai Hospital did caused patient plaintiff Ada Rodriguez tremendous unbearable severe pains and sufferings and ultimately caused her death.*
19. *Furthermore, that defendants Mount Sinai Hospital committed gross negligence by failing to detect, to monitor, to treat and to cure patient plaintiff Ada Rodriguez's cancer of the colon both prior to and after surgery and until the time of her death on November 16, 2015.*

20. ***Furthermore, that for many years before the time that patient plaintiff Ada Rodriguez first visited the Mount Sinai Hospital Emergency Room on September 17, 2015 seeking emergency medical care defendants Mount Sinai Hospital acted negligently toward patient plaintiff Ada Rodriguez by intentionally, purposefully and willfully failing to detect, to monitor, to treat and to cure her cancer of the colon, resulting in the death of patient plaintiff Ada Rodriguez consequently.***
21. ***Therefore, plaintiffs request that this court assigns them a cancer physician expert witness who may review the records of patient plaintiff Ada Rodriguez's health and treatment that corporation defendants Mount Sinai Hospital performed and failed to provide to her since about 2001 to the time of her death on November 16, 2015 and also testify under oath at trial about the extent of the corporation defendants Mount Sinai Hospital's negligence toward patient plaintiff Ada Rodriguez's health condition to wit cancer of the colon that ultimately resulted in her dying.***
22. Thus the court in its order should have rendered a decision assigning an expert witness doctor(s) to assist in plaintiffs' case both at the trial court and appeals courts phases, to review the medical records of the three (3) medical institutions involved in the case, to wit the Mount Sinai Hospital, the Mount Sinai Hospital World Trade Center Monitoring and Screening Program, and Saint Luke's Hospital of Mount Sinai Hospital, to submit an affidavit of merit verifying about the nature and extent of the corporation defendants Mount Sinai Hospital's negligence and wrongful acts toward plaintiffs, to assist plaintiffs pretrial and to testify under oath at trial *inter alia*.
23. It is submitted that this rather vital issue of indigent plaintiffs' incapacity to afford the high costs of contracting and hiring the services of an expert witness, which by law they are required to present in a medical malpractice case, is an issue that the court must not sidestep, ignore and evade and that committing the indigent plaintiffs to serve and file a complaint without an expert witness being present violates their constitutional rights to due process and equal protection under the US Constitution.

24. The court, by reason of its order dated August 1, 2019 and filed August 13, 2019 directing plaintiffs to file a complaint within 60 days from the date of the same and then by its order dated August 29, 2019 and filed September 3, 2019 denying the plaintiffs court appointed counsel and ignoring, evading and failing to decide the plaintiffs request of court assigned expert witness, is in effect forcing pro se indigent plaintiffs to file and serve a complaint that would inevitably face the test of a motion to dismiss their complaint summarily by the defendants claiming that no cause of action is stated for a lack of an expert witness doctor's participation and verification of the alleged negligence and wrongful death claims. See Judge Madden's Orders annexed hereto as Exhibits "A" and "B".
25. The law together with principles of fairness and Justice mandates that this court assists indigent plaintiffs respecting their incapacity to present an expert witness doctor in filing their complaint of negligence wrongful death and pain and suffering.
26. Additionally, the court cannot and should not proceed to decide the case unless and until the expert witness doctor issue is properly decided by the court and finally resolved on appeal, it being the case that by law the court's determination cannot be found to have been correctly rendered absent an expert witness doctor's participation and supportive testimony substantiating plaintiffs' claims of medical malpractice.
27. Essentially, since the law requires a civil litigant shows at trial before a jury and or a trier of fact verifiable prima facie medical evidence of an expert witness doctor who is licensed to practice in the State of New York supporting the plaintiffs' claims of negligence and wrongful death, it is then imperative that the court assigns an expert witness doctor in order that plaintiffs comply with the law and so that they may be afforded due process and an equal and fair opportunity to litigate their claims at trial. **See CPLR §3101(d) concerning expert witness needed in preparation for trial.**
28. Denial of plaintiffs' request of an expert witness is tantamount to denial of Justice to plaintiffs since the court is in fact failing to obey the very demands of the law respecting the matter and at the same time the court is forcing them to serve and file their complaint in complete disregard of the fact that indigent plaintiffs lack the ability to present an expert witness doctor by reasons beyond their power and control.

29. Furthermore, a court denial of an expert witness doctor constitutes a denial of plaintiffs' rights to due process and equal protection clauses under the US Constitution, it being the case that plaintiffs are being unfairly treated and discriminated against by the very state courts because of their economic legal status.

30. Moreover, that in so doing the court's actions and inactions can be perceived as "judicial conduct intended to aggrieve plaintiffs and to damage their case all to the benefit and enjoyment of the corporate defendants, thereby depriving plaintiffs of the right to Justice while also releasing the defendants of its liability to the plaintiffs in this important 911 Civil Rights Medical Malpractice action."

31. We state for the record about these relevant facts and circumstances, and also restate and reaffirm that initially plaintiffs commenced their case pro se by filing summons with notice on November 17, 2017 as authorized by Judge Shoenfeld's order granting plaintiffs relief of poor person and allowing them to proceed with their claims against the corporate defendants Mount Sinai Hospital.

32. ***At the time pro se plaintiffs were not required to file an affidavit of merit testifying about any consultation had with an expert witness doctor and finding of reasonable cause that negligence exists in the case only because they lacked the financial means to hire the services of a doctor and an attorney to represent them, nor did the Supreme Court required them to do so initially pursuant to CPLR §3012(f).***

33. Now the presiding judge (Judge Madden) is requiring the indigent plaintiffs to serve and file the complaint also without requiring the submission of an affidavit of merit verified by an expert witness doctor. However the court in so doing is also allegedly purposefully ignoring, evading and/or refusing to decide the plaintiffs' fundamental request for court assistance and appointment of an expert witness doctor that by law plaintiffs are required to present in order to prove their claims of negligence and wrongful death at trial and which is also needed to properly write, serve and file their complaint, to assist plaintiffs in preparation for trial, and to testify under oath at trial about the merits of their action.

34. Besides the court is to notice the fact that, as stated *supra*, the requirement that counsel shall file a certificate of merit with the complaint in commencing a medical malpractice action under CPLR §3012(a) is not applicable to this case since plaintiffs are proceeding pro se and at this juncture of the case no attorney of the private bar has been formally hired or legally assigned by the court to represent plaintiffs.

35. **Notwithstanding, the provisions of CPLR §3012(a) are rendered inapplicable by the provisions of CPLR §3012(f) stating that "The provisions of this section shall not be applicable to a plaintiff who is not represented by an attorney."**

36. It is submitted however that plaintiffs have consulted with numerous attorneys and law firms regarding their case and after consulting with their partners and medical doctors thereof it has been determined that the plaintiffs' case has merit. See Email Letter of Attorney annexed herewith as Exhibit "D".

37. ***As plaintiff Betancourt duly informed Judge Madden at the August 15, 2019 hearing, despite the fact that plaintiffs' case has merit, no attorneys have taken the action only because it presents complicated issues relevant to 911 matters and medical malpractice matters concerning corporation defendants Mount Sinai Hospital's neglect of plaintiff Ada Rodriguez's colon cancer and pulmonary embolism, and other issues pertinent to violation of plaintiffs' civil rights under color of state and federal law, and the fact that plaintiff Betancourt initially commenced the action pro se and which he has been litigating on his own for many years already.***

38. Yet in all the consultations plaintiffs have had with law firms, the attorneys have also informed them that their medical malpractice civil rights case has merit but because of in-house corporate policies their offices do not normally take new cases of medical malpractice that have been commenced and litigated by a pro se civil litigant.

39. Notwithstanding, given the fact that indigent plaintiffs cannot hire an expert witness doctor's services to prove their medical malpractice claims because of their impoverishment, which economic status is legally established by Judge Shoenfeld's poor person order dated and filed November 17, 2017, it then attaches unto the presiding judge the *judicial duty* to assist plaintiffs in the matter since absent an expert witness doctor's participation and verifiable affidavits submitted in support of the complaint thereto or testimony made at trial under oath the plaintiffs' causes of action allegedly may be deemed to lack credibility under the law and the complaint may be found to be deficient of merit of any medical negligence and wrongdoing by the corporate defendants Mount Sinai Hospital and, consequently, their case is likely to suffer summary dismissal pre-answer on the basis of an alleged failure to state a cause of action in this medical malpractice case.

40. The court Judge Madden knows this and the defendants Mount Sinai Hospital's attorneys at the firm Kaufman, Borgeest and Ryan also know it.

41. ***Nevertheless, we also submit, and further restate for the record herein, that since by law plaintiffs are required to present an expert witness doctor who may testify under oath at trial as to the subject matter and substance of the plaintiffs' claims of negligence and wrongful death against the corporate Mount Sinai Hospital defendants, the court by law is required to assign an expert witness doctor to the indigent plaintiffs as otherwise the court in effect would be depriving plaintiffs of a fair trial and equal access to Justice, thereby denying them due process and Justice.***

42. ***Hence we respectfully submit that in this particular case of 911 medical malpractice and violations of plaintiffs' civil rights committed under color of state and federal law the expert witness doctor issue is fundamental and mandated that it be granted by law. That the issue is unavoidable and vital to the plaintiffs' due process rights to a fair trial, equal access to the court and a meaningful opportunity to litigate their meritorious claims and to obtain Justice in the state court, and, therefore, this court Judge Madden must decide it in plaintiffs' favor by law.***

43. ***The law CPLR and US Constitution mandates that an expert witness doctor is provided to indigent plaintiffs and the Due Process and Equal Protection Clauses of the US Constitution guarantee the civil litigant's right to one, and based on the foregoing.***

44. **Here as was stated hereinabove, Judge Madden's order, at first instance, entirely omits, ignores, and fails to decide the plaintiffs' request concerning an expert witness which they cannot afford.**

45. **As plaintiffs informed Judge Madden in the Affidavit in Support of Motion that was submitted on August 1, 2019, indigent plaintiffs cannot possibly afford the services of an expert witness which is a mandatory requisite under the law and practice in order to prove their claims of negligence wrongful death in this important complex 911 Civil Rights Medical Malpractice Civil Action.**

46. **Judge Madden was informed of the expert witness issue both in the plaintiffs' original notice of motion and affidavit submitted in support thereto. Also plaintiff Betancourt argued the matter before Judge Madden at the hearing held on August 15, 2019, stating that indigent plaintiffs cannot afford an expert witness doctor and that their only recourse to Justice is to ask the court for assistance in the matter, requesting thereby that the court, pursuant to the US Constitution and the court's power and authority to review and decide matters before it, and also as a matter of discretion, grants plaintiffs the appropriate and fundamental relief of assigned expert witness and counsel.**

47. Yet again this significant issue of first impression concerning indigent plaintiffs' right to a court assigned expert witness doctor was totally ignored in the court's order.

48. Therefore it is vital to the plaintiffs' case that Judge Madden properly corrects and completes her order, finally deciding the matter concerning indigent plaintiffs' incapacity to present an expert witness.

49. As Judge Madden knows, by law an expert witness doctor is needed in order to review the medical records and to certify and validate the merits of plaintiffs claims of negligence and wrongful death that corporation defendants Mount Sinai Hospital committed against plaintiff Ada Rodriguez, as alleged in the summons with notice, motions and other legal documents that plaintiffs have filed in the case, and also in order that such claims are properly demonstrated at trial.

50. This *expert witness mandatory medical requirement* of the law, and also as a matter of common sense, we submit must be met by plaintiffs in order to prove any torts of negligible medical wrongdoings by defendants Mount Sinai Hospital relevant to the medical treatment defendants provided (or failed to provide) to plaintiff Rodriguez.

51. Furthermore, it must be reasoned by the court that absent an expert witness doctor(s) presented by plaintiffs who may testify under oath at trial as to the nature and extent of those injuries and wrongs that the defendants Mount Sinai Hospital committed against plaintiff Rodriguez, and how much of their negligence if not 100% and/or to what extent and degree their wrongful actions and inactions contributed to and was in fact the direct result of her death, the court cannot effectively execute its powers at law and to render a proper and just determination in this medical malpractice case.

52. Hence as noted *supra*, it being the matter before the court today that indigent plaintiffs are unable to hire the services of an expert witness doctor(s) because of their impoverishment, which poor person status this Supreme Court Judge Shoenfeld held by order dated and filed on November 17, 2017 allowing plaintiffs to proceed as poor person litigants with their negligence wrongful death claims against the corporation defendants Mount Sinai Hospital, it was the duty of Judge Madden to legally assist indigent plaintiffs by facilitating them a court hired expert witness.

53. Evidently the court was legally obligated to assign counsel who may then contract an expert witness physician in preparation for trial in this medical malpractice case.

54. Yet in denying court appointment of counsel, Judge Madden mistakenly sidestepped and ignored *entirely* the rather important issue of an expert witness, which if properly decided and granted would have required the court's assigning counsel also.

55. As plaintiffs stated in their August 30, 2019 Affidavit in Further Support of their Notice of Motion, the court should not force plaintiffs to submit an amended complaint before first having an expert witness review the medical records and certify about the nature of the wrongs and injuries that the institutional defendants Mount Sinai Hospital committed against plaintiff Rodriguez.

56. ***Plaintiffs have a due process constitutional right to present testimony of an expert witness doctor(s) at trial and a right to rely on the knowledge, study and skills of said expert witness doctor both in filing their complaint and in preparation for trial.***

57. ***Fundamentally, denial of indigent civil litigants' due process right to an expert witness provided by the Supreme Court in a medical malpractice action constitutes what can be reasonably adjudged is equivalent to judicial unconstitutional deprivation of indigent civil litigants' right to present evidence, to be permitted a fair trial and judicial forum, and to equal access to the judicial system and to an equal opportunity to receive Justice.***

58. Although Judge Madden, as noted *supra*, did extended the time within which plaintiffs are to submit their amended complaint by an additional 60 days from the date of her August 1, 2019 order, and Judge Madden also allowed hearing oral arguments on August 15, 2019 on the merits of plaintiffs' notice of motion to reargue and reconsider her prior May 23, 2019 order that formerly denied plaintiffs' ex parte request for court appointed counsel, which notice of motion was filed on that same day August 1, 2019 that the court decided plaintiffs prior OSC to Amend Caption to Substitute Plaintiff Betancourt as Administrator of the Estate of Plaintiff Ada Rodriguez filed on June 27, 2019 and as Judge Madden had required of plaintiffs by order dated May 23, 2019, notwithstanding Judge Madden in denying plaintiffs' request for court assigned counsel without mentioning and deciding the expert witness doctor issue in effect further limited plaintiffs' ability to successfully represent their case of medical malpractice and deprived them of due process.

59. Here as plaintiffs stated in the August 30th Affidavit the expert witness requisite raises important issues of first impression relevant to constitutional due process rights of indigent plaintiffs. We submit that the Constitution guarantees plaintiffs due process procedural and substantive rights, which the court must protect and enforce thus.

60. ***Plaintiffs have a constitutional due process right to a fair trial and to present evidence in support of their claims. However the court's orders deprive them of those constitutional rights.***

61. The fact that indigent plaintiffs' poverty status makes it impossible for them to comply with the law and its mandatory legal procedures and requirements regarding the presentation of an expert witness' verified affidavit or testimony made under oath at trial is sufficient legal basis to conclude that plaintiffs are not able to effectively comply with those requirements under the law for reasons beyond their power and control and, consequently, it is the duty of the court to appropriately assist them respecting their incapacity to hire and present to the court an expert witness.

62. Essentially, this Supreme Court, in point of fact, cannot properly proceed to decide a medical malpractice action absent the participation of an expert witness. Likewise, Judge Madden cannot judiciously review and decide about the merits of plaintiffs' complaint, if one is to be filed by plaintiffs without the presence and assistance of an expert witness, as such a complaint would then allegedly lack the necessary element of an expert witness doctor's medical knowledge, study, experience, and findings, which is needed to substantiate plaintiffs' claims of negligence and wrongful death.

63. Furthermore, we submit that under the law pro se plaintiffs are not qualified and licensed to practice medicine nor trained to review medical records in stating causes of auction of negligence and wrongful death unassisted by counsel and expert witness, which doctor is needed by law to present a properly made complaint.

64. ***Here in effect in failing to assign an attorney to represent indigent plaintiffs and in omitting, ignoring and failing to decide the expert witness subject, the court in reality is requiring under the threat of dismissal that plaintiffs present a complaint pro se exclusive of an expert witness and that they proceed to litigate the causes of action stated in the said complaint in a manner that is both substantively damaging and procedurally unfair to them, the practice of which is unauthorized by the law.***

65. Both the law and common sense dictate the foregoing.

66. In a medical malpractice case, we submit, the causes of action of negligence and wrongful death cannot just be submitted to the court based upon allegations facts and inferences made thereto solely from what a civil litigant believes, states and or claims happened. In fact, common sense and law philosophy and practice dictate that any such claims of negligence and wrongful death are to be supported by the verified statements of an active doctor who is able to corroborate the plaintiffs' claims at trial.

67. It is our understanding, and as the court knows, in other non-medical malpractice civil actions such pleadings practice are held to a more liberal standard of pleading requirements. In the majority of civil cases, in fact, that do not contain the expert witness requirement it is allowed that civil litigants plead causes of actions more freely and without first needing to consult with and to hire the services of a medical professional or doctor in presenting a complaint for the court to review and decide.

68. *Although CPLR §3012(f) renders the certificate of merit requirement of CPLR §3012(a) inapplicable in a medical malpractice case commenced by pro se plaintiffs, still committing self-represented indigent plaintiffs to file a complaint in a medical malpractice case where the court has by error failed to assist them by not facilitating an expert witness to them, plaintiffs are then forced to submit a complaint pro se that allegedly may fail to state a cause of action and ultimately jeopardize their case.*

69. The Mount Sinai Hospital defendants, acting through their attorneys, it must be reasoned then, are to benefit mostly from such unfair judicial action exercised against plaintiffs. Consequently, as stated earlier, the attorneys would then move to dismiss summarily pre-answer alleging that plaintiffs have failed to state a cause of action.

70. The court knows that that is the danger plaintiffs pro se face if ultimately they are forced to submit a complaint on their own and unaided by an attorney and an expert witness physician provided by the court.

71. ***Hence complying with the court's August 1, 2019 order under the threat of dismissal is tantamount to injuring plaintiffs' case irreparably and forcing them to suffer what otherwise can be reasoned is the premeditated unconstitutional judicial dismissal of their meritorious complaint.***

72. Thus, the court's orders of August 1, 2019 and August 29, 2019 are indeed unconstitutional per se since plaintiffs in effect are being forced to submit a complaint that lacks the necessary expert witness element in a medical malpractice case, which practice would result in injury to their case and further violation of their due process.

73. Again we state for the record by law the court has a *duty* to assist indigent plaintiffs respecting the key central issue of an expert witness which plaintiffs cannot afford and, thus, one cannot be presented in proving their negligence and wrongful death claims. The court is bound by law, the Constitution's guarantee of Due Process, law of evidence, CPLR, and principles of fairness and ideals of Justice to assist indigent civil litigants in this matter, it being the case also that this court cannot effectively proceed to review and decide the merits of plaintiffs' case absent an expert witness.

74. ***However, the court by its recent order has today failed to decide this rather important issue concerning indigent plaintiffs' incapacity to present an expert witness because of poverty. In so doing, this court, in fact, is depriving plaintiffs of due process, and its decisions of August 1, 2019 and August 29, 2019 cannot and must not be sustained as reasonable and legally correct and binding under the law.***

75. Here the court knows from the facts of the case that plaintiffs are at a disadvantage in representing themselves against corporation Mount Sinai Hospital defendants acting through their attorneys at Kaufman Borgeest & Ryan LPP. The court knows also that defendants Mount Sinai Hospital and their attorneys have their doctors ready to testify against the plaintiffs' claims of negligence and wrongful death.

76. ***Hence it is quite clear that in this special case there are obvious legal differences in the parties' powers and abilities to litigate the matter before Judge Madden and that indigent plaintiffs stand to suffer the most irreparable damage consequently.***

77. ***Failing to exercise even its discretionary powers in denying assignment of counsel, not to mention also that the court has totally ignored or sidestepped the important constitutional questions plaintiffs raised concerning their request for a court assigned expert witness, is seen also as an act of unfairness by the court and an unwillingness to balance the palpable legal differences and powers of the parties, thereby showing undue bias and prejudice in drawing disputed decisions that, for all intents and purposes under the law, do not follow the demands of Justice.***

## The Court's Orders Unfairly Deprive Plaintiffs of Constitutional Due Process and The Court Should Impose Sanctions Against Attorney Eldar Mayouhas and the Firm Kaufman, Borgeest & Ryan LPP for the Continuous Unethical Abusive Practices and Frivolous Motion Practice Performed in this Case

78. It is respectfully submitted that the court's order in page 3 at the end where it states verbatim that "any further motions by notice will be denied automatically and that only orders to show cause will be allowed in this action constitutes an excessive arbitrary and capricious judicial act that violates the plaintiffs' constitutional due process rights and also unfairly injuries plaintiffs.

79. The decision of the court today raises serious concerns about its impartiality and ability to render a fair determination in this important 911 Civil Rights Medical Malpractice case.

80. ***Here Judge Madden's order was influenced by the false and misleading statements that counsel Mayouhas made at the hearing held in Judge Madden's chamber on August 15, 2019 verbatim "plaintiffs have made many motions and it is costing his firm money," thereby asking the court to take action precluding pro se plaintiffs from filing future motions with the court.***

81. Counsel Mayouhas's statements are completely unjustified, misleading and fabricated, intended to persuade the court to act with prejudice against the pro se plaintiffs and in order to damage their case.

82. ***What Judge Madden did not know at the time is that counsel Mayouhas had written to plaintiff Betancourt via email stating that verbatim "Judge Madden's clerk had called counsel and informed him that plaintiff Betancourt had filed another motion," which information counsel then intentionally distorted to argue before Judge Madden that plaintiffs were making too many motions and that it was costing his law firm money. See Counsel Mayouhas' email annexed hereto as Exhibit "E".***

83. Evidently, counsel Mayouhas has exercised the unethical practice of purposefully and intentionally distorting court communications with the intent to mislead confuse and influence the court to act adversely against the pro se plaintiffs and in order to damage their case. Counsel Mayouhas would then further fabricate and misrepresent the said court information to Judge Madden in order to cast plaintiff in a negative light with respect to the foregoing matter respecting the alleged plaintiffs' motion practice, thereby requesting in a frivolous manner and without legal basis relief that is primarily intended to confuse the court and to obtain a decision adversely affecting the rights of plaintiffs, which is exactly what is happening in this case.

84. **Yet Judge Madden knew or should have perceived the frivolous nature of counsel's statements and the fact that his complaint lacked merit since plaintiffs have only made one single motion on notice in the case, which is the motion that was pending before Judge Madden seeking to reargue and reconsider her prior order of May 23, 2019 denying plaintiffs' request for assigned counsel.**

85. **It is stated for the record, and this court is reminded also, that plaintiffs' notice of motion to reargue/reconsider the court's prior order denying assignment of counsel was in fact the first and only motion made by notice that plaintiffs submitted in this case.**

86. **Therefore, there was then no reason for the court to issue such extraordinary and draconian ruling at that juncture in the case.**

87. ***It is further noted that the decision of the court, for all its appearances and purported motives and purposes under the law, is mainly intended to affect plaintiffs' rights rather than the rights of the corporation defendants Mount Sinai Hospital represented by the law firm of Haufman, Borgeest and Ryan LPP, and as such the court's order is unfair and constitutes an unauthorized excessive use and abuse of judicial power in the management of a legal case and the administration of justice.***

88. ***Furthermore, it must be noted that already in this case there is a history of pro se plaintiffs suffering much bias and prejudice both by the court and the attorneys representing the corporation defendants.***

89. Here we delineate for Judge Madden's understanding and to make matters clear in record, and also for purposes of appeal, counsel Mayouhas and the firm of Kaufman Borgeest & Ryan LPP initially filed a motion to dismiss by notice of motion. **Counsel Mayouhas filed the motion to dismiss without first inspecting the record of the case so as to have been fully informed of all the facts and circumstances relevant thereto and the proceedings had in the case therewith.**

90. Judge Madden never questioned counsel's unethical conduct that ultimately caused prejudice to the plaintiffs.

91. Had counsel Mayouhas reviewed the record of the case, he then would have known that Judge Goetz had issued an order ex parte filed on March 15, 2018 that extended the time for plaintiffs to serve the summons with notice by an additional 120 days to July 13, 2018. Counsel's first point of the notice of motion to dismiss then would have been deemed improper and entirely frivolous.

92. Yet it is not known if Mount Sinai Hospital's counsel Mayouhas and the firm Kaufman Borgeest & Ryan LPP had intentionally, purposefully and willfully filed the said notice of motion to dismiss despite being aware of the said Judge Goetz's order or if they did so in complete disregard defiance and dishonor of the same.

93. The record supports to some extent that counsel for defendant Mount Sinai Hospital did in fact dishonored and violated Judge Goetz's ex parte order by cross-moving for an order seeking reargument and vacatur of Judge Goetz's order, frivolously and without legal basis arguing that Judge Goetz had erred in granting plaintiffs ex parte relief of service time extension and without showing any real injury suffered to defendants as a result of Judge Goetz's order.

94. However the frivolous unethical conduct of counsel Mayouhas and the firm Kaufman Borgeest & Ryan LPP became evident at the January 10, 2019 hearing had in Judge Madden's Chamber when after plaintiff Betancourt presented Judge Madden a copy of Judge Goetz's ex parte order counsel asked to reargue and remove that order.

95. Judge Madden allowed counsel Mayouhas to reargue Judge Goetz's order by way of reply, which decision was not authorized by the law CPLR since Judge Goetz's order was made on an ex parte application which renders the same not appealable.

96. Notwithstanding, as noted counsel's request lacked merit and nothing substantively was stated to Judge Madden that under the law would legally warrant or justify entertaining any reargument and or any attempt to vacate and to remove a prior Judge Goetz's ex parte order extending the time of service of the summons with notice.

97. Although ultimately by order dated and filed May 23, 2019 Judge Madden denied the defendants' notice of motion to dismiss, the attorneys were never sanctioned or even cautioned with respect to the frivolous nature of their actions in filing what was clearly meritless motions, which we restate were made by notice of motion.

98. Furthermore, we state that counsel Mayouhas after the January 10, 2019 hearing did ultimately moved the court by notice of cross-motion seeking to have Judge Goetz's ex parte order of March 15, 2018 removed and vacated and the case dismissed.

99. Counsel's motion was made about a year after Judge Goetz's order was entered and after plaintiffs pro se filed an OSC seeking an order to enforce Judge Goetz's order.

100. **It is noted that this was counsel's second motion filed on notice in the case.**

101. **Thereafter, counsel filed another (defendant Mount Sinai Hospital's third (3) notice of motion) amended notice of cross-motion in this matter.**

102. *In none of these instances however Judge Madden issued any order indicating that the court was to limit the amount of motion practice by defendants Mount Sinai Hospital acting through their counsel.*

103. Notwithstanding, plaintiffs were forced to file two (2) orders to show cause ex parte motions (one OSC was signed by Judge Borrok on January 22, 2019 and another by Judge Madden) seeking to enforce Judge Goetz's ex parte order of March 15, 2018, since the attorneys for Mount Sinai Hospital were in fact violating and dishonoring Judge Goetz's ex parte order, and violating the law CPLR's provisions authorizing the extension of time of service of summons with notice, and violating plaintiffs' due process rights in frivolously and without any legal basis seeking to have Judge Madden remove and vacate that order and to obtain an otherwise unlawful forced dismissal of the case.

104. It is noted that ***"plaintiffs were forced to file their ex parte motions in order to have Judge Goetz's ex parte order enforced and since at the time plaintiffs' due process rights were being patently violated by reason of the same order not being honored by defendants and enforced by Judge Madden."***

105. ***Further, it was Judge Madden's duty to have then and there immediately denied counsel's request to reargue and remove Judge Goetz's ex parte order, but to no avail. At the January 10, 2019 hearing Judge Madden entertained counsel's frivolous baseless bogus request despite knowing that it lacked merit and could not be sustained under the law.***

106. ***Also at that hearing plaintiff Betancourt was not allowed to fully counter against counsel Mayouhas's request to reargue Judge Goetz's ex parte order, and he basically had to plead that Judge Madden would grant him the opportunity to say a word in opposition, but to no avail.***

107. ***Hence since the beginning of this case pro se plaintiffs have been aggrieved and overburdened by the frivolous and unethical practices of corporation defendants Mount Sinai Hospital and their attorneys at Kaufman Borgeest & Ryan LPP, which unethical abusive conduct Judge Madden has allowed to continue undeterred without any court warning and imposition of sanctions.***

108. We seriously think that such unethical behavior would not have happened had plaintiffs been represented by an attorney.

109. However there have been numerous other instances of unfairness bias and prejudice suffered by the pro se civil litigants in this case involving a powerful influential and wealthy corporation Mount Sinai Hospital that is represented by the Wall Street law firm Kaufman, Borgeest and Ryan LPP before Judge Madden.

110. ***Here at the March 1, 2019 hearing held at Judge Madden's courtroom counsel Mayouhas "asked Judge Madden to issue an order prohibiting plaintiffs' rights to appeal and to seek relief at the Appellate Division."***

111. ***<u>Counsel Mayouhas' request was totally inappropriate unethical unlawful and abusive, and Judge Madden should not have allowed counsel to continue exercising that kind of misconduct in her court.</u>***

112. ***Although Judge Madden denied counsel Mayouhas' request that basically sought the extraordinary unlawful relief of having a Supreme Court Judge violate a civil litigants' due process rights in litigating their case and on appeal, Judge Madden did so lightly and never sanctioned counsel's unethical abusive and frivolous conduct. Judge Madden at the time stated verbatim "counsel if you are asking me to stop Mr. Betancourt from appealing to the Appellate Division I cannot do that. Mr. Betancourt has the right to seek relief before the Appellate Division as any other litigant does."***

113. However we reiterate that counsel's unethical conduct was sufficient basis to impose sanctions and in order that the court is not any further influenced adversely against the pro se plaintiffs.

114. Yet counsel's request to Judge Madden of an order prohibiting plaintiffs from exercising their due process rights in this action and on appeal further evinces about the desperate and deceptive attempts by corporation defendants Mount Sinai Hospital's attorneys to influence the presiding judge against pro se plaintiffs and to obtain an otherwise quick and unlawful dismissal of this rather important 911 Civil Rights Medical Malpractice civil action.

115. Furthermore, plaintiffs pro se on numerous occasions have been prejudiced by ongoing inappropriate actions by the court and frivolous unethical conduct by the attorneys of defendants.

116. ***For instance, right from the start of this case pro se plaintiffs have had to rely on counsel Mayouhas to be informed of court proceedings, orders, and adjournments, since the court was not notifying plaintiffs of such court matters.***

117. ***Throughout the proceedings of this case pro se plaintiffs have complained of the fact that the court was not informing them of the dates of adjournments and hearings that the court agreed to in conference held only with defendants' counsel.***

118. In fact, plaintiff Betancourt informed Judge Madden of the situation and that the court was not providing him copies of orders after Judge Madden had signed plaintiffs' OSCs (2).

119. At one point Judge Madden during a hearing held at her courtroom questioned her clerk about plaintiffs' complaints that the judge's orders were not being provided to plaintiffs and the clerk refused to answer since she did not wanted to be personally implicated in the matter.

120. Here at the August 1, 2019 hearing counsel Mayouhas stated to Judge Madden that he objected to the alleged lack of proper service of the plaintiffs' order to show cause to amend the caption of the case to substitute plaintiff Betancourt as the administrator of the estate of his mother Ada Rodriguez.

121. However plaintiff Betancourt tried within a limited brief time to explain the Truth to Judge Madden, but it was not possible.

122. The Truth is that days earlier plaintiff Betancourt had visited the courtroom and personally asked Judge Madden's clerk if Judge Madden had signed the order to show to cause to amend caption that plaintiffs filed on June 27, 2019. At the time the clerk stated the following: "the Judge wants to hear arguments on the OSC on August 1, 2019." Plaintiff Betancourt then asked to be provided a copy of the OSC but the clerk did not provided him the said order. At the time she stated that "she does not know where the order is and referred plaintiff Betancourt to visit the court's office of self represented Room 116."

123. Then Mr. Betancourt visited the office of Room 116 and after searching for the order they said that Judge Madden had it, redirecting plaintiff Betancourt to return to Judge Madden's courtroom to obtain a copy. Thereafter plaintiff Betancourt again asked for the order but the clerk did not provided it to him, stating "just come on August 1, 2019 and anything that you have to say to the judge say it at that time."

124. Hence, in the end, the court never provided plaintiffs the order that Judge Madden had signed and, therefore, they were not able to serve it upon defendants. Plaintiff Betancourt never had a chance to review the said order prior to the August 1, 2019 hearing and in order to follow the court's instruction regarding the time and manner of service of the same.

125. However, plaintiff Betancourt did informed counsel Mayouhas by email communications about the foregoing and that he had just learned that Judge Madden was having a hearing on the said order on August 1, 2019.

126. We respectfully submit that the court on numerous occasions has not informed pro se plaintiffs of the dates of many hearings, with the exception of the January 10, 2019 hearing which the court had scheduled after holding a telephone conference with both parties on December 13, 2019, another hearing that the court adjourned during a telephone conference had with the parties while the parties were litigating matters on appeal at the Appellate Division on April 3, 2019, and other court hearings that Judge Madden personally scheduled and notified the parties about during hearings held at her courtroom and chambers.

127. However, as noted above, on numerous times plaintiffs have learned about court dates and hearings only after they personally visited Judge Madden's courtroom and the clerk then provided them the information for the first time.

128. *Nonetheless, respecting plaintiffs' order to show cause to amend caption filed on June 27, 2019, at the close of the August 1, 2019 hearing Judge Madden did not understand that Betancourt made various efforts to obtain her order and that neither her clerk nor the office of self represented Room 116 provided him the said order.*

129. ***Yet as the record shows, the same scenario happened previously in the action when Judge Madden's clerk did not provide Betancourt another OSC that Judge Madden had signed. At the time, the clerks looked for the OSC and said they could not find it and that they did not know where the case's record was. The clerks also stated that he must appear at the hearing and ask the judge about the OSC.***

130. ***In fact Betancourt repeatedly asked to be provided Judge Madden's order pertinent to an OSC to enforce Judge Goetz's ex parte order of March 15, 2018, but to no avail. In the end, plaintiff Betancourt was forced to leave the courtroom without being provided a copy of the OSC that Judge Madden had signed.***

131. We respectfully submit that we delineate these matters only in order to explain and to show the many undue biases and prejudices and difficult hurdles that pro se plaintiffs have experienced and continue to experience in litigating this civil action in the Supreme Court. Consequently, we submit, plaintiffs pro se are not been treated fairly under the law in Judge Madden's courtroom.

132. Again we sincerely doubt that any such biases and prejudices suffered against pro se plaintiffs would have been exercised and allowed to continue had they been properly represented by an attorney in this civil action.

133. We seriously believe that it is because of their pro se poor person status that plaintiffs are inappropriately and unfairly treated in this case, and we can only ask that the court, in now being aware of these serious important matters, does something about them, so as to avoid damaging plaintiffs' case any further and to prevent their suffering more irreparable harm during the course of this civil action.

134. Likewise, we inform the Court that there have been many instances of counsel Mayouhas intentionally and purposefully lying to Judge Madden with respect to proceedings of this case, intended to prejudice the plaintiffs and to damage their case brought against corporation Mount Sinai Hospital.

135. ***With regards to frivolous and unethical conduct of counsel Mayouhas and the firm of Kaufman Borgeest & Ryan LPP, as described herein, we also sincerely think that their misconduct shows "a clear calculate purposeful and determined pattern of abuse intended to overburden and injure plaintiffs so as to damage their case and deny them the right to Justice."***

136. ***Accordingly, Plaintiffs request that the court imposes sanctions against the attorney Mayouhas and the firm Kaufman, Borgeest & Ryan LPP for the continuous unethical abusive conduct and frivolous motion practice.***

137. **Nevertheless, today Judge Madden's recent order dated August 30, 2019 and filed September 3, 2019 clearly reveals that the court was influenced by the misleading and false statements of counsel at the August 15, 2019 hearing that basically requested that the court precludes plaintiffs from filing further motions.**

138. **Judge Madden's order in fact fulfills counsel Mayouhas's earlier request at the March 1, 2019 hearing that Judge Madden stops plaintiffs from seeking relief at the Appellate Division and that the court deprives them of their rights on appeal.**

139. **Constitutional wise, and also as a matter of legal practice, we object to the force and wording of Judge Madden's order. It is in effect, as we stated *supra*, an order that (1) limits and deprives, without valid legal reasons and justifications thereof, pro se litigants' due process rights, and (2) adversely affects their case since by law and as a matter of civil procedure, law and rules it restricts the litigants' ability to properly and successfully represent their cause both at the trial court and on appeal to the appellate courts, in violation of the law CPLR.**

140. *Fundamentally, the said order is in fact at first instance "capricious and arbitrary," and the court has overreached its powers and authority since there is nothing in the record justifying issuing that draconian extraordinary ruling.*

141. *As we have explained supra, "plaintiffs pro se have only filed before Judge Madden one single Notice of Motion which above all things bears merit since they merely asked for appropriate and needed relief, under the law CPLR and the federal and state constitutions, seeking to reargue and to reconsider Judge Madden's prior order that in error denied their ex parte application for a court appointed counsel"; and "seeing the court's order today it appears that plaintiffs are being wrongfully punished for no valid reason other than that they rightfully moved to reargue this court's prior order for relief of court assistance pertaining to their inability to hire the services of an expert witness doctor and an attorney to represent their case, which relief Judge Madden should have granted under the Law, US Constitution and CPLR, and also in consideration of plaintiffs' case."*

142. *Yet Judge Madden's order goes further in sua sponte stating that the court will outright deny any future motions on notice filed in the action regardless of their merit, and permitting only the filing of an order to show cause, which prohibition denies plaintiffs due process and the right to appeal the court's orders, since by law an OSC is not appealable to the Appellate Division as of right. CPLR §5701(a)(2).*

143. *The Appellate Division has prohibited the practice of judges imposing requirements or restrictions prior to litigants filing motions. See Goldheart International, Ltd. V. Vulcan Constr. Corp. 120 A.D.2d 507, 508 N.Y.S.2d 182 (1st Dep't 1986). The Second Circuit also curtailed the get-permission-first rule used by some federal district judges. See Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647 (1987).*

144. *Professor Siegel in New York Practice, 3rd Ed. states that "The appellate division rejected that restriction, holding in Goldheart International, Ltd. V. Vulcan Constr. Corp. that a judge can't refuse to entertain a properly made motion."*

145. *Professor Siegel furthermore states the following regarding motion practice in New York courts:*

> *"Although New York statutory law is not explicit on the point, the general rule from the cases is that motions must be made on notice.*
>
> *Practically speaking, the only time a party should attempt to move ex parte is when a statue or rule explicitly authorizes it.*
>
> *Lawyers should make it their business to make all motions on notice unless there is an unambiguous statue or rule at hand authorizing the particular motion to be made ex parte."*

146. ***Hence clearly Judge Madden's order violates the CPLR provisions regarding a civil litigant's right to file motions on notice, the Appellate Division's orders rendered in legal precedents supra, and plaintiffs' due process rights. The said order also shows a disposition by the presiding judge to automatically deny all future notice of motions that plaintiffs file in the action, thereby casting doubt into the judge's impartiality and her ability to render decisions and judgment in a manner that is both fair and free of bias, prejudice and favors.***

## Judge Joan Madden is Respectfully Asked to Recuse Herself from this Important 911 Civil Rights Medical Malpractice Civil Action

147. Notwithstanding, based upon the foregoing, Judge Madden is respectfully asked to withdraw from this important 911 Civil Rights Medical Malpractice civil action.

148. ***It is respectfully submitted that in litigating this case the indigent plaintiffs have experienced much unfairness, bias and prejudice both from the corporation defendants Mount Sinai Hospital and the court Judge Madden; and judging by the court's decision it must be reasoned that such judicial action denying indigent plaintiffs' request for court assigned attorney and failing to decide or ignoring their request for court assigned expert witness doctor primarily benefits the corporation defendants Mount Sinai Hospital, constituting what can be deemed as "judicial corporate favoritism."***

149. Again there is no basis at law warranting the decision by the court that basically limits the rights and powers of civil litigants to properly and fully litigate their case under the law. The court's order of today, which at first sight is unprecedented and unsupported by the record, directly violates the Law, the New York Civil Practice Law and Rules, the New York State Constitution, the United States Constitution and it constitutes a patent violation of plaintiffs' rights to due process.

150. As such it is submitted that at this juncture in the case one sincerely doubts Judge Madden's ability to render a proper and fair determination. Judge Madden's decision was in fact influenced and motivated by corporation Mount Sinai Hospital's counsel Mayouhas' false, misleading and unethical statements at the August 15, 2019 hearing that verbatim "plaintiffs are making many motions and it is costing our office money," in effect a request that the court limits the plaintiffs' rights in this case.

151. It is noted and as was stated above, that this is not the first time that counsel Mayouhas has made such frivolous and unethical requests to Judge Madden that basically asks the court to limit and to deprive the plaintiffs' rights under the law and to adversely affect their ability to litigate their action against corporate Mount Sinai Hospital Defendants. The record clearly supports our conclusion today.

152. **Accordingly plaintiffs respectfully submit that they have lost faith in Judge Madden's competence to act neutral and fair under the law and to make decisions, orders and judgment respecting plaintiffs' rights without exercising any degree of bias and prejudice, and particularly without lending any favors to the opposite side corporation Mount Sinai Hospital.**

153. **The impartiality and decorum of the court today is seriously questionable and under the circumstances present in this case, therefore, the court (Judge Madden) is respectfully asked to recuse herself from this important 911 Medical Malpractice Civil Action.**

154. Furthermore, after careful consideration of the facts and circumstances of the case, we submit that the record supports that since commencing their case the indigent self-represented plaintiffs have not been and are not being treated fairly in Judge Madden's court and that the New York State Supreme Court, as it stands now, is not a proper forum where their important 911 Civil Rights and Medical Malpractice claims can be properly and fairly adjudicated, and based on the foregoing reasons.

155. Also for the record it is submitted that the court's orders appear to be one sided and extending favors to the corporation defendants Mount Sinai Hospital since the presiding judge knows that already the corporation defendants Mount Sinai Hospital have their expert witness doctors available and ready to testify under oath against any claims of negligence and wrongful death presented by plaintiffs in the complaint.

156. Hence viewing the legal matters at hand, it is now obvious that the presiding judge (J Madden) is not acting fairly under the law and that plaintiffs are being aggrieved consequently. The record supports our conclusion.

157. Furthermore, based on all the foregoing reasons herein mentioned above, recusal is demanded in order to allow plaintiff the right to a fair trial, to due process, substantive and procedural, to equal access to the judicial system, to a meaningful opportunity to litigate their claims in a manner that is both fair and free of bias and prejudice, and to obtain Justice.

158. ***Clearly Judge Madden, as can be evinced from her recent controversial orders denying plaintiffs' request for court appointed counsel as of right under the US Constitution but without even stating anything regarding the court's discretionary power to assign counsel to indigent self-represented civil litigants in a case where clearly there are obvious legal differences between the parties that if left uncorrected by the court will inevitably result in undue prejudice against the civil litigants and possibly damage their case, ignoring evading and not deciding plaintiffs' request for court assigned expert witness doctor, while at the same time requiring plaintiffs to serve and file the complaint within 60 days from her order of August 1, 2019, and then suddenly and without legal cause issuing an order unconstitutionally restricting the plaintiffs' right to file future motions properly made on notice in the case, has indeed exercised judicial partiality and gratuitous corporate favoritism.***

159. Judge Madden's orders constitute an abuse of judicial power and discretion and the exercise of undue bias and prejudice against plaintiffs that has generally removed any faith and trust that plaintiffs may have in the judge and her ability to supervise their case fairly and to render a just determination or final judgment after trial.

160. ***We sincerely say, with all due respect to the presiding judge, that in rendering her recent orders, which for all intents and purposes under the law do present unquestionable elements of bias and prejudice toward indigent pro se plaintiffs, in this particular case Judge Madden has failed to uphold her oath and duty to Justice and such unethical judicial conduct must not be reasoned with nor tolerated, and certainly not in this important civil action that concerns the loss of life and severe pains and sufferings committed by the corporate defendants Mount Sinai Hospital against plaintiff Ada Rodriguez.***

161. ***Furthermore, the record shows that there have been just too many instances of unfairness and prejudice exercised against the civil litigants at Judge Madden's court, warranting the recusal or withdrawal of the judge assigned to the case.*** The court is reminded also that this case is about a human being Ada Rodriguez, a 911 Hero who died for this United States Nation and Humanity. The court by its decisions today appears to also have ignored this fact.

## Additional Points Submitted to the Attention of the Supreme Court Judge Madden Further Supporting the Plaintiffs' Motion in this Special Complex 911 Civil Rights Medical Malpractice Civil Action

162. There are important meritorious points that I think the court should be made aware of and review in deciding the present notice of motion.

163. After I left the hearing held on Thursday, August 15, 2019 in Judge Madden's chamber, I was unsure as to whether or not Judge Madden understood the significance and relevancy of the point concerning Mrs. Rodriguez's participation at Ground Zero during the 911 Tragedy that affected this nation and humanity and the negligent medical treatment that she received at Mount Sinai Hospital. It is submitted that the issue is relevant and connected to plaintiffs' claims of negligence and wrongful death, which plaintiffs will establish at trial by a preponderance of evidence and testimony taken of witnesses and an expert witness before Judge Madden.

164. Particularly, the corporation defendant Mount Sinai Hospital operates and manages a federally funded medical program The Mount Sinai Hospital World Trade Center Monitoring and Screening Program that treats the medical condition of thousands of 911 patients first responders who like Mrs. Rodriguez participated at Ground Zero, either as workers, government personnel or volunteers first responders.

165. Mrs. Rodriguez worked without pay for free as a first responder volunteer United States Citizen and Resident of the State and City of New York. She gave her heart and soul at Ground Zero when the City and State of New York called for residents to help. Mrs. Rodriguez was in fact the first women to work hard next to and with men at the bucket brigade in Ground Zero, as the photo that plaintiffs presented to Judge Madden and was introduced into record at the August 15, 2019 hearing demonstrates.

166. I also gave my heart and soul working without pay as a first responder volunteer in Ground Zero. I sincerely state that I personally witnessed my dear mother Ada Rodriguez doing all kinds of tasks and works at Ground Zero. Ada and I worked as volunteers first responders at Ground Zero for over a month till about middle of October 2001, and Ada continued providing volunteer work for over three (3) months since September 2001 to about December 2001.

167. That in treating Mrs. Rodriguez's medical condition cancer of the colon, corporate Mount Sinai Hospital defendants ignored the fact that Mrs. Rodriguez was a 911 first responder patient of its own institution at The Mount Sinai Hospital World Trade Center Monitoring and Screening Program that was being attended at its facility since 2001 to the time of Mrs. Rodriguez's death on November 16, 2015.

168. This is an important point that shows Mount Sinai Hospital's neglect of Mrs. Rodriguez's health. Doctors at the Mount Sinai Hospital Emergency Room knew that Mrs. Rodriguez was a patient of their 911 program since Mrs. Rodriguez personally informed them of the matter and she even provided them a "special id card that was issued to her by The Mount Sinai Hospital World Trade Center Monitoring and Screening Program."

169. Also, of significance is the fact that The Mount Sinai Hospital World Trade Center Monitoring and Screening Program informed Mrs. Rodriguez (and also plaintiff Betancourt) that she should present the id to the ER doctors at Mount Sinai Hospital and they would then have access to her record and all the treatment that she was receiving under the program, and hence that she would receive proper and complete treatment as a known "Mount Sinai Hospital 911 Patient."

170. Furthermore Mrs. Rodriguez was told that with her Mount Sinai 911 World Trade Center Monitoring and Screening Program id card the doctors at the Mount Sinai Hospital ER would know all about Mrs. Rodriguez's health condition, including prior visits, any examinations, treatment, procedures, and practices performed on the patient, and medications prescribed to her, and the doctors and other health professionals who treated and were treating her health condition, and that Mrs. Rodriguez, therefore, would receive expeditiously and proper treatment accordingly. None of which happened.

171. Instead the doctors at the Mount Sinai ER totally disregarded the fact that Mrs. Rodriguez was a 911 First Responder Patient at Mount Sinai Hospital and not just another patient who entered their ER facility complaining of severe abdominal pains.

172. It is important that Judge Madden comprehends also that these facts and other evidence will show at trial also that Mount Sinai Hospital mistreated and acted negligently toward Mrs. Rodriguez although it knew that many of its 911 first responder patients, thousands in fact, had died of similar medical causes and conditions such as cancer.

173. **Now, Judge Madden should understand that this is not just another medical malpractice civil case. No in fact this case is about a patient of the Mount Sinai Hospital and also a 911 first responder patient of The Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Judge Madden is informed of the fact that "Mrs. Rodriguez's cancer of the colon was medically certified as a 911 cancer by The Mount Sinai Hospital World Trade Center Monitoring and Screening Program."**

174. Yet plaintiffs seriously state, and they are convinced, and evidence and testimony will show at trial, if plaintiffs of course are guided by an attorney of this Court and an expert witness facilitated to them, that Mrs. Rodriguez should not have died and she would have survived her surgery and lived a relatively long time or decades had Mount Sinai Hospital properly expediently and professionally treated her medical condition (to wit a 911 related cancer of the colon).

175. **In fact numerous Mount Sinai Hospital doctors personally told Mrs. Rodriguez and Betancourt that "her cancer was insignificant, that it was a small mass, that it had not any roots, that it was not advanced and had not metastasized, that it had not spread to any other areas of her body, and, post surgery, that it was removed successfully."**

176. **Doctors of Mount Sinai Hospital also stated and assured plaintiffs both prior to and after the surgery that Mrs. Rodriguez would live a very long time, decades in fact. But in the end Mrs. Rodriguez died a few days after surgery, which result contradicts all the promises, assurances and statements of the Mount Sinai Hospital doctors.**

177. Upon information and belief, and at all times hereinmentioned, the doctors made such statements, advices, assurances and opinions after performing tests of Mrs. Rodriguez during and after her second visit to the ER on October 23, 2017.

178. Although Mount Sinai Hospital World Trade Center Monitoring and Screening Program certified Mrs. Rodriguez' cancer as a 911 disease, notwithstanding defendants Mount Sinai Hospital did committed negligence in treating (or failing to properly treat) Mrs. Rodriguez's cancer and other health conditions.

179. As plaintiff Betancourt stated to Judge Madden, hence, Mrs. Rodriguez could have lived, and would have lived had Mount Sinai Hospital treated her medical condition properly, expeditiously and professionally. Mount Sinai Hospital misdiagnosed Mrs. Rodriguez's medical condition and caused Mrs. Rodriguez to unnecessarily experience tremendous unbearable agonizing pain and suffering for approximately a month and one week after she was quickly released from the Mount Sinai Hospital Emergency Room on September 17, 2015.

180. Consequently Mrs. Rodriguez lost about 60 lbs during that period without receiving any medical treatment, except that she was taking a Cipro medication that was prescribed by doctors of the Mount Sinai Hospital Emergency Room allegedly to treat what they believed was a bacterial infection.

181. Upon information and belief, and at all times hereinmentioned, that the ER doctors told, advised and misinformed Mrs. Rodriguez that she had a bacterial infection and the only medicine they prescribed her was Cipro.

182. Upon information and belief, and at all times hereinmentioned, that the ER doctors took an x-ray of Mrs. Rodriguez's abdomen area but that said x-ray was not done right and images were obscure and could not be read.

183. Upon information and belief, and at all times hereinmentioned, that defendant Mount Sinai Hospital ***intentionally willfully*** and ***purposefully*** disregarded the fact that they did not take a full x-ray clear image of Mrs. Rodriguez's abdomen.

184. Instead of performing more x-rays, or conducting a new x-ray, ct-scan or MRI, and other exams, they quickly released Mrs. Rodriguez from the ER and despite knowing that she was still experiencing and complaining of severe abdominal discomfort, pains and sufferings.

185. **Judge Madden is to be aware of the fact that this civil case should be viewed then as a "Special Complex 911 Civil Rights Medical Malpractice case that requires an experienced attorney to competently represent the plaintiffs' causes of action before this Court."**

186. **In fact, the Court is informed that this complicated 911 medical malpractice case involves various medical records from four (4) medical facilities owned, operated, managed and controlled by defendant Mount Sinai Hospital, including The Mount Sinai Hospital World Trade Center Monitoring and Screening Program, Mount Sinai Hospital Emergency Room, The Tisch Cancer Institute at Mount Sinai Hospital, and Saint Luke's Hospital at Mount Sinai.**

187. **As such, it is a rather costly, difficult, burdensome and complicated case, and pro se indigent plaintiffs cannot possibly represent their case before Judge Madden without the assistance of court appointed counsel and expert witness.**

188. **We sincerely hope, hence, that in view of the foregoing special circumstances, Judge Madden reasons and finds that appointment of counsel is a fundamental right that serves the purposes of Justice insofar as plaintiffs are incapable of handling the weight of this case on their own unaided by an attorney.**

189. **Plaintiff Betancourt informs states and reiterates to Judge Madden that "My dear mother Ada suffered tremendous unbearable pains and sufferings because of the defendant's neglect and misdiagnosis of her health condition, and she should not have suffered and died in this world. My mother was 66 years of age, which judging by today's medical standards it is an age considered to be relatively young. My mother's cancer of the colon could have been properly treated and removed and Ada would have lived a long time in this world only if Mount Sinai Hospital had performed its duty of care, ethical legal obligations and medical practices to the patient Ada in a timely and professional manner."**

190. Mount Sinai Hospital owed a duty of care to Mrs. Rodriguez, not only as a hospital that treated the patient at the Mount Sinai Hospital Emergency Room medical facility but also as the hospital that is assigned to treat the medical conditions of thousands of 911 first responders since the 911 tragedy that affected this nation.

191. As noted herein, Mrs. Rodriguez was a member of the Mount Sinai Hospital World Trade Center Monitoring and Screening Program at the Mount Sinai Hospital Annenberg Building since 2001. Hospital staff doctors, medical professionals and nurses et als treated Mrs. Rodriguez's medical conditions since that time up till the time that Mrs. Rodriguez became ill and visited the Mount Sinai Hospital Emergency Room on September 17, 2015.

192. Therefore, it is plaintiffs' legal position, and evidence will show at trial, that Mount Sinai Hospital violated its duty of care toward 911 First Responder Patient Mrs. Rodriguez.

193. The Court is to take notice that there are two correlated matters concerning the medical treatment that Mount Sinai Hospital provided (or failed to provide) to Mrs. Rodriguez. One is the treatment that Mount Sinai Hospital provided to Mrs. Rodriguez at The Mount Sinai Hospital World Trade Center Monitoring and Screening Program from about 2001 till September 17, 2015.

194. However it is stated for Judge Madden's understanding that Mount Sinai's treatment of Mrs. Rodriguez under the institution's 911 World Trade Center Program extends and continues all through the phase of Mrs. Rodriguez's visit to the Mount Sinai Hospital Emergency Room on September 17, 2015 and later during her second visit to the ER on October 23, 2015 till the time of her death on November 16, 2015, and since it was Mount Sinai Hospital's binding responsibility to provide medical treatment to its 911 patients under the said 911 World Trade Center Program.

195. Mount Sinai Hospital's responsibility to Mrs. Rodriguez under its 911 World Trade Center Program is further demonstrated from the fact that The Mount Sinai Hospital World Trade Center Monitoring and Screening Program ultimately covered the costs or medical bills related to the medical care that Mrs. Rodriguez received at the Mount Sinai Hospital Emergency Room from about September 17, 2015 to the time of her death, including the surgery and other medical exams and treatments performed on October 23 2015.

196. The other is the medical treatment that Mount Sinai Hospital provided (or failed to provide) at the Mount Sinai Hospital Emergency Room on September 17, 2001 and October 23, 2015 till the time of Mrs. Rodriguez's death on November 16, 2015.

**Saint Luke's Hospital of Mount Sinai is a Necessary Party Defendant in this Civil Action**

197. **It is submitted that plaintiffs need to further amend the caption to include Saint Luke's Hospital of Mount Sinai as a defendant to the case, since Saint Luke Hospital performed questionable medical treatment of Mrs. Rodriguez.**

198. **Upon information and belief, Saint Luke's Hospital of Mount Sinai Hospital provided medical care to Mrs. Rodriguez on the day of her death on November 16, 2015. That Saint Luke's Hospital is the medical institution that performed ambulatory and emergency care to plaintiff Mrs. Rodriguez on November 16, 2015, and about 3 days later it also performed the autopsy of Mrs. Rodriguez.**

199. **That Saint Luke's Hospital of Mount Sinai is owned, operated, managed and controlled by the defendant parent corporation Mount Sinai Hospital.**

200. **Accordingly, Saint Luke's Hospital is an interested necessary party to this civil action, an indispensable corporate defendant that should be added to the case as it is also liable to plaintiffs for medical actions it performed (or failed to perform properly), and which corporate defendant therefore is vital to the plaintiffs' proving their claims of negligence and wrongful death.**

201. **Therefore, the Court is respectfully asked to grant plaintiffs leave by notice of motion to amend the caption to add Saint Luke's Hospital as a defendant to the action, unless the Court decides by its own order *sua sponte* that defendants Saint Luke's Hospital, its doctors and medical professionals, et al., is an indispensible interested and necessary party that is to be added as defendant to this matter and directs the Office of the Clerk to make such changes accordingly.**

202. Clearly this special 911 Civil Rights Medical Malpractice civil action is very complicated since it involves medical records from four (4) different institutions or programs operated and managed by same parent corporation Mount Sinai Hospital.

203. It is plaintiffs' legal position also that Mount Sinai Hospital violated its duty of care and failed Mrs. Rodriguez not just as a regular patient who was attended by doctors and received medical treatment at the Mount Sinai Hospital Emergency Room on September 17, 2015 and October 23, 2015 but also as a 911 First Responder Patient who was treated for about 14 years by the same Mount Sinai Hospital.

204. As Judge Madden may know, approximately tens of thousands of 911 first responders have died and become ill due to 911 related illnesses such as Mrs. Rodriguez's cancer. Mount Sinai Hospital knew or should have known that Mrs. Rodriguez was a member patient of its Mount Sinai Hospital World Trade Center Monitoring and Screening Program, and, therefore, it should have provided patient Mrs. Rodriguez adequate, proper, professional and immediate medical care when she first visited the Mount Sinai Hospital Emergency Room on September 17, 2015.

205. However as plaintiffs allege in the Summons with Notice, Mount Sinai Hospital failed Mrs. Rodriguez and totally disregarded her medical conditions. Instead it sent Mrs. Rodriguez home despite the fact that the patient was still under constant severe pain and suffering, experiencing complications with her vowels and other medical conditions that doctors of the Mount Sinai Hospital ER totally disregarded and failed to diagnose and to provide urgent medical care.

206. The Court therefore is asked to comprehend that plaintiff Betancourt and acting as legal administrator of Mrs. Rodriguez's estate at the hearing held on August 15, 2019 wanted Judge Madden to understand that this medical malpractice case also concerns rather important and serious issues relevant to 911 tragedy, and that Mount Sinai Hospital's negligence is twofold: the hospital committed negligence toward Mrs. Rodriguez not just as a regular patient who first sought urgent medical help at the Mount Sinai Emergency Room on September 17, 2015 but received little to none, but fundamentally it disregarded and failed to treat its own 911 first responder patient Mrs. Rodriguez who was a member patient of its Mount Sinai Hospital World Trade Center Monitoring and Screening Program.

207. Knowing that thousands of its 911 first responder patients have become ill and died, and having thus developed a history of treating thousands of patients members of its Mount Sinai Hospital World Trade Center Monitoring and Screening Program for various 911 related health conditions, it was then the required obligation of Mount Sinai Hospital to provide immediate, proper and complete medical treatment to Mrs. Rodriguez, and which plaintiffs will show at trial.

**Mount Sinai Hospital Mismanaged its 911 World Trade Center Monitoring and Screening Program that is Funded Supported and Controlled by the Federal Government in providing Unequal Differential Medical Treatment to 911 Patients like Plaintiffs Resulting in the Unlawful Discrimination and Violation of Plaintiffs' Civil Rights and Constitutional Rights**

208. Furthermore, Mount Sinai Hospital also provided preferential and better medical treatment to other 911 first responders government personnel firefighters and police officers and others that is different from the kind of medical treatment that 911 first responder volunteer Mrs. Rodriguez received. Upon information and belief, this difference in the treatment that Mount Sinai provided to Mrs. Rodriguez is due to Mount Sinai's mismanagement of its 911 Program and which it is also connected to and relevant to the negligence and wrongful death claims in this important action.

209. Given the opportunity, and when the time is ripe in the case, plaintiffs will show that Mount Sinai Hospital mistreated and acted negligent toward Mrs. Rodriguez respecting their treatment of Mrs. Rodriguez at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Plaintiffs strongly state, and evidence will show at trial, that Mrs. Rodriguez was not properly competently and fully treated at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program or that there was *unfairness* and *discrimination* practiced in the way that Mount Sinai treated patients first responders like Mrs. Rodriguez versus its "preferential and better treatment of other 911 patients like police officers firefighters and other government personnel who are treated at the Mount Sinai 911 Program."

210. ***Mount Sinai Hospital since 2001 to the present has received hundreds of millions of dollars in funds appropriated by the federal and state governments, private donors and institutions to operate and manage its Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Yet they have improperly managed said program resulting in serious concerns respecting the treatment that patients like Mrs. Rodriguez and Betancourt receive for their medical conditions. Mrs. Rodriguez's case is evidence of such mismanagement and unfairness that ultimately resulted in a 911 first responder patient Mrs. Rodriguez's suffering and death, and since Mount Sinai Hospital improperly treated her 911 cancer .***

## Plaintiff Betancourt also Received Unequal Differential Treatment at The Mount Sinai World Trade Center Monitoring and Screening Program and He is a Witness to Action who Will Testify at Trial of his Dear Mother Ada's Pain and Suffering and Negligence Committed by Mount Sinai Hospital and Violations of Plaintiffs' Civil Righs Under USC Title §1983 and Constitution

211. *Furthermore, plaintiff Betancourt also has received unequal medical treatment at the Mount Sinai 911 World Trade Center Program since on or about 2001 to the present. Mr. Betancourt also is a witness who would testify at trial regarding said unfairness and unequal medical treatment practices of Mount Sinai Hospital.*

212. *Fundamentally, Mr. Betancourt as witness also will testify at trial about the pain and suffering that his dear mother Ada endured at the hands of Mount Sinai Hospital and his many efforts to have Mount Sinai Hospital act professionally and provide professional and proper medical treatment to Ada.*

213. *Furthermore, this case also concerns violation of plaintiffs' civil and constitutional rights under the federal Constitution's Amendments 5th and 14th.*

214. *Furthermore, that this action presents § 1983 discrimination claims of violation of plaintiffs' civil rights performed by defendants and other participating government entities under color of federal and state law.*

215. Furthermore, that the present civil action presents claims pertaining to allegedly both the State of New York government and the US government whose actions or involvement or participation are found in the actions and business operations and administration of the corporation institution defendant Mount Sinai Hospital respecting the health treatment that the corporation institution defendant Mount Sinai Hospital provides to tens of thousands of 911 first responders under its program titled "Mount Sinai Hospital 911 World Trade Center Monitoring and Screening Program," and which 911 Health Program is instituted, managed, and funded by both the federal and state governments.

216. The defendants Mount Sinai Hospital together with other government entities did in fact violated plaintiffs' civil rights under color of federal and state law in that they discriminated against plaintiffs on the basis of a protected class and that the negligent medical treatment and services that they provided and or failed to properly and fully provide to plaintiffs is the result of such ongoing discriminatory conduct or practice or pattern being conducted and enforced by defendants and other government entities.

217. Plaintiff Betancourt will testify at trial about these foregoing matters concerning violation of plaintiffs' civil rights under Title USC §1983 and the US Constitution.

218. Discovery of relevant information will also reveal the nature and extent of the defendants Mount Sinai Hospital's and other government entities' actions, practices and involvement and participation in the ongoing sophisticated discrimination.

## Mount Sinai Hospital's Concealment of Information Concerning Mrs. Rodriguez's Health Condition and Treatment They Performed or Failed to Perform on Mrs. Rodriguez

219. I seriously believe that defendants also fabricated and concealed information and lied about my mother's health condition and the treatment they performed (or failed to perform) on Mrs. Rodriguez in order to cover up their mess and to avoid potential liability. Upon information and belief, this information I gathered from medical staff's statements made to my mother and I personally during Ada's post-surgery visit to the oncologist office at the Mount Sinai Hospital Cancer Research Facility.

220. Also we reiterate that various doctors of Mount Sinai Hospital stated to my mother and I that her cancer was not a threat to her life, that it had not metastasized. "Good news! Your mother's cancer is isolated, it is a small mass in the colon, it would be easily removed and Ada will live a long time." Statements like these were made to my mother and I both prior to and after Ada underwent surgery. Yet the end result was different from their assurances and guarantees as medical professionals, and Ada ultimately passed away due to complications of her colon cancer and pulmonary embolism as certified in the death certificate and autopsy report.

221. However it is restated for the record, and as this Court might understand, Ada did not survived her operation because her body was too weak and frail since she had lost approximately 60 pounds during the period that she stayed at home trying to recover from what she believed was a bacterial infection as the doctors at Mount Sinai Hospital Emergency Room had wrongfully and negligently misdiagnosed and ill advised her that it was her medical condition beginning on September 17, 2015 till October 23, 2015 the time of her second visit to Mount Sinai Hospital Emergency Room and after she could no longer bear her pain and suffering.

222. Additionally, I strongly believe, state and reaffirm that Ada died because defendant Mount Sinai Hospital neglected her health condition in practicing the ongoing discriminatory conduct, practice or pattern herein mentioned respecting the medical services and care that they by law and contract with the federal and state governments are required to render. Consequently, they neglected 911 patient Ada's health conditions by purposefully, intentionally and willfully limiting the medical services, benefits and care under the said 911 program while also denying Ada proper, professional and complete medical treatment under the said 911 Program, thereby failing to detect and to treat Ada's cancer and ultimately causing her death.

## There are Present in This 911 Related Medical Malpractice Civil Action Obvious Significant Differences in the Legal Expertise and Powers of the Parties Giving Rise to Injury to Indigent Self-Represented Plaintiffs

223. The Court ignored and did not decide plaintiffs' request for court assigned counsel as a matter of the court's discretionary power and authority.

224. Here in a civil case where it is shown convincingly that there are obvious legal differences and powers between the parties which if left unbalanced will inevitably result in undue prejudice and unfairness to the *pro se* indigent civil litigants, the court should appoint counsel as a matter of discretion in order to afford plaintiff a fundamental opportunity to litigate their claims effectively under the law and to obtain the Justice that their case deserves.

225. The case law that plaintiffs presented in support of their original motion seeking reargument and reconsideration of the court's prior order denying them relief of court appointed counsel was intended to show the value of plaintiffs' request and to properly guide this court's reasoning toward a different and favorable conclusion, since the court in her previous order of May 23, 2019 had stated in error that there is no appointment of counsel in medical malpractice civil actions. Case law presented by plaintiffs, however, shows that in New York some courts have indeed appointed counsel in civil matters pursuant to the courts' discretionary power and authority.

226. Accordingly, there is nothing stopping this court from duly exercising its power and authority in granting plaintiffs relief of court appointed counsel as a matter of discretion and after carefully considering all the relevant facts and special circumstances pertinent thereto.

227. The court's order however, *again* for a second time fails to decide plaintiffs' request of court assigned attorney as a matter of judicial discretion.

228. **The court in its order only focused on their request for counsel as a constitutional matter, thereby omitting, ignoring, or evading the issue as a discretionary judicial act.**

229. Hence, in light of the foregoing reasons, Judge Madden is *again* asked to reconsider and renew her previous orders of May 23, 2019 and August 29, 2019 denying plaintiffs' request of court appointed counsel and that she re-evaluates the same against the new arguments that plaintiffs present in the instant motion.

230. It is submitted that when a right to counsel is not found as a constitutional matter in a civil action or because the legislature has not declared such right nor granted the court the authority to do so by statute, the court can always grant the authorized relief pursuant to its discretionary power and authority and the jurisdiction that compels it to make proper determinations in regulating cases that come before it and in serving the interests of Justice.

231. **Additionally, we restate herein, as plaintiffs stated to Judge Madden at the conference had in her chamber on August 15, 2019, there are obvious legal differences in the expertise and powers of the parties that, that if left unsettled and unbalanced, may result in serious injury and unfairness to the indigent self-represented plaintiffs. These self-evident differences in the parties' legal expertise and powers also evinces about the inequality that is being suffered to the indigent civil litigants, which if it remains uncorrected by the court would give way to much unfairness, bias and discrimination that plaintiffs are likely to experience during the course of this litigation, thereby rendering the Court's determination improper and unjust consequently.**

232. Clearly corporation defendants Mount Sinai Hospital is holding the upper hand in this medical malpractice civil case, inasmuch as it is being represented by a Wall Street law firm that has hired expert witnesses doctors who are ready to testify at trial against plaintiffs' claims, while plaintiffs can only hope that the Supreme Court wisely grants the relief being requested herein of court assigned attorney and an expert witness, which relief would balance these differences under the law and satisfy at minimum the Constitution's demands of due process.

233. **Indigent civil plaintiffs should be afforded a fair and equal opportunity to be heard in this case; and it is fundamental that this Supreme Court hears and decides their case in the same equal manner of fairness that the Court allows other civil litigants who are represented by attorneys of the private bar.**

234. **Fundamentally, the fact that plaintiffs are poor should not be held against them in their efforts to litigate their case, and said economic status must not serve as a prohibition against their rights to equal access to the judicial system and an equal opportunity to be heard, to present irrefutable evidence and vital testimony of expert witnesses, to a fair trial, and to obtain unbiased and correct judicial interlocutory decisions and a final judgment and other legal remedies in this Supreme Court of the State of New York.**

235. In making her decision of this rather important matter of first impression of assignment of counsel and an expert witness by the Court in a medical malpractice civil action, Judge Madden today is again reminded of the fact that initially plaintiffs commenced this civil action by filing a Summons with Notice pro se pursuant to the order of Supreme Court Judge Shoenfeld issued and filed on November 17, 2017 grating plaintiffs' application for poor person relief and allowing their case to proceed against the corporate Mount Sinai Hospital defendants accordingly.

236. This Supreme Court's poor person order (Judge Schoenfeld) authorizing waiver of court costs and fees is prima facie judicial evidence of plaintiffs' impoverishment and verifies the fact that plaintiffs cannot pay the services of counsel and medical doctor or expert witness for purposes of establishing their claims of negligence, wrongful death and pain and suffering against Mount Sinai Hospital defendants.

237. Hence as this Supreme Court (Judge Schoenfeld) has already reasoned and declared plaintiffs' poor person status in permitting them to proceed with their case, then it follows that the presiding judge Hon. Madden too should expand those rights and privileges to the indigent plaintiffs in agreement with the Judge Schoenfeld's prior order and as the CPLR allows.

238. The Supreme Court (Judge Madden) can derive those powers under the statute CPLR §1102 which expressly authorizes the Court to issue relief to an indigent civil litigant of both poor person and assignment of counsel in a civil action. **CPLR §1102(a) states: "(a) Attorney. The Court in its order permitting a person to proceed as a poor person may assign an attorney."**

239. Also CPLR §1102(d) expressly gives the court jurisdiction grant assigned relief of counsel, as it concerns the payment of "services and expenses of a court assigned attorney" that is to come from any such sum awarded to plaintiffs.

240. **Particularly CPLR §1102(d) states that "(d) A poor person shall not be liable for the payment of any costs and fees unless a recovery by judgment or by settlement is had in his favor in which event the court may direct him to pay out of the recovery all or part of the costs and fees, a reasonable sum for the services and expenses of his attorney and any sum expended by the county or city under subdivision (b)."**

**The Court Should Temporarily Stay its Prior Order of August 1, 2019 Requiring Plaintiffs to Submit a Complaint and Prior Order of August 29, 2019 Denying Plaintiffs Court Appointed Counsel until the Matter Concerning the Assignment of Counsel and Expert Witness is Decided and Fully Resolved by the Appellate Division, Court of Appeals and United States Supreme Court**

241. *Notwithstanding, the one fundamental point that we think is of first impression and raises a rather interesting and important constitutional issue in this case concerns the indigent plaintiffs' inability to afford the services of an expert witness. In our view, being that such condition is required as a matter of law and practice in order to establish negligence wrongful death claims, plaintiffs are not able to proceed with their claims and should not be made to present a pro se amended complaint at this juncture until the Court has decided the matter.*

242. *There is the likelihood that submitting a complaint pro se on their own without the assistance of an attorney and an expert witness or doctor who can review the entire medical records and preliminarily certify as to the validity of plaintiffs' negligence and wrongful death claims, that that may result in further irreparable prejudice and significant damage to the plaintiffs' case. The Court should want to see a complaint that is properly and professionally and competently filed by an attorney and after consulting with an expert witness and doctors.*

243. ***Regardless, the fact that indigent plaintiffs cannot pay the services of an expert witness doctor that issue in itself prevents the Court from making a proper and fair judicial determination in this complicated special medical malpractice case. By this reason, we believe strongly that it is the best interest of the Court to temporarily stay its order of August 1, 2019 requiring plaintiffs to submit an amended complaint until this issue has been decided and fully resolved.***

244. ***In light of the foregoing issues, the Court should temporarily stay its prior order issued and filed on August 1, 2019 requiring plaintiffs to submit an amended complaint within 60 days of the said order.***

245. ***The Court is respectfully asked to temporarily stay its proceedings and prior order of August 1, 2019 requiring plaintiffs to file and service the complaint within 60 days from the date of the order, and also prior order of August 29, 219 denying plaintiffs relief of court appointed counsel pending decision of the plaintiffs foregoing Motion and until the matters concerning plaintiffs' request for court assigned counsel and expert witness are fully decided and finally resolved by the Supreme Court of the State of New York, the Appellate Division, the Court of Appeals, and the United States Supreme Court.***

246. ***It is submitted that a stay will assure that plaintiffs' rights under the Constitution are properly protected against any ongoing and further irreparable harm in the case pending the decision of the subject matters at hand on appeal.***

247. ***It is submitted to the court that on September 11, 2019 plaintiffs filed notices of appeal taken from the court's order dated August 1, 2019 and filed August 13, 2019 and the order dated August 29, 2019 and filed September 3, 2019, and which matters are now pending on appeal before the Appellate Division.***

248. *Furthermore, that in the absence of a temporary stay of proceedings and court orders the plaintiffs are likely to suffer and will inevitably suffer serious and irreparable injury since the presiding judge is requiring them, under the threat of dismissal, to file a complaint without any assistance of the court and without appointing counsel and an expert witness to their case.*

249. *Furthermore, that in light of the foregoing, a stay will serve the vital purpose of assuring that the status quo is preserved and remains intact without causing plaintiffs to suffer any further and needless harm while the appellate courts seek review plaintiffs' appeals taken from this court's prior orders.*

250. *Furthermore, that defendants Mount Sinai Hospital will not be prejudiced in the least by any court issued TRO temporarily staying proceedings in this action.*

251. *Furthermore, that plaintiffs have not previously asked for the same TRO relief except what was decided by the court in a prior order dated May 23, 2019 regarding another ex parte motion seeking similar relief.*

252. *Finally, it is possible that on appeal plaintiffs may not be held to the strict standards and requirements that this court has imposed against them concerning their right to file properly made motions on notice and to serve and file a complaint assisted by court assigned counsel and an expert witness doctor.*

253. *The court is to take notice of the fact that the plaintiffs' notices of appeal have provided jurisdiction to the Appellate Division over these important matters that particularly raise constitutional issues of first impression on appeal and which the superior courts may decide in plaintiffs' favor on appeal.*

254. *Accordingly, the court is asked to allow plaintiffs a meaningful opportunity to make their case on appeal and a right to have their appeals decided fully by the superior courts without suffering any irreparable injury in the process.*

255. *Should this court fail to recognize the necessity for and merit of plaintiffs' request justifying the issuance of a stay, then plaintiffs would be at a disadvantage and are likely to suffer serious damage to their case as otherwise they would be forced to present a complaint and litigate their cause against what they believe is an error of the court and an abuse of judicial power and discretion as per the court's orders now pending on appeal, and based on the foregoing.*

**The Court Should Find a Right to Counsel in this Civil Action Under the US Constitution**

256. We respectfully submit that the court's order of August 29, 2019 and entered September 3, 2019 again was in error as the court misapprehended relevant fact and law in drawing its conclusion.

257. Here the court's order appears to have been rushed and did not properly decided the issue that under the US Constitution plaintiffs have a right to court assigned counsel by reason of the fact that an expert witness doctor is demanded of them in a state court and by law in order to prove their claims of negligence and wrongful death against defendants.

258. As was fully shown above, an expert witness doctor needs to be provided as a matter of right in order that plaintiffs may demonstrate at trial as to the negligible conduct of defendants.

259. **Appointment of counsel too is a fundamental right that the US Constitution guarantees in this special case where indigent plaintiffs cannot properly comply with the law's requirement regarding the presentation of an expert witness doctor by reason of their impoverishment. Counsel, once appointed by the court, would then be able to consult with and rely upon the medical knowledge and experience of an expert witness doctor who would submit verifiable affidavits and testify under oath at trial about the defendants' negligence.**

260. **Hence we think that the right to an expert witness is indispensable and indivisible from the right to appointed counsel in this special civil matter, and that it would not serve the purposes of the US Constitution if only one relief (the expert witness right) is provided while the other (the right to counsel) is denied.**

261. **Furthermore, herein below we state and demonstrate convincingly to this court, and also for purposes of appeal, that appointment of counsel as of right under the US Constitution can be found and exists in this particular case where it is being claimed in the Summons with Notice that an individual, Plaintiff Ada Rodriguez, lost her life, liberty and privacy because of the negligence and inhumane unprofessional conduct of the corporate defendants.**

262. **Contrary to this court's conclusions, we believe that counsel can be appointed even though the plaintiff has already suffered the loss of her life, and such right to counsel should not be limited to a strict standard and interpretation that one can be provided by the court only in a criminal cases or in a civil case where life and liberty are in danger of being lost.**

263. **Ada lost her life and liberty and privacy in consequence of the defendant's wrongs committed against her (the injuries, pains and sufferings, and loss of life), and, hence, she cannot at this very moment in time, space and matter speak to this court in her own defense against those torts, nor can she here and now seek judicial relief to prevent against suffering further harm from defendants.**

264. **The appointed counsel request then is made after Ada's death and if granted it will serve the critical function of rectifying those wrongs and vindicating Ada's rights against the Mount Sinai Hospital corporate defendants.**

265. Needless to say, we believe that this particular civil case of medical malpractice does presents constitutionality issues that demand appointment of counsel as of right under the federal constitution and not just as a matter of discretion, and based on the foregoing. A right to counsel by law and as a matter of "common sense," is to be found in this particular civil case. In our view and as this case clearly shows, a 911 complex civil rights medical malpractice civil action should not be viewed and treated as a simple regular civil case. It is different and often involves complicated technical matters relevant to both the legal practice area of torts and medicine.

266. Thus it is not logical and right as a matter of law and its practice per se to require indigent pro se plaintiffs to litigate their 911 civil rights medical malpractice claims on their own without the assistance of an attorney, and it would be unfair and unreasonable of any court to leave them up to the difficult and nearly impossible task of litigating any such medical negligence wrongful death claim unassisted by counsel.

267. The Court should declare that indigent plaintiffs have demonstrated having a right to counsel under the Constitution's 5th and 14th Amendments which apply to and are binding in this civil rights discrimination and medical malpractice action.

268. **This Supreme Court Judge Madden knows from experience over the years in adjudicating medical malpractice cases that it is "highly doubtful and virtually impossible that a private litigant proceeding pro se and poor would successfully represent a medical malpractice wrongful death claim both at the trial court and appellate courts level." Not when the defendant is a private corporation that is by law represented by a law firm.**

269. ***Should this Supreme Court fail to provide appointed counsel and an expert witness to indigent civil litigants, then we respectfully submit that it is very probable that the court's decision would result in unfairness to the plaintiffs, that it may constitute a denial by the judiciary and state government of plaintiffs' due process rights and equal access to justice, and that it would force plaintiffs to surrender their medical malpractice wrongful death claims against corporation defendants, or consequently that their claims would ultimately be unfairly and improperly decided.***

270. ***Constitutional wise, plaintiffs cannot effectively and successfully prove their medical malpractice case unless and until an expert witness has been assigned to the case, and since by law Judge Madden must be presented with testimony of the said expert witness and interrogatories before trial and other evidence at trial that would demonstrate the negligence wrongful death and pain and suffering claims.***

271. ***The US Constitution 5th Amendment protects plaintiffs' due process rights and the expert witness requirement, which is a mandatory judicial requisite, can lead to a violation of those constitutional rights, and should this Court fail to assist the indigent pro se plaintiffs.***

272. ***Therefore, we reiterate and restate for purposes of clarity and emphasis of the essential issue at hand, a medical malpractice case like the present should not be viewed as a simple civil case that indigent civil litigants can represent alone and unaided by an attorney experienced in the areas of law and medicine.***

273. ***Here, as stated above, this particular case raises fundamental due process constitutional issues that, in our view, mandate a favorable decision by this Court Supreme of the State of New York (Judge Madden) recognizing a right to counsel under the US Constitution.***

274. There is an old wise biblical saying that speaks of the power of the Truth in this world: "Ye Shall Know the Truth and the Truth Shall Set You Free." In asking the court to consider plaintiffs' request of court appointed counsel and an expert witness, the Court today has the opportunity to establish an important precedent that fundamentally will aid not just indigent plaintiffs like Mrs. Rodriguez and Betancourt but also other indigent pro se litigants in medical malpractice civil cases in the future. Getting to the Truth of plaintiffs' causes of action as a matter of law, legal practice and Justice requires the assistance and representation of an experienced attorney.

275. **But we reiterate herein for purposes of clearly and convincingly demonstrating the rationale that the court should adopt in deciding this rather important case that as a constitutional matter, and as the court may perceive and act upon wisely, the medical expert witness is in fact a constitutional bar to plaintiffs' obtaining justice and having a fair and equal opportunity to adjudicate their claims in the judicial system of this State of New York.**

276. **Indigent plaintiffs cannot possibly afford the high cost of an expert witness, which allegedly may cost about $30,000 or more at the end of trial, and as Judge Madden knows by law and as a matter of legal procedure an expert witness is a mandatory requirement in a medical malpractice civil case. Plaintiffs' due process rights therefore are deprived by reason of that binding legal condition.**

277. What then must the plaintiffs do if by reason of their impoverishment they are unable to proceed and to effectively and legally present their case to Judge Madden for a proper determination? It is therefore our view, and considering the special circumstances arising thus from these pretrial proceedings and also the complicated matters relevant to the patient-hospital relationship and the extent to which the hospital failed to treat the patient's medical condition both as a 911 first responder patient who was being treated under its 911 medical program since 2001 and as a patient of the hospital's emergency unit, it is the *duty* of this Supreme Court to assign counsel in order that plaintiffs' claims are properly presented to the court for its determination, since otherwise plaintiffs would not be able to proceed on their claims on their own unaided by an attorney and lacking an expert witness who may testify under oath as to the defendants' negligence.

278. Besides an expert witness doctor is needed to inspect the medical record(s) and to present valid and convincing testimony and evidence concerning the claims of negligence medical malpractice and wrongful death. By law, as noted supra, such legal claims demand the participation of an expert witness and since indigent plaintiffs cannot retain an attorney of the private bar and legal aid organizations are unable to represent their case, as plaintiff Betancourt explained to Judge Madden at the August 15 hearing, their only and last recourse to Justice is to ask this Supreme Court Judge Madden for assistance and to obtain judicial relief under the law.

279. **"The Court is respectfully informed that plaintiff Mr. Betancourt is sending a copy of this and other documents of this case to the federal and state government agencies and officials, the US Congress and New York State Congress so that they are made aware of this matter and also that they know the Truth of how Mount Sinai Hospital *failed* Ada Rodriguez a 911 First Responder Hero who Died for this Nation and Humanity. In our view, this is an important civil case that deserves the attention of those institutions, agencies and individuals managing the business of this nation, and Mrs. Rodriguez's life must not pass into history being demoralized, devalued and forgotten."**

280. **Further, it is vital the US Government is properly informed of this matter since the US Government, its agencies, politicians, et al are funding Mount Sinai Hospital's 911 World Trade Center Monitoring and Screening Program.**

281. **Recently plaintiff Betancourt contacted congress members Jerry Nadler and Adriano Spailatt and their offices have preliminarily shown an interest in this matter and have expressly indicated that they would consider taking legislative action. Plaintiff Betancourt has asked the congressional members to consider introducing a bill that may then become law with respect to the assignment of counsel in a medical practice civil action involving indigent civil litigants.**

282. **It is our position that since the Congress state and federal have not advanced those rights concerning the appointment of counsel in a medical malpractice civil case represented by indigent civil litigants and there has been no developments in this area of the law by the legislature since the past century, the Supreme Court Judge Madden today has the legal and moral obligation and the opportunity to expand those fundamental rights as a matter of the Court's judicial duty in supervising its cases and awarding Justice, also pursuant to the federal Constitution's guarantee of Due Process, substantive and procedural, and in order that the Judiciary may properly execute its functions and powers in the administration of the law and Justice.**

283. **Contrary to *In Re Smiley* that the Court cites and relies upon in drawing its decision today, in our view the Judiciary branch of government should not be denying indigent civil litigants access to the Justice and a meaningful and fair opportunity to litigate their claims under the law solely upon the reasoning, or justification as it seems to be case, that absent legislation appropriating funds and declaring such fundamental rights, the courts cannot on their own assign counsel in a medical malpractice civil matter.**

284. **The Judiciary's hands must not be tied down and its powers limited by reason of what appears to be congressional neglect of this area of the law. Besides as noted *supra* this case raises a constitutional issue that mandates court appointment of counsel, irrespective of whether or not the court has the power to do so absent legislative decision and statue authorizing that relief.**

285. **Another key point to consider in deciding this matter is the payment of the costs and expenses involved in hiring an attorney and expert witness assigned by the court. In our view, the State has the responsibility to guarantee due process to its citizens and residents under the federal and state constitutions. Therefore, the State should assume the costs of retaining the services of an attorney and an expert witness assigned by the court in this civil action, unless the court decides otherwise and the costs and fees are to be funded by the court administration.**

286. **Nevertheless the court should reason that no matter where payment of those services come from, if from the State or the Judiciary or shared by both, the case demands that an attorney and expert witness is facilitated at no cost to the indigent plaintiffs in order to satisfy the demands of the Constitution's guarantee of due process and to allow Justice is served.**

287. **Perhaps the Court can assign a pro bono volunteer attorney and an expert witness who may represent plaintiffs at no charge. We respectfully submit that the Court has also the power and authority to direct an attorney of the private bar to represent indigent litigants and to render their services free of charge as a matter of oath and duty. Likewise, ultimately plaintiffs may succeed in their claims and any costs and expenses suffered to the assigned attorneys and expert witness may then be withdrawn from said reward.**

## Final Statements in Further Support of Plaintiffs' Motion

288. **Therefore, plaintiffs cannot proceed with the negligence and wrongful death claims in this medical malpractice case because of their inability to financially retain the services of an expert witness who by law is needed and required for this Court to make a proper determination. However the corporation defendants who are represented by a law firm will present an expert witness(es) at trial.**

289. **Under the law, as Judge Madden is fully aware, an expert witness and medical evidence, together with other admissible documentation and evidence supporting plaintiffs' case, is demanded as the burden of proof rests upon the civil litigants and also in order that the Court makes its determination after reviewing the same. Consequently, in the absence of an expert witness presented by plaintiffs, not only is Court prevented from proceeding in this case but also the defendants can claim that the Court's determination was unfair or not supported by evidence in the record.**

290. Hence we state for the record, and also as Judge Madden may reason wisely, that this 911 civil rights medical malpractice case raises an important issue of first impression, and considering the special circumstances that are present, appointment of counsel is warranted not only as a matter of the Constitution's guarantee of due process, substantive and procedural, under the 5th Amendment but also in order to allow equal access to justice and equal protection to plaintiffs and to remedy against the ongoing discriminatory practice by defendants under the 14th Amendment.

291. Additional, the relief of a court assigned attorney would fundamentally help solve the difficulty of the Court needing to make a judicial determination that is fair under the law, being then also the duty of the Court to recognize that in a civil case where indigent plaintiffs are unable to afford the high cost of an expert witness it seems reasonable, and even *mandatory* as a matter of common sense and constitutional rights, that plaintiffs are provided an attorney and also an expert witness who may testify at trial as to the plaintiffs' causes of action and after reviewing the record.

292. As plaintiffs will establish before Judge Madden, Mount Sinai Hospital violated its duty of care toward patient Mrs. Rodriguez not just as the medical institution that treated (or failed to treat properly) the patient's emergency medical condition at the Mount Sinai Hospital Emergency Room on September 17, 2015 but also as the medical institution that provides medical treatment of 911 first responders like patient Mrs. Rodriguez at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Both facilities at the Mount Sinai Hospital then violated Mrs. Rodriguez in failing to provide her adequate, humane, professional and proper medical services.

293. Furthermore, doctors at Mount Sinai Hospital (and other administration employees) allegedly knew that Mrs. Rodriguez would die because of her cancer which they had neglected and then improperly treated. Yet as noted *supra*, it is plaintiffs' sincere belief and strong conviction that doctors purposefully, intentionally concealed information and misinformed the plaintiffs about Mrs. Rodriguez's medical condition both prior to and after surgery, and that the doctors lied with respect to the outcome and alleged success of the surgery and the chances that Mrs. Rodriguez could have survived her cancer.

294. ***Your Honor, I plaintiff Betancourt say sincerely that in this case we are talking about the life of a human being, dear Ada, my mother, who despite the fact that she died for this great democracy United States of America and humanity in general, it being that her cancer was from her humanitarian participation at Ground Zero during the tragedy of 911, which again I restate that defendant Mount Sinai Hospital has certified as a 911 cancer accordingly, she was made to suffer unnecessary tremendous unbearable unimaginable pains and sufferings, daily living her last days of this world in vomit and diarrhea and constant agony, all in consequence and as a direct result of Mount Sinai Hospital's gross negligence.***

295. ***This special and complicated 911 medical malpractice case, thus, is not just another medical malpractice civil litigation seeking damages for the wrongs that the defendants committed against Ada. No it is a case that seeks to rectify the injustice that Ada suffered at the hands of Mount Sinai Hospital Corporation and in order that her rights are vindicated and her history is told correctly.***

296. ***I cannot possibly ignore, and I would never forgive myself if I should fail to do the right thing for my dear mother, the fact and the Truth that Ada's death could have been prevented, that Ada's colon cancer was not supposed to take her life away, that being the case back when she was still alive and conscious, and which information was corroborated by statements of many doctors who did in fact stated and assured us that Ada's cancer was isolated, small, presenting no roots and no spreading into other areas of her body, and post surgery that her medical condition, the cancer that is, was removed and all the operation was a complete success.***

297. ***Hence, I have a moral, ethical, legal, humane, and spiritual obligation to defend and to vindicate the rights of Ada, and my duty extends beyond the reaches of the law, for after all we are talking about my dear mother, who was removed from this world and taken away from me unjustly.***

298. I ask the fundamental question: what is the price of life? I think your Honor would agree that as a matter of common sense, "life is priceless." I know that I alone proceeding pro se and indigent must face many difficult and virtually impossible hurdles in litigating this medical malpractice civil case, but at the moment my incapacity to retain the services of an expert witness is prohibiting Ada and I from proceeding with the claims and depriving us of due process under the law; and I think that your Honor would reason that such requirement under the law is inviolable and necessary in order to prove any wrongdoing negligence and wrongful death claims committed by defendants which warrants the court's assistance of plaintiffs.

299. It is both my mother and I who are proceeding in this case, and not just me who holds an interest as an injured person who suffered consequently to my mother's pain and suffering and death. In fact even while Ada was awake in this world and conscious of her rights as a person, she mentioned to me the fact that ***"I want to bring Mount Sinai Hospital defendants to Justice,"*** for she felt and understood that ***"they doctors at Mount Sinai Hospital had indeed acted inappropriately, mistreated her, and neglected her medical condition, that they put her life at risk of danger and dying, that they failed to attend her health and medical needs properly, fully and professionally when she first sought immediate emergency medical help at the Mount Sinai Hospital Emergency Room on September 17, 2015, and that they caused her cancer medical condition to become worse."***

300. **My mother was very hurt and upset at how Mount Sinai Hospital medical staff and doctors had mistreated her, and I still remember her own words, which I shall never forget: *"They (at Mount Sinai Hospital) did nothing for me, they quickly got rid of me, they did not even cared to do a proper X-Ray of my body; they released me 5 minutes after the X-Ray and did not even looked at it; and I am still in the same terrible painful medical state, I am still suffering severe pains and unable to go to the toilet properly."***

301. Therefore, the plaintiffs do have meritorious causes of actions in this complex 911 related medical malpractice civil rights case. It would be a lamentable injustice if they are to proceed single-handedly and without any assistance by an attorney against powerful corporation Mount Sinai Hospital, an institution that is ready to bring about dismissal of the case acting through their attorneys at the firm of Kauffman, Borgeest and Ryan LPP.

302. Committing the plaintiffs, therefore, to draft and submit a pro se complaint is a delicate matter that would NOT serve the interest of justice, for in all probability the plaintiffs would not know how to write a properly submitted complaint of negligence and wrongful death.

303. Even though these motions plaintiffs have filed in court do evince an ability to litigate their case, notwithstanding such actions and proceedings are only efforts performed by pro se plaintiffs within their incapacity and limited knowledge of the law, and it is only a courageous attempt to reach out to Judge Madden about their case, which so far they have done effectively it being the matter that the case has reached the stage of pleadings. But let be it clear, hence, that plaintiffs are not qualified to litigate and show to this court a medical malpractice action.

304. If they are forced to present a complaint unaided by an attorney, chances are that their case might be jeopardized and plaintiff Ada may never receive the Justice that she deserves, and also Judge Madden's determination may not be viewed as a proper decision under the law.

305. We reiterate that as plaintiff Betancourt stated to Judge Madden recently at the August 15, 2019 hearing, this Supreme Court has today the opportunity to expand the rights of indigent civil litigants in a medical malpractice civil action, and its decision can potentially impact the practice of the law and benefit the rights of numerous civil litigants in the future. It our view, a medical malpractice case should not be regarded as a regular and simple civil action, for it is clear that that kind of litigation by law often involves complicated difficult procedures and expensive requirements like an expert witness which an indigent litigant cannot possibly afford, thereby precluding his/her having access to the judicial system and depriving them of due process.

306. Moreover, we restate and as plaintiffs have shown in this motion, that it is also in effect the State of New York that is depriving indigent plaintiffs of due process by reason of the foregoing; and the fact that the legislature has not declared by statue (except what is written in the CPLR granting the Court's authority as a matter of discretion to issue relief of poor person and assigned counsel) the rights of indigent civil litigants to said relief of assigned counsel by the court and appropriated the funds to pay the costs of an expert witness in medical malpractice cases, is not a deterrent of the powers and authority of this Court Supreme (Judge Madden) to issue an order granting that relief.

307. In fact, we are convinced that the Court in this particular case can derive such powers and authority directly from Justice and the Constitution, following the principle that in order for the court to make a proper decision about plaintiffs' claims of negligence and wrongful death there must be first a guarantee of due process allowed to the plaintiffs and as the US Constitution demands.

308. The ideals and values of Democracy, as have been known, established, exercised and enforced since ancient times, have always promoted the fundamental Truth that Justice must not denied to the oppressed and that members of the jurisprudence or those in government who are vested with the power and authority to punish and to reward certain actions of society should do so without any bias and prejudice.

309. Justice, as far as one may deem of its self-evident pursuits and demands, it must then be reasonably understood under the special circumstances present in this case hence, cannot be said to have been reasonably rendered in a unbiased and non-prejudicial fashion in a case where the private litigants are prohibited by the State governments and the Judiciary to present relevant and direct real, material uncontroverted evidence together with testimony demonstrating their claims. In effect, plaintiffs' rights would be violated by the State and the Judiciary, and should this Supreme Court (Judge Madden) fail to recognize the right to counsel and an expert witness to the plaintiffs.

310. Morally speaking, it would seem not just unfair as a matter of law, but the State governments and Judiciary would also be viewed as participating in, or aiding and supporting and approving of the moral wrongs that the institutional hospital defendants committed against the civil litigants. The plaintiffs rights, including civil, constitutional, and natural rights, would be all but unjustly deprived in a State where the judicial system fails to allow them access to Justice and a meaningful and equal opportunity to litigate their cause. The public then would lose faith and trust in the New York State's administration of judicial matters, and should this Court Supreme prevent the plaintiffs from having equal access and due process.

311. As this Court (Judge Madden) fully understands after years of study, knowledge, experience and practice of the law, the Constitution's guarantee of due process recognizes that individuals and corporations have a fundamental right to access to the courts, and that they must be allowed the opportunity to present evidence, witnesses, and other corroborating important documents and testimony that supports and establishes their claims.

312. As this civil case of medical malpractice claims that plaintiff Mrs. Rodriguez died in consequence of the negligence committed by defendants, this Court must determine to what extent the defendant's negligence contributed to or was the direct result of her loss of life and how much pain and suffering was experienced and endured by her prior to her dying in consequence of defendant's actions and inactions.

313. In our view, such determination cannot be properly made unless and until the court has heard vital testimony elicited of competent witnesses and reviewed such relevant admissible evidence, medical and otherwise, after holding a full trial on the matter, all of which demands the presence and active involvement of an expert witness. Since the plaintiffs cannot retain an expert witness due their impoverishment, it then falls on the Court the duty to assist them by appointing an attorney who may then consult with and contract an expert witness in preparation for trial.

## The Court Ignored Plaintiffs' Affidavit in Further Support of Motion to Reargue and Reconsider and to Assign Counsel

314. The plaintiffs' Affidavit filed on August 30, 2019 was returned by mail without explanation by the court, except that the court included its order signed August 29, 2019 with the said affidavit. See Plaintiffs' Affidavit dated and verified August 30, 2019 annexed hereto as Exhibit "C".

315. The envelope in which the Affidavit was mailed was postmarked September 4, 2019 and the court's order revealed that the judge signed it on August 29, 2019.

316. However upon information and belief plaintiffs think that the court had rushed to render its order after plaintiff Betancourt had visited Judge Madden's courtroom and filed the said Affidavit.

317. It is submitted that at the time of filing their Affidavit "the court's clerk informed plaintiff Betancourt that the plaintiffs' motion was pending and that no decision had been made in the case yet." The clerk provided this information to plaintiff Betancourt after viewing the case in the computer.

318. Hence it was a surprise to plaintiffs that Judge Madden had issued her order immediately after they had filed their Affidavit, and since at the time Judge Madden's legal clerk had confirmed that Judge Madden had not decided the plaintiffs' motion.

319. Consequently the plaintiffs' Affidavit was disregarded and did not serve its purpose of supporting substantively per se the meritorious issues raised in their original motion. Ultimately Judge Madden never properly reviewed the Affidavit and, as noted, instead said Affidavit was simply returned to plaintiffs without any explanation in the form of a letter or decision by the court regarding its outcome.

320. Based on the foregoing reasons, plaintiffs believe that Judge Madden's order, signed a day before the Affidavit was submitted on August 29, 2019, was rushed after plaintiffs had presented their rather important Affidavit, which allegedly explains why the court's order is incomplete, ignoring a some of the issues raised in plaintiff's original motion.

**Email of Attorney Respecting Plaintiff's Efforts to Retain Services of the Private Bar and Evidence of Merit**

321. Lastly, plaintiffs hereby submit as documentation of their efforts to retain counsel, and (*although it is not required by law* **CPLR §3012(f)**) also evidence of merit and reasonable basis to commence this medical malpractice civil action, an email that they received from a law firm, which corroborates the statements plaintiff Betancourt made to Judge Madden at the August 15, 2019 hearing regarding the foregoing and the fact that their case bears merit. The Court is to notice that the attorneys' letter was made after consulting with their law firm's expert witness regarding the facts and circumstances of the case. See Attorney's Email annexed hereto as Exhibit "D".

322. Also regarding plaintiffs' efforts to retain the services of private attorneys of the bar, the Court is reminded that the New York Bar Association administrator told plaintiff Betancourt during a telephone conversation that **"none of my attorneys would take the case because (as it seemed to her) it was a complicated medical malpractice legal matter concerning colon cancer, involving 911 issues, and that it was commenced and litigated by a pro se litigant already."**

323. Further, plaintiffs' efforts to obtain services of private law firms also proved ineffective, citing same policies, concerns or excuses prohibiting against taking a medical malpractice case that is commenced and litigated by a pro se civil litigant.

324. Moreover, both the Legal Aid Society and American Civil Liberties Union have expressed to plaintiffs that they do not represent litigants in a civil matter involving private companies. Still no legal aid organization can provide legal representation to plaintiffs only because they are not managed to handle all areas of the law and due to a lack of funds and internal policies governing their institutions.

## Final Statements

325. **Therefore, again we reiterate to the court, that plaintiffs' only and last recourse is to obtain the assistance of the court with respect to the issues at hand, to wit the appointment by the court of an attorney and an expert witness doctor. We sincerely hope, hence, that the present motion is granted in its entirety, and that this Court finds a reasonable constitutional basis upon which to render the special relief that plaintiffs request today.**

326. *However, we are unequivocally convinced, both as a matter of common sense and in reviewing the rights of plaintiffs under the law, that this complex 911 medical malpractice civil rights case presents constitutional rights issues of first impression that, we believe, have not been formerly decided and resolved by the courts, state and federal, and that there exist sufficient valid legal and moral reasons upon which to grant plaintiffs' special request thus.*

327. *Insofar as the US Constitution explicitly demands that this New York State Supreme Court guarantees the Due Process rights of plaintiffs, both substantive and procedural, the Supreme Court should come to reason and decide in plaintiffs' favor, thereby issuing a just and humane judicial act awarding plaintiffs* ***"appropriate and indispensable relief under the law and in the interest of Justice."***

328. Notice also is taken of the fact that their motion was submitted unopposed and, thus, the matter rests solely upon the Court's power, authority discretion and wisdom.

329. Furthermore, that the defendants will not be in the least prejudiced by the relief that plaintiffs seek from the court today.

330. *Finally, it must be stated for the record that the plaintiffs in moving this court by way of notice of motion properly made pursuant to the CPLR do so "in protest knowing that the court's prior order of August 29, 2019 and filed September 3, 2019 prohibiting the filing of future motions on notice is unconstitutional as it deprives them the right to litigate their cause as any other civil litigant, individual or corporate, is permitted by law.*

331. *The Law CPLR and state and federal constitutions forbid that kind of abuse and unauthorized judicial prohibition exercised against the rights of civil litigants to properly and effectively represent their case in the New York State Supreme Court, and the presiding Judge Madden should abide by the law, rules and practice of civil procedure and the federal and state constitutions' guarantee of Due Process.*

332. *As established fully herein above, Judge Madden's order, at first instance, clearly evinces an abuse of judicial power and undue bias and prejudice being performed against the self-represented civil litigants. The said order also reveals an inference of judicial intent to aggrieve the pro se indigent civil litigants and to damage their case.*

333. *It is quite evident that the powerful influential corporate defendant Mount Sinai Hospital has managed to influence the presiding judge to act adversely against the indigent self-represented civil litigants and, therefore, Judge Madden should withdraw and this case should be assigned to another judge who may then decide the present motion and conduct the business of the court in a manner that is both proper and fair, unaffected by any inference of judicial bias, prejudice and favors, and based upon the foregoing valid reasons and meritorious points at law.*

**WHEREFORE,** I Alberto Betancourt plaintiff, acting personally and as next of kin and as Administrator of the Estate of my dear mother Ada Rodriguez, deceased but alive in Spirit and present here today hence, respectfully request that such relief of (1) reargument, reconsideration, correction, and renewal is granted; and also granting relief of (2) court assigned expert witness together with relief of (3) court appointed attorney; and also granting relief of (4) temporary stay of court proceedings and prior orders of this court filed August 13, 2019 and September 3, 2019 pending an appeal; and also granting relief (5) extending the time for plaintiff to serve and file the complaint; and also granting relief of (6) leave to amend caption to include the necessary defendant corporation Saint Luke's Hospital of Mount Sinai Hospital; and also granting relief (7) striking that part at page of the court's prior order filed on September 3, 2019 that unconstitutionally and unfairly deprives plaintiffs' rights to due process; and also granting relief of (8) imposing sanctions against the attorney Eldar Mayouhas and the firm Kaufman, Borgeest & Ryan LPP for the ongoing unethical abusive conduct and frivolous motion practice; and also granting relief of (9) recusal of the presiding Judge Madden, together with any such further relief as to this court seems just and proper under the law and in the **"interest of Justice."**

Respectfully yours,

Dated September 11, 2019

Alberto Betancourt
Ada Rodriguez, ***deceased in the Material World and Alive in Spirit***
601 West 112th Street, Apt.5B
New York, New York 10025
(917) 623-6873

STATE OF NEW YORK
COUNTY OF NEW YORK
SWORN TO BEFORE ME THIS
17 DAY OF September, 2019

JIMMY MA
Notary Public, State of New York
No. 01MA6116017
Qualified in New York County
Commission Expires Sept. 20, 2020

TO:

Kaufman Borgeest & Ryan LPP
Eldar Mayouhas
Attorneys for defendants Mount Sinai Hospital et al.,
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600

The United States Congress
The New York State Congress

RECEIVED
SEP 17 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

**EXHIBIT A**

E.A.
9/3/19
JS

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**

**PRESENT:HON. JOAN A. MADDEN PART 11**
***Justice***

**ALBERTO BETANCOURT, personally, and as Next of Kin and on behalf of ADA RODRIGUEZ,**

**Plaintiff,**

**- v -**

**MOUNT SINAI HOSPITAL, and JOHN DOE/JANE DOE, ET AL,**

**Defendants.**

**Index No. 101628/17**
**Motion seq 006**

**FILED**
SEP 03 2019
COUNTY CLERK'S OFFICE
NEW YORK

RECEIVED
SEP 03 2019
GENERAL CLERK'S OFFICE
NYS SUPREME COURT - CIVIL

The following papers, numbered 1 to _____ were read on this motion to reargue.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: [ ] Yes [ x ] No

Plaintiff, appearing *pro se*, moves for reargument of this court's supplemental and amended order dated May 23, 2019 ("the prior order"), declining to sign plaintiff's order to show cause which sought, *inter alia*, appointment of counsel to represent him in this medical malpractice action.

The motion is denied as in its prior order the court did not misapprehend the relevant law or facts. See generally William P. Pahl Equipment Corp v. Kassis, 182 AD2d 22 (1st Dept), lv denied 80 NY2d 1005 (1992).

While criminal defendants have a constitutional right to counsel (People v. Ramos, 99 NY2d 27, 32-33 (2002), there is no such right in a civil matter like the instant case. The right to counsel in criminal cases is rooted in the federal and state constitutional provisions, and

emanating from such provisions is the right to have assigned counsel if a defendant is unable to obtain one due to indigency. Matter of Smiley, 36 NY2d 443, 437 (1975), citing Gideon v. Wainwright, 372 U.S.335 (1963). "The underlying principle is that when the State or Government proceeds against the individual risk of loss of liberty or grievous forfeiture, the right to counsel and due process of law carries with it the provision of counsel if the individual to be charged is unable to provide it for himself." Id.

In civil proceedings involving one's physical liberty, or in which one's "liberty interests" are at issue, the right to counsel has been recognized, and in certain instances, codified. See Lassiter v. Department of Social Servs., 452 U.S. 18 (1981)("It is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendment right to counsel in criminal cases, which triggers the right to appointed counsel" ). For instance, Family Court Act § 262 provides for the appointment of counsel if a litigant is financially unable to obtain an attorney, in various types of proceedings, including those involving, parental rights, custody, paternity and adoptions. Debella v Debella, 161 AD3d 1239 (2d Dept 2018). Statutes also provide for assigned counsel in proceedings pursuant to the Mental Hygiene Law and in Article 81 proceedings for the appointment of a guardian of the person and or property. Matter of St. Luke's–Roosevelt Hosp. Center, 159 Misc.2d 932, 934-940 (Sup Ct NY Co.1993) mod on other grounds and remanded, 215 AD2d 337 (1st Dept 1995).[1]

The instant case is not one where plaintiff's personal freedom or liberty interests are at stake. Here, plaintiff seeks assigned counsel to pursue private litigation in a medical malpractice case involving the care and treatment of his mother. While Mr. Betancourt makes an impassioned plea for assignment of counsel, absent constitutional, statutory authority, or the implication of liberty interests, the circumstances here do not warrant assignment of counsel.[2]

---

[1]Moreover, as there is no statutory provision for assignment of counsel in private medical malpractice litigation, counsel would be uncompensated unless the litigation was successful and compensation was provided for in a retainer agreement.

[2]The cases relied on by plaintiff do not support the appointment of counsel to prosecute this medical malpractice action. Specifically, Hotel Washington Co. v. Swinick, 66 Misc2d 833 (App Term 1971) involved an indigent tenant being evicted from her apartment, while Barlett v.

Accordingly, it is

ORDERED that plaintiff's motion for reargument is denied; and it is further

ORDERED that all further motions in this action shall be made by order to show cause and failure to move by order to show cause will provide a basis for denial of the motion.

DATED: August 9, 2019

J.S.C.

FILED
SEP 03 2019
COUNTY CLERK'S OFFICE
NEW YORK

---

Kitchin, 76 Misc2d 1087 (Sup Ct NY Co. 1973), concerned an indigent petitioner, who was the sole provider of support for two minor children, and sought counsel to assist him in obtaining a divorce.

**EXHIBIT B**

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**

**PRESENT:HON. JOAN A. MADDEN PART 11**
**Justice**

**ALBERTO BETANCOURT, personally, and as Next of Kin and on behalf of ADA RODRIGUEZ,**

**Index No. 101628/17**
**Motion seq 005**

**Plaintiffs,**

**- v -**

**MOUNT SINAI HOSPITAL, and JOHN DOE/JANE DOE, ET AL,**

**Defendants.**

RECEIVED
AUG 16 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

FILED
AUG 13 2019
NEW YORK COUNTY
COUNTY CLERK

The following papers, numbered 1 to ____ were read on this motion to amend.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: [ ] Yes [x] No

Plaintiff Alberto Betancourt, appearing *pro se*, moves by order to show cause to amend the caption to reflect his appointment as Administrator of the Estate of Ada Rodriguez, deceased, to extend the time to serve an amended complaint, and to clarify the court's interim order dated May 23, 2019, requiring him amend the complaint when this action had been commenced by service of a summons with notice. There is no opposition to the motion, which is granted to the extent set forth below.

In its interim order dated May 23, 2019, the court granted defendant's motion to dismiss for lack of capacity and failure to substitute a representative of the Estate of plaintiff Ada Rodriguez, to the extent of holding the motion in abeyance for 30 days so as to permit Mr. Betancourt to move to amend the complaint to substitute a representative of the Estate of Ada Rodriguez as plaintiff and directed that if a motion for such relief was not made by June 27, 2019, the complaint would be dismissed.

Mr. Betancourt filed this order to show cause on June 27, 2019, which is granted as directed below, and it is

ORDERED that Alberto Betancourt, as Administrator of the Estate of Ada Rodriguez, is

substituted as plaintiff in the above entitled action in the place and stead of Ada Rodriguez; and it is further

ORDERED that all papers, pleadings and proceedings in the above-entitled action be amended by substituting Alberto Betancourt, as Administrator of the Estate of Ada Rodriguez, in the place and stead of plaintiff Ada Rodriguez, without prejudice to the proceedings heretofore had herein; and it is further

ORDERED that the caption is amended to read as follows:

---

Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, decedent, Index No. 101628/17

Plaintiffs,

-against-

Mount Sinai Hospital, John Doe, Jane Doe,

Defendants.

---

RECEIVED
AUG 16 2019
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

FILED
AUG 13 2019
NEW YORK COUNTY
COUNTY CLERK

and it is further

ORDERED that within ~~30~~ 30 days of the date of this order, plaintiff shall serve a copy of this order with notice of entry upon the Clerk of the Court (room 141B) and upon the Clerk of the General Clerk's Office (room 119), who are directed to amend their records to reflect such change in the caption herein; and it is further

ORDERED that within ~~20~~ (60 days) days of the date of this order plaintiff shall file and serve a complaint with the amended caption; and it is further

ORDERED that a preliminary conference shall be held on ~~October 17~~ November 14, 2019 at 11 am in Part 11, room 351, 60 Centre Street.

DATED: August 1, 2019

J.S.C. HON. JOAN A. MADDEN J.S.C.

Check one: [ ] FINAL DISPOSITION [ x ] NON-FINAL DISPOSITION

**EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Alberto Betancourt personally and as Next of Kin and Administrator of the Estate of Ada Rodriguez, Decedent,

Index No.: 101628/2017

Plaintiffs,

- Against -

**PLAINTIFFS AFFIDAVIT IN FURTHER SUPPORT OF MOTION TO REARGUE/ RECONSIDER ORDER AND TO ASSIGN COUNSEL**

**TO JUDGE MADDEN**

Mount Sinai Hospital, John Doe, Jane Doe, Et als.,
Defendants,

---

I Alberto Betancourt personally and also acting as Representative Administrator of the Estate of Ada Rodriguez, deceased but Alive in Spirit today, plaintiffs pro se, hereby state the following is true and under penalty of perjury:

**Additional Points Submitted to the Attention of the Supreme Court Judge Madden Further Supporting the Plaintiffs' Motion to Reargue/Reconsider Prior Order and to Assign Counsel to Indigent Plaintiffs in this Special Medical Malpractice Civil Action**

1. Plaintiffs respectfully submit this affidavit in further support of the present plaintiffs' motion to reargue and to reconsider the court's prior order and to assign counsel. There are important points that I think the court should be made aware of in deciding the present motion.

2. After I left the hearing held on Thursday, August 15, 2019 in Judge Madden's chamber, I was unsure as to whether or not Judge Madden understood the significance and relevancy of the point concerning Mrs. Rodriguez's participation at Ground Zero during the 911 Tragedy that affected this nation and humanity and the negligent medical treatment that she received at Mount Sinai Hospital. It is submitted that the issue is relevant and connected to plaintiffs' claims of negligence and wrongful death, which plaintiffs will establish at trial by a preponderance of evidence and testimony taken of witnesses and an expert witness before Judge Madden.
3. Particularly, the corporation defendant Mount Sinai Hospital operates and manages a federally funded medical program The Mount Sinai Hospital World Trade Center Monitoring and Screening Program that treats the medical condition of thousands of 911 patients first responders who like Mrs. Rodriguez participated at Ground Zero, either as workers, government personnel or volunteers first responders.
4. Mrs. Rodriguez worked without pay for free as a first responder volunteer United States Citizen and Resident of the State and City of New York. She gave her heart and soul at Ground Zero when the City and State of New York called out for residents to help. Mrs. Rodriguez was in fact the first women to work hard next to and with men at the bucket brigade in Ground Zero, as the photo that plaintiffs presented to Judge Madden and was introduced into record at the August 15, 2019 hearing demonstrates.
5. I also gave my heart and soul working without pay as a first responder volunteer in Ground Zero. I sincerely state that I personally witnessed my dear mother Ada Rodriguez doing all kinds of tasks and works at Ground Zero. Ada and I worked as volunteers first responders at Ground Zero for over a month till about middle of October 2001, and Ada continued providing volunteer work for over three (3) months since September 2001 to about December 2001.
6. That in treating Mrs. Rodriguez's medical condition cancer of the colon, corporate Mount Sinai Hospital defendants ignored the fact that Mrs. Rodriguez was a 911 first responder patient of its own institution at The Mount Sinai Hospital World Trade Center Monitoring and Screening Program that was being attended at its facility since 2001 to the time of Mrs. Rodriguez's death on November 16, 2015.

7. This is an important point that shows Mount Sinai Hospital's neglect of Mrs. Rodriguez's health. Doctors at the Mount Sinai Hospital Emergency Room knew that Mrs. Rodriguez was a patient of their 911 program since Mrs. Rodriguez personally informed them of the matter and she even provided them a "special id card that was issued to her by The Mount Sinai Hospital World Trade Center Monitoring and Screening Program."
8. Also, of significance is the fact that The Mount Sinai Hospital World Trade Center Monitoring and Screening Program informed Mrs. Rodriguez (and also plaintiff Betancourt) that she should present the id to the ER doctors at Mount Sinai Hospital and they would then have access to her record and all the treatment that she was receiving under the program, and hence that she would receive proper and complete treatment as a known "Mount Sinai Hospital 911 Patient."
9. Furthermore Mrs. Rodriguez was told that with her Mount Sinai 911 World Trade Center Monitoring and Screening Program id card the doctors at the Mount Sinai Hospital ER would know all about Mrs. Rodriguez's health condition, including prior visits, any examinations, treatment, procedures, and practices performed on the patient, and medications prescribed to her, and the doctors and other health professionals who treated and were treating her health condition, and that Mrs. Rodriguez, therefore, would receive expeditiously and proper treatment accordingly. None of which happened. Instead the doctors at the Mount Sinai ER totally disregarded the fact that Mrs. Rodriguez was a 911 First Responder Patient at Mount Sinai Hospital and not just another patient who entered their ER facility complaining of severe abdominal pains.
10. It is important that Judge Madden comprehends also that these facts and other evidence will show at trial also that Mount Sinai Hospital mistreated and acted negligently toward Mrs. Rodriguez although it knew that many of its 911 first responder patients, thousands in fact, had died of similar medical causes and conditions such as cancer.

11. **Now, Judge Madden should understand that this is not just another medical malpractice civil case. No in fact this case is about a patient of the Mount Sinai Hospital and also a 911 first responder patient of The Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Judge Madden is informed of the fact that "Mrs. Rodriguez's cancer of the colon was medically certified as a 911 cancer by The Mount Sinai Hospital World Trade Center Monitoring and Screening Program."**
12. Yet plaintiffs seriously state, and they are convinced, and evidence and testimony will show at trial, if plaintiffs of course are guided by an attorney of this Court and an expert witness facilitated to them, that Mrs. Rodriguez should not have died and she would have survived her surgery and lived a relatively long time or decades had Mount Sinai Hospital properly expediently and professionally treated her medical condition (to wit a 911 related cancer of the colon).
13. **In fact numerous Mount Sinai Hospital doctors personally told Mrs. Rodriguez and Betancourt that "her cancer was insignificant, that it was a small mass, that it had not any roots, that it was not advanced and had not metastasized, that it had not spread to any other areas of her body, and, post surgery, that it was removed successfully." Doctors of Mount Sinai Hospital also stated and assured plaintiffs both prior to and after the surgery that Mrs. Rodriguez would live a very long time, decades in fact. But in the end Mrs. Rodriguez died a few days after surgery, which result contradicts all the promises, assurances and statements of the Mount Sinai Hospital doctors.**
14. Upon information and belief, the doctors made such statements, advices, assurances and opinions after performing tests of Mrs. Rodriguez during and after her second visit to the ER on October 23, 2017.
15. Although Mount Sinai Hospital World Trade Center Monitoring and Screening Program certified Mrs. Rodriguez' cancer as a 911 disease, notwithstanding defendants Mount Sinai Hospital did committed negligence in treating (or failing to properly treat) Mrs. Rodriguez's cancer and other health conditions.

16. As plaintiff Betancourt stated to Judge Madden, hence, Mrs. Rodriguez could have lived, and would have lived had Mount Sinai Hospital treated her medical condition properly, expeditiously and professionally. Mount Sinai Hospital misdiagnosed Mrs. Rodriguez's medical condition and caused Mrs. Rodriguez to unnecessarily experience tremendous unbearable agonizing pain and suffering for approximately a month and one week after she was quickly released from the Mount Sinai Hospital Emergency Room on September 17, 2015.

17. Consequently Mrs. Rodriguez lost about 60 lbs during that period without receiving any medical treatment, except that she was taking a Cipro medication that was prescribed by doctors of the Mount Sinai Hospital Emergency Room allegedly to treat what they believed was a bacterial infection.

18. Upon information and belief, the ER doctors told Mrs. Rodriguez that she had a bacterial infection and the only medicine they prescribed was Cipro. That the ER doctors took an x-ray of Mrs. Rodriguez's abdomen area but that x-ray was not done right and images were obscure and could not be read. Upon information and belief, Mount Sinai Hospital *intentionally* disregarded the fact that they did not take a full x-ray clear image of Mrs. Rodriguez's abdomen. Instead of performing more x-rays, or conducting a new x-ray, ct-scan or MRI, and other exams, they quickly released Mrs. Rodriguez from the ER and despite knowing that she was still experiencing and complaining of severe abdominal discomfort, pains and sufferings.

19. **Judge Madden is to be aware of the fact that this civil case should be viewed then as a "special 911 related medical malpractice case that requires an experienced attorney to competently represent the plaintiffs' causes of action before this Court." In fact, the Court is informed that this complicated 911 medical malpractice case involves various medical records from four (4) medical facilities owned, operated, managed and controlled by Mount Sinai Hospital, including The Mount Sinai Hospital World Trade Center Monitoring and Screening Program, Mount Sinai Hospital Emergency Room, Mount Sinai Hospital Cancer Research facility, and Saint Luke's Hospital/Mount Sinai.**

20. **As such, it is a rather costly, difficult, burdensome and complicated case, and self-represented indigent plaintiffs cannot possibly represent their case before Judge Madden without the assistance of counsel (an an expert witness) appointed by the Court.**
21. **We sincerely hope, hence, that in viewing the foregoing special circumstances of this case, Judge Madden comes to reason that appointment of counsel is a fundamental right that serves the purposes of Justice insofar as plaintiffs are incapable of practically handling the weight of this case on their own unaided by an attorney.**
22. **Plaintiff Betancourt informs states and reiterates to Judge Madden that "My dear mother Ada suffered tremendous unbearable pains and sufferings because of the defendant's neglect and misdiagnosis of her health condition, and she should not have suffered and died in this world. My mother was 66 years of age, which judging by today's medical standards it is an age considered to be relatively young. My mother's cancer of the colon could have been properly treated and removed and Ada would have lived a long time in this world only if Mount Sinai Hospital had performed its duty of care and ethical and legal obligations and medical practices to the patient Ada in a timely and professional manner."**
23. Mount Sinai Hospital owed a duty of care to Mrs. Rodriguez, not only as a hospital that treated the patient at the Mount Sinai Hospital Emergency Room medical facility but also as the hospital that is assigned to treat the medical conditions of thousands of 911 first responders since the 911 tragedy that affected this nation. As noted herein, Mrs. Rodriguez was a member of the Mount Sinai Hospital World Trade Center Monitoring and Screening Program at the Mount Sinai Hospital Annenberg Building since 2001. Hospital staff doctors, medical professionals and nurses et als treated Mrs. Rodriguez's medical conditions since that time up till the time that Mrs. Rodriguez became ill and visited the Mount Sinai Hospital Emergency Room on September 17, 2015. It is plaintiffs' legal position, and which evidence will show at trial, that Mount Sinai Hospital violated its duty of care toward 911 First Responder Patient Mrs. Rodriguez.

24. The Court is to take notice that there are two correlated matters concerning the medical treatment that Mount Sinai Hospital provided (or failed to provide) to Mrs. Rodriguez. One is the treatment that Mount Sinai Hospital provided to Mrs. Rodriguez at The Mount Sinai Hospital World Trade Center Monitoring and Screening Program from about 2001 till September 17, 2015. However it is stated for Judge Madden's understanding that Mount Sinai's treatment of Mrs. Rodriguez under the institution's 911 World Trade Center Program extends and continues all through the phase of Mrs. Rodriguez's visit to the Mount Sinai Hospital Emergency Room on September 17, 2015 and later during her second visit to the ER on October 23, 2015 till the time of her death on November 16, 2015, and since it was Mount Sinai Hospital's binding responsibility to provide medical treatment to its 911 patients under the said 911 World Trade Center Program. Mount Sinai Hospital's responsibility to Mrs. Rodriguez under its 911 World Trade Center Program is further demonstrated from the fact that The Mount Sinai Hospital World Trade Center Monitoring and Screening Program ultimately covered the costs or medical bills related to the medical care that Mrs. Rodriguez received at the Mount Sinai Hospital Emergency Room from about September 17, 2015 to the time of her death, including the surgery and other medical exams and treatments performed on October 23 2015.
25. The other is the medical treatment that Mount Sinai Hospital provided (or failed to provide) at the Mount Sinai Hospital Emergency Room on September 17, 2001 and October 23, 2015 till the time of Mrs. Rodriguez's death on November 16, 2015.

**Saint Luke's Hospital is an Interested Party that should be added as defendant to the Case**

26. **Also Saint Luke's Hospital of Mount Sinai Hospital provided medical treatment to Mrs. Rodriguez on the day of Mrs. Rodriguez's death on November 16, 2015. It is respectfully submitted that plaintiffs would need to further amend the caption to include Saint Luke's Hospital as a defendant to the case, and since Saint Luke Hospital, upon information and belief, also performed questionable medical treatment of Mrs. Rodriguez.**

27. **That Saint Luke's Hospital is owned, operated, managed and controlled by the defendant parent corporation Mount Sinai Hospital. Saint Luke's Hospital of Mount Sinai also is the medical institution that performed the autopsy of Mrs. Rodriguez. Accordingly, Saint Luke's Hospital is an interested party to the action, an indispensable corporate defendant that should be added to the case as it is also liable to the plaintiffs for medical actions it performed (or failed to perform properly), and which corporate defendant therefore is vital to the plaintiffs' proving their claims of negligence and wrongful death.**
28. **Accordingly, at this juncture the Court is respectfully asked to grant plaintiffs leave by notice of motion to amend the caption to add Saint Luke's Hospital as a defendant to the action, unless the Court decides by its own order issued *sua sponte* that defendants Saint Luke's Hospital, its doctors and medical professionals, et al., is an indispensible interested party that is to be added as defendant to this matter and directs the Office of the Clerk to make such changes accordingly.**
29. Hence clearly this special 911 medical malpractice case is very complicated since it involves medical records from three (4) different medical facilities, institutions or programs operated and managed by the same parent corporation Mount Sinai Hospital. It is plaintiffs' legal position also that Mount Sinai Hospital violated its duty of care and failed Mrs. Rodriguez not just as a regular patient who was attended by doctors and received medical treatment at the Mount Sinai Hospital Emergency Room on September 17, 2015 and October 23, 2015 but also as a 911 First Responder Patient who was treated for about 14 years by the same Mount Sinai Hospital.
30. As Judge Madden may know, approximately tens of thousands of 911 first responders have died and become ill due to 911 related illnesses such as Mrs. Rodriguez's cancer. Mount Sinai Hospital knew or should have known that Mrs. Rodriguez was a member patient of its Mount Sinai Hospital World Trade Center Monitoring and Screening Program and therefore it should have provided Mrs. Rodriguez adequate, proper, professional and immediate medical care when patient Mrs. Rodriguez first visited the Mount Sinai Hospital Emergency Room on September 17, 2015.

31. However as plaintiffs allege in the Summons with Notice, Mount Sinai Hospital failed Mrs. Rodriguez and totally disregarded her medical conditions. Instead it sent Mrs. Rodriguez home despite the fact that the patient was still under constant severe pain and suffering, experiencing complications with her vowels and other medical conditions that doctors of the Mount Sinai Hospital ER totally disregarded and failed to diagnose and to provide urgent medical care.

32. The Court therefore is asked to comprehend that plaintiff Betancourt and acting as legal administrator of Mrs. Rodriguez's estate at the hearing held on August 15, 2019 wanted Judge Madden to understand that this medical malpractice case also concerns rather important and serious issues relevant to 911 tragedy and that Mount Sinai Hospital's negligence is twofold: the hospital committed negligence toward Mrs. Rodriguez not just as a regular patient who first sought urgent medical help at the Mount Sinai Emergency Room on September 17, 2015 but received little to none, but fundamentally it disregarded and failed to treat its own 911 first responder patient Mrs. Rodriguez of its Mount Sinai Hospital World Trade Center Monitoring and Screening Program.

33. Knowing that thousands of its 911 first responder patients have become ill and died, and having thus developed a history of treating thousands of patients members of its Mount Sinai Hospital World Trade Center Monitoring and Screening Program for various 911 related health conditions, it was then the required obligation of Mount Sinai Hospital to provide immediate, proper and complete medical treatment to Mrs. Rodriguez, and which plaintiffs will show at trial.

**<u>Mount Sinai Hospital's Mismanaged its 911 World Trade Center Monitoring and Screening Program that is Funded and Supported by the Federal Government in providing Unequal Differential Medical Treatment to 911 Patients like Plaintiffs</u>**

34. Furthermore, Mount Sinai Hospital also provided preferential and better treatment to other 911 first responders government personnel firefighters and police officers and others that is different from the kind of treatment that Mrs. Rodriguez a 911 first responder volunteer received. Upon information and belief, this difference in the treatment that Mount Sinai provided to Mrs. Rodriguez is due to Mount Sinai's mismanagement of its 911 Program and which it is also connected to and relevant to the negligence and wrongful death claims in this important civil action.

35. Given the opportunity and when the time is ripe in the case, the plaintiffs will demonstrate also that Mount Sinai Hospital defendants also mistreated and were negligent toward Mrs. Rodriguez with respect to their treatment of Mrs. Rodriguez at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program. It is plaintiffs' strong belief, and evidence will show at trial, that Mrs. Rodriguez was also not properly competently and fully treated at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program or that there was unfairness and discrimination practiced in the way that Mount Sinai treated patients first responders like Mrs. Rodriguez versus its "preferential and better treatment of other 911 patients like police officers and firefighters and other government personnel who are treated at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program."

36. ***Mount Sinai Hospital since 2001 to the present has received hundreds of millions of dollars in funds appropriated by the federal and state governments and private donors and institutions to operate and manage its Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Yet they have improperly managed said program resulting in serious concerns with respect to the way that certain patients like Mrs. Rodriguez and Betancourt are treated for their medical conditions. Mrs. Rodriguez's case is evidence of such mismanagement and unfairness that ultimately resulted in a 911 first responder patient Mrs. Rodriguez's suffering and death, and since her 911 related cancer was improperly treated by Mount Sinai Hospital.***

**Plaintiff Betancourt also Received Unequal Differential Treatment at The Mount Sinai World Trade Center Monitoring and Screening Program and he is a Witness to Action who will Testify at Trial of his Dear Mother Ada's Pain and Suffering and Negligence Committed by Mount Sinai Hospital**

37. *Furthermore, plaintiff Betancourt also has received unequal medical treatment at the Mount Sinai 911 World Trade Center Program since on or about 2001 to the present. Mr. Betancourt also is a witness who would testify at trial to Judge Madden regarding said unfairness and unequal medical treatment practices of Mount Sinai Hospital. Fundamentally, Mr. Betancourt as witness also will testify at trial about the pain and suffering that his dear mother Ada endured at the hands of Mount Sinai Hospital and his many efforts to have Mount Sinai Hospital act professionally and provide professional and proper medical treatment to Ada.*

**Mount Sinai Hospital's Concealment of Information Concerning Mrs. Rodriguez's Health Condition and Treatment They Performed or Failed to Perform on Mrs. Rodriguez**

38. I seriously believe that the defendants also fabricated and concealed information and lied about my mother's health condition and the treatment they performed (or failed to perform) on Mrs. Rodriguez in order to cover up their mess and to avoid potential liability. Upon information and belief, this information I gathered from medical staff's statements made to my mother and I personally during Ada's post-surgery visit to the oncologist office at the Mount Sinai Hospital Cancer Research Facility.
39. Also we reiterate that various doctors of Mount Sinai Hospital stated to my mother and I that her cancer was not a threat to her life, that it had not metastasized. "Good news! Your mother's cancer is isolated, it is small mass in the colon, it would be easily removed and Ada will live a long tim" Statements like these were made to my mother and I both prior to and after Ada underwent surgery. Yet the end result was different from their assurances and guarantees as medical professionals, and Ada ultimately passed away due to complications of her colon cancer as certified in the death certificate.

40. However it is restated for purposes of clarity and understanding by the Court that I strongly believe that Ada also did not survived her operation because her body was too weak and frail since she had lost approximately 60 pounds during the period that she stayed at home trying to recover from what she believed was a bacterial infection as the doctors at Mount Sinai Hospital Emergency Room had wrongfully and negligently misdiagnosed and ill advised her that it was her medical condition beginning on September 17, 2015 till October 23, 2015 the time of her second visit to Mount Sinai Hospital Emergency Room and after she could no longer bear her pain and suffering.

**There are Present in This 911 Related Medical Malpractice Civil Action Obvious Significant Differences in the Legal Expertise and Powers of the Parties Giving Rise to Injury to the Indigent Self-Represented Plaintiffs**

41. **Also, as plaintiffs stated to Judge Madden at the conference had on August 15, 2019, there are obvious differences in the legal expertise of the parties that, that if left unsettled and unbalanced, may result in serious injury and unfairness to the indigent self-represented plaintiffs. These self-evident differences in the parties' legal expertise and powers also evinces about the inequality that is being suffered to the indigent civil litigants, which if it remains uncorrected it would give way to much unfairness, bias and discrimination that plaintiffs are likely to experience during the course of this litigation, thereby rendering the Court's determination improper and unjust consequently.**

42. Clearly corporation defendants Mount Sinai Hospital is holding the upper hand in this medical malpractice civil case, inasmuch as it is being represented by a Wall Street law firm while plaintiffs can only hope that Judge Madden wisely grants the relief being requested herein of court assigned attorney and an expert witness, which relief would balance these differences under the law and satisfy at minimum the Constitution's demands of due process.

43. **Indigent civil plaintiffs should be afforded an fair and equal opportunity to be heard in this case, and it is fundamental that this Supreme Court Judge Madden hears and decides their case in the same manner of fairness that the Court hears and decides other cases of medical malpractice that are litigated by attorneys of the private bar.**

44. **Fundamentally, the fact that plaintiffs are poor should not be held against them in their efforts to present and demonstrate their case, and said economic status must not serve as a prohibition against their being allowed access to the judicial system and an equal opportunity to be heard, to present irrefutable evidence and vital testimony of witnesses, and to obtain an unbiased and correct judicial decision/judgment and other legal remedies in this Supreme Court of the State of New York.**

45. In making her decision of this rather important matter of first impression of assignment of counsel and an expert witness by the Court in a medical malpractice civil action, Judge Madden today is again reminded of the fact that initially plaintiffs commenced this civil action by filing a Summons with Notice pro se pursuant to the order of Supreme Court Judge Shoenfeld issued and filed on November 17, 2017 grating plaintiffs' application for poor person relief and allowing their case to proceed against the corporate Mount Sinai Hospital defendants accordingly.

46. Their poor person status is evidence of this Supreme Court's prior decision (Judge Schoenfeld) finding pursuant to the law CPLR plaintiffs' impoverished economic condition and authorizing waiver of the court's costs and fees. Likewise said order is evidence that plaintiffs are unable to pay the services of both a private bar attorney and a medical doctor or expert witness for purposes of establishing their claims of against the corporate Mount Sinai Hospital defendants of negligence, wrongful death and pain and suffering.

47. Hence as this Supreme Court (Judge Schoenfeld) has already reasoned and declared plaintiffs' poor person status in permitting them to proceed with their case, then it follows that the presiding judge Hon. Madden too should expand those rights and privileges to the indigent plaintiffs in agreement with the Judge Schoenfeld's prior order and as the CPLR allows.

48. The Supreme Court (Judge Madden) can derive those powers under the statute CPLR §1102 which expressly authorizes the Court to issue relief to an indigent civil litigant of both poor person and assignment of counsel in a civil action. **CPLR §1102(a) states: "(a) Attorney. The Court in its order permitting a person to proceed as a poor person may assign an attorney."**

49. Also CPLR §1102(d) expressly gives this Court power and authority to grant the relief of assigned counsel, as it concerns the payment of "services an expenses of a court assigned attorney" that is to come from any such sum awarded to the plaintiffs. **Particularly CPLR §1102(d) states that "(d) A poor person shall not be liable for the payment of any costs and fees unless a recovery by judgment or by settlement is had in his favor in which event the court may direct him to pay out of the recovery all or part of the costs and fees, a reasonable sum for the services and expenses of his attorney and any sum expended by the county or city under subdivision (b)."**

**The Court Should Temporarily Stay its Prior Order of August 1, 2019 Requiring Plaintiffs to Submit an Amended Complaint until the Matter Concerning the Assignment of Counsel and Expert Witness is Decided and Resolved**

50. ***Notwithstanding, the one fundamental point that we think is of first impression and raises a rather interesting and important constitutional issue in this case concerns the indigent plaintiffs' inability to afford the services of a medical professional expert witness. In our view, being that such condition is required as a matter of law and practice in order to establish negligence wrongful death claims, the plaintiffs are not able to proceed on their claims and should not be made to present a pro se amended complaint at this juncture until the Court has decided the present matter.***

51. *There is the likelihood that submitting an amended complaint pro se on their own without the assistance of an attorney and an expert witness or doctor who can review the entire medical records and preliminarily certify as to the validity of plaintiffs' negligence and wrongful death claims, that that may result in further irreparable prejudice and significant damage to the plaintiffs' case. The Court should want to see a complaint that is properly and professionally and competently filed by an attorney and after consulting with an expert witness and doctors.*
52. *Needless to say, the fact that indigent plaintiffs cannot pay the services of an expert witness doctor that issue in itself prevents the Court from making a proper and fair judicial determination in this complicated special medical malpractice case. By this reason, we believe strongly that it is the best interest of the Court to temporarily stay its order of August 1, 2019 requiring plaintiffs to submit an amended complaint until this issue has been decided and fully resolved.*
53. *In light of the foregoing issues, the Court should temporarily stay its prior order issued and filed on August 1, 2019 requiring plaintiffs to submit an amended complaint within 60 days of the said order.*

**The Court Should Find a Right to Counsel in this Civil Action Under the US Constitution**

54. However, we believe that this particular civil case of medical malpractice does presents constitutionality issues that demand appointment of counsel as of right under the federal constitution and not just as a matter of discretion, and based on the foregoing. A right to counsel by law and as a matter of "common sense," is to be found in this particular civil case. In our view and as this case clearly shows, a 911 complex medical malpractice civil action should not be viewed and treated as a simple regular civil case. It is different and often involves complicated technical matters relevant to both the legal practice area of torts and medicine. Thus it is not logical and right as a matter of law and its practice per se to require indigent pro se plaintiffs to litigate their 911 related medical malpractice wrongful death claims on their own without the assistance of an attorney, and it would be unfair and unreasonable of any court to leave them up to the difficult and nearly impossible task of litigating any such medical negligence wrongful death claim unassisted by counsel.
55. **This Supreme Court Judge Madden knows from experience over the years in adjudicating medical malpractice cases that it is "highly doubtful and virtually impossible that a private litigant proceeding pro se and poor would successfully represent a medical malpractice wrongful death claim both at the trial court and appellate courts level." Not when the defendant is a private corporation that is by law represented by a law firm.**
56. ***Should this Supreme Court fail to provide appointed counsel and an expert witness to indigent civil litigants, then we respectfully submit that it is very probable that the court's decision would result in unfairness to the plaintiffs, that it may constitute a denial by the judiciary and state government of plaintiffs' due process rights and equal access to justice, and that it would force plaintiffs to surrender their medical malpractice wrongful death claims against corporation defendants, or consequently that their claims would ultimately be unfairly and improperly decided.***

57. ***Constitutional wise, plaintiffs cannot effectively and successfully prove their medical malpractice case unless and until an expert witness has been assigned to the case, and since by law Judge Madden must be presented with testimony of the said expert witness and interrogatories before trial and other evidence at trial that would demonstrate the negligence wrongful death and pain and suffering claims.***
58. ***The US Constitution 5th Amendment protects plaintiffs' due process rights and the expert witness requirement, which is a mandatory judicial requisite, can lead to a violation of those constitutional rights, and should this Court fail to assist the indigent pro se plaintiffs.***
59. ***Therefore, we reiterate and restate for purposes of clarity and emphasis of the essential issue at hand, a medical malpractice case like the present should not be viewed as a simple civil case that indigent civil litigants can represent alone and unaided by an attorney experienced in the areas of law and medicine. Here, as we have stated above, this particular case raises fundamental due process constitutional issues that, in our view, mandate a favorable decision by this Court Supreme of the State of New York (Judge Madden) recognizing a right to counsel under the US Constitution.***
60. There is an old wise saying that speaks of the power of the Truth in this world: "Ye Shall Know the Truth and the Truth Shall Set You Free." In asking the court to consider plaintiffs' request of court appointed counsel and an expert witness, the Court today has the opportunity to establish an important precedent that fundamentally will aid not just indigent self represent plaintiffs like Mrs. Rodriguez and Betancourt but also other indigent pro se plaintiffs in medical malpractice civil cases in the future. Getting to the Truth of plaintiffs' causes of action as a matter of law, legal practice and Justice requires the assistance and representation of an experienced attorney.

61. **But we reiterate herein for purposes of clearly and convincingly demonstrating the rationale that the court should adopt in deciding this rather important case that as a constitutional matter, and as the court may perceive and act upon wisely, the medical expert witness is in fact a constitutional bar to plaintiffs' obtaining justice and having a fair and equal opportunity to adjudicate their claims in the judicial system of this State of New York.**
62. **Indigent plaintiffs cannot possibly afford the high cost of an expert witness, which allegedly may cost about $30,000 or more at the end of trial, and as Judge Madden knows by law and as a matter of legal procedure an expert witness is a mandatory requirement in a medical malpractice civil case. Plaintiffs' due process rights therefore are deprived by reason of that binding legal condition.**
63. What then must the plaintiffs do if by reason of their impoverishment they are unable to proceed and to effectively and legally present their case to Judge Madden for a proper determination? It is therefore our view, and considering the special circumstances arising thus from these pretrial proceedings and also the complicated matters relevant to the patient-hospital relationship and the extent to which the hospital failed to treat the patient's medical condition both as a 911 first responder patient who was being treated under its 911 medical program since 2001 and as a patient of the hospital's emergency unit, it is the *duty* of this Supreme Court to assign counsel in order that plaintiffs' claims are properly presented to the court for its determination, since otherwise plaintiffs would not be able to proceed on their claims on their own unaided by an attorney and lacking an expert witness who may testify under oath as to the defendants' negligence.
64. Besides an expert witness doctor is needed to inspect the medical record(s) and to present valid and convincing testimony and evidence concerning the claims of negligence medical malpractice and wrongful death. By law, as noted supra, such legal claims demand the participation of an expert witness and since indigent plaintiffs cannot retain an attorney of the private bar and legal aid organizations are unable to represent their case, as plaintiff Betancourt explained to Judge Madden at the August 15 hearing, their only and last recourse to Justice is to ask this Supreme Court Judge Madden for assistance and to obtain judicial relief under the law.

65. **“The Court is respectfully informed that plaintiff Mr. Betancourt is sending a copy of this and other documents of this case to the federal and state government agencies and officials, the US Congress and New York State Congress so that they are made aware of this matter and also that they know the Truth of how Mount Sinai Hospital *failed* Ada Rodriguez a 911 First Responder Hero who Died for this Nation and Humanity. In our view, this is an important civil case that deserves the attention of those institutions, agencies and individuals managing the business of this nation, and Mrs. Rodriguez’s life must not pass into history being demoralized, devalued and forgotten.”**

66. **Furthermore, it is vital the US Government is properly informed of this matter since it is the US Government, its agencies, politicians, et al who are funding Mount Sinai Hospital’s 911 World Trade Center Monitoring and Screening Program.**

67. **Recently plaintiff Betancourt contacted congress members Jerry Nadler and Adriano Spailatt and their offices have preliminarily shown an interest in this matter and have expressly indicated that they would consider taking legislative action. Plaintiff Betancourt has asked the congressional representatives to consider introducing a bill that may then become law with respect to the assignment of counsel in a medical practice civil action involving indigent civil litigants.**

68. **It is our position that since the Congress state and federal have not advanced those rights concerning the appointment of counsel in a medical malpractice civil case represented by indigent civil litigants and there has been no developments in this area of the law by the legislature since the past century, the Supreme Court Judge Madden today has the legal and moral obligation and the opportunity to expand those fundamental rights as a matter of the Court’s judicial duty in supervising its cases and awarding Justice, also pursuant to the federal Constitution’s guarantee of Due Process, substantive and procedural, and in order that the Judiciary may properly execute its functions and powers in the administration of the law and Justice.**

69. Contrary to *In Re Smiley* that the Court cites and relies upon in drawing its decision today, in our view the Judiciary branch of government should not be denying indigent civil litigants access to the Justice and a meaningful and fair opportunity to litigate their claims under the law solely upon the reasoning, or justification as it seems to be case, that absent legislation appropriating funds and declaring such fundamental rights, the courts cannot on their own assign counsel in a medical malpractice civil matter.

70. The Judiciary's hands must not be tied down and its powers limited by reason of what appears to be congressional neglect of this area of the law. Besides as noted *supra* this case raises a constitutional issue that mandates court appointment of counsel, irrespective of whether or not the court has the power to do so absent legislative decision and statue authorizing that relief.

71. Another key point to consider in deciding this matter, is the payment of the costs and expenses involved in hiring an attorney and expert witness assigned by the court. In our view, the State has the responsibility to guarantee due process to its citizens and residents under the federal and state constitutions. Therefore, the State should assume the costs of retaining the services of an attorney and an expert witness assigned by the court in this civil action, unless the court decides otherwise and the costs and fees are to be funded by the court administration.

72. Nevertheless the court should reason that no matter where payment of those services come from, if from the State or the Judiciary or shared by both, the case demands that an attorney and expert witness is facilitated at no cost to the indigent plaintiffs in order to satisfy the demands of the Constitution's guarantee of due process and to allow Justice is served.

73. Perhaps the Court can assign a pro bono volunteer attorney and an expert witness who may represent plaintiffs at no charge. We respectfully submit that the Court has also the power and authority to direct an attorney of the private bar to represent indigent litigants and to render their services free of charge as a matter of oath and duty. Likewise, ultimately plaintiffs may succeed in their claims and any costs and expenses suffered to the assigned attorneys and expert witness may then be withdrawn from said reward.

## Final Statements in Further Support of Plaintiffs' Motion

74. **Therefore, plaintiffs cannot proceed with the negligence and wrongful death claims in this medical malpractice case because of their inability to financially retain the services of an expert witness who by law is needed and required for this Court to make a proper determination. However the corporation defendants who are represented by a law firm will present an expert witness(es) at trial.**
75. **Under the law, as Judge Madden is fully aware, an expert witness and medical evidence, together with other admissible documentation and evidence supporting plaintiffs' case, is demanded as the burden of proof upon the civil litigants and also in order that the Court makes its determination after reviewing the same. Consequently, in the absence of an expert witness presented by plaintiffs, not only is Court prevented from proceeding in this case but also the defendants can claim that the Court's determination was unfair or not supported by evidence in the record.**
76. Hence we state for the record, and also as Judge Madden may reason wisely, that this is a 911 medical malpractice case that raises an issue of first impression, and considering the special circumstances that are present in this case, appointment of counsel by the Court is warranted not only as a matter of the federal constitution's guarantee of due process but also in order to facilitate equal access to justice to plaintiffs.
77. Additional, the relief of a court assigned attorney would fundamentally help solve the difficulty of the Court needing to make a judicial determination that is fair under the law, being then also the duty of the Court to recognize that in a civil case where indigent plaintiffs are unable to afford the high cost of an expert witness it seems reasonable, and even *mandatory* as a matter of common sense and constitutional rights, that plaintiffs are provided an attorney and also an expert witness who may testify at trial as to the plaintiffs' causes of action and after reviewing the record.

78. As plaintiffs will establish before Judge Madden, Mount Sinai Hospital violated its duty of care toward patient Mrs. Rodriguez not just as the medical institution that treated (or failed to treat properly) the patient's emergency medical condition at the Mount Sinai Hospital Emergency Room on September 17, 2015 but also as the medical institution that provides medical treatment of 911 first responders like patient Mrs. Rodriguez at the Mount Sinai Hospital World Trade Center Monitoring and Screening Program. Both facilities at the Mount Sinai Hospital then violated Mrs. Rodriguez in failing to provide her adequate, humane, professional and proper medical services.

79. Furthermore, doctors at Mount Sinai Hospital (and other administration employees) allegedly knew that Mrs. Rodriguez would die because of her cancer which they had neglected and then improperly treated. Yet as noted *supra*, it is plaintiffs' sincere belief and strong conviction that doctors purposefully, intentionally concealed information and misinformed the plaintiffs about Mrs. Rodriguez's medical condition both prior to and after surgery, and that the doctors lied with respect to the outcome and alleged success of the surgery and the chances that Mrs. Rodriguez could have survived her cancer.

80. ***Your Honor, I plaintiff Betancourt want to say sincerely that in this case we are talking about the life of a human being, dear Ada, my mother, who despite the fact that she died for this great democracy United States of America and for humanity in general, it being that her cancer was from her humanitarian participation at Ground Zero during the tragedy of 911, which again I restate that defendant Mount Sinai Hospital has certified as a 911 cancer accordingly, she was made to suffer unnecessary tremendous unbearable unimaginable pains and sufferings, daily living her last days of this world in vomit and diarrhea and constant agony, all in consequence and as a direct result of the corporate defendants Mount Sinai Hospital's gross negligence.***

81. *This special and complicated 911 medical malpractice case, thus, is not just another medical malpractice civil litigation seeking damages for the wrongs that the defendants committed against Ada. No it is a case that seeks to rectify the injustice that Ada suffered at the hands of Mount Sinai Hospital Corporation and in order that her rights are vindicated and her history is told correctly.*
82. *I cannot possibly ignore, and I would never forgive myself if I should fail to do the right thing for my dear mother, the fact and the Truth that Ada's death could have been prevented, that Ada's cancer of the colon was not supposed to take her life away, it being the case back when she was still alive and conscious, and which information was corroborated by statements of various doctors who did in fact stated and assured us that Ada's cancer was isolated, small, presenting no roots and no spreading into other areas of her body, and after surgery that the medical condition, the cancer that is, had been removed and all of the operation was a complete success.*
83. *Hence, I have a moral, ethical, legal, humane, and spiritual obligation to defend and to vindicate the rights of Ada, and my duty extends beyond the reaches of the law, for after all we are talking about my dear mother, who was removed from this world and taken away from me unjustly.*
84. I ask the fundamental question: what is the price of life? I think your Honor would agree that as a matter of common sense, "life is priceless." I know that I alone proceeding pro se and indigent must face many difficult and virtually impossible hurdles in litigating this medical malpractice civil case, but at the moment my incapacity to retain the services of an expert witness is prohibiting Ada and I from proceeding with the claims and depriving us of due process under the law; and I think that your Honor would reason that such requirement under the law is inviolable and necessary in order to prove any wrongdoing negligence and wrongful death claims committed by defendants which warrants the court's assistance of plaintiffs.

85. It is both my mother and I who are proceeding in this case, and not just me who holds an interest as an injured person who suffered consequently to my mother's pain and suffering and death. In fact even while Ada was awake in this world and conscious of her rights as a person, she mentioned to me the fact that ***"I want to bring Mount Sinai Hospital defendants to Justice,"*** for she felt and understood that ***"they doctors at Mount Sinai Hospital had indeed acted inappropriately, mistreated her, and neglected her medical condition, that they put her life at risk of danger and dying, that they failed to attend her health and medical needs properly, fully and professionally when she first sought immediate emergency medical help at the Mount Sinai Hospital Emergency Room on September 17, 2015, and that they caused her cancer medical condition to become worse."***

86. **My mother was very hurt and upset at how Mount Sinai Hospital medical staff and doctors had mistreated her, and I still remember her own words, which I shall never forget:** ***"They (at Mount Sinai Hospital) did nothing for me, they quickly got rid of me, they did not even cared to do a proper X-Ray of my body; they released me 5 minutes after the X-Ray and did not even looked at it; and I am still in the same terrible painful medical state, I am still suffering severe pains and unable to go to the toilet properly."***

87. Therefore, the plaintiffs do have meritorious causes of actions in this complex 911 related medical malpractice case. It would be a lamentable injustice if they are to proceed single-handedly and without any assistance by an attorney against powerful corporation Mount Sinai Hospital, an institution that is ready to bring about dismissal of the case acting through their attorneys at the firm of Kauffman Borgeest and Ryan LPP. Committing the plaintiffs, therefore, to draft and submit a pro se complaint is a delicate matter that would NOT serve the interest of justice, for in all probability the plaintiffs would not know how to write a properly submitted complaint of negligence and wrongful death.

88. Even though these motions plaintiffs have filed in court do evince an ability to litigate their case, notwithstanding such actions and proceedings are only efforts performed by pro se plaintiffs within their incapacity and limited knowledge of the law, and it is only a courageous attempt to reach out to Judge Madden about their case, which so far they have done effectively it being the matter that the case has reached the stage of pleadings. But let be it clear, hence, that plaintiffs are not qualified to litigate and show to this court a medical malpractice action.

89. If they are forced to present a complaint unaided by an attorney, chances are that their case might be jeopardized and plaintiff Ada may never receive the Justice that she deserves, and also Judge Madden's determination may not be viewed as a proper decision under the law.

90. We reiterate that as plaintiff Betancourt stated to Judge Madden recently at the August 15, 2019 hearing, this Supreme Court has today the opportunity to expand the rights of indigent civil litigants in a medical malpractice civil action, and its decision can potentially impact the practice of the law and benefit the rights of numerous civil litigants in the future. It our view, a medical malpractice case should not be regarded as a regular and simple civil action, for it is clear that that kind of litigation by law often involves complicated difficult procedures and expensive requirements like an expert witness which an indigent litigant cannot possibly afford, thereby precluding his/her having access to the judicial system and depriving them of due process.

91. Moreover, we restate and as plaintiffs have shown in this motion, that it is also in effect the State of New York that is depriving indigent plaintiffs of due process by reason of the foregoing; and the fact that the legislature has not declared by statue (except what is written in the CPLR granting the Court's authority as a matter of discretion to issue relief of poor person and assigned counsel) the rights of indigent civil litigants to said relief of assigned counsel by the court and appropriated the funds to pay the costs of an expert witness in medical malpractice cases, is not a deterrent of the powers and authority of this Court Supreme (Judge Madden) to issue an order granting that relief.

92. In fact, we are convinced that the Court in this particular case can derive such powers and authority directly from Justice and the Constitution, following the principle that in order for the court to make a proper decision about plaintiffs' claims of negligence and wrongful death there must be first a guarantee of due process allowed to the plaintiffs and as the US Constitution demands.
93. The ideals and values of Democracy, as have been known, established, exercised and enforced since ancient times, have always promoted the fundamental Truth that Justice must not denied to the oppressed and that members of the jurisprudence or those in government who are vested with the power and authority to punish and to reward certain actions of society should do so without any bias and prejudice.
94. Justice, as far as one may deem of its self-evident pursuits and demands, it must then be reasonably understood under the special circumstances present in this case hence, cannot be said to have been reasonably rendered in a unbiased and non-prejudicial fashion in a case where the private litigants are prohibited by the State governments and the Judiciary to present relevant and direct real, material uncontroverted evidence together with testimony demonstrating their claims. In effect, plaintiffs' rights would be violated by the State and the Judiciary, and should this Supreme Court (Judge Madden) fail to recognize the right to counsel and an expert witness to the plaintiffs.
95. Morally speaking, it would seem not just unfair as a matter of law, but the State governments and Judiciary would also be viewed as participating in, or aiding and supporting and approving of the moral wrongs that the institutional hospital defendants committed against the civil litigants. The plaintiffs rights, including civil, constitutional, and natural rights, would be all but unjustly deprived in a State where the judicial system fails to allow them access to Justice and a meaningful and equal opportunity to litigate their cause. The public then would lose faith and trust in the New York State's administration of judicial matters, and should this Court Supreme prevent the plaintiffs from having equal access and due process.

96. As this Court (Judge Madden) fully understands after years of study, knowledge, experience and practice of the law, the Constitution's guarantee of due process recognizes that individuals and corporations have a fundamental right to access to the courts, and that they must be allowed the opportunity to present evidence, witnesses, and other corroborating important documents and testimony that supports and establishes their claims.

97. As this civil case of medical malpractice claims that plaintiff Mrs. Rodriguez died in consequence of the negligence committed by defendants, this Court must determine to what extent the defendant's negligence contributed to or was the direct result of her loss of life and how much pain and suffering was experienced and endured by her prior to her dying in consequence of defendant's actions and inactions.

98. In our view, such determination cannot be properly made unless and until the court has heard vital testimony elicited of competent witnesses and reviewed such relevant admissible evidence, medical and otherwise, after holding a full trial on the matter, all of which demands the presence and active involvement of an expert witness. Since the plaintiffs cannot retain an expert witness due their impoverishment, it then falls on the Court the duty to assist them by appointing an attorney who may then consult with and contract an expert witness in preparation for trial.

**Email of Attorney Respecting Plaintiff's Efforts to Retain Services of the Private Bar**

99. Lastly, plaintiffs hereby submit as documentation of their efforts to retain counsel an email that they received from a law firm, which corroborates the statements plaintiff Betancourt made to Judge Madden regarding the foregoing and the fact that their case bears merit. The Court is also to be conscious of the fact that the attorneys' letter was made after consulting with their law firm's expert witness regarding the facts and circumstances of the case. See Attorney's Email annexed hereto as Exhibit "A."

100. Also regarding plaintiffs' efforts to retain the services of private attorneys of the bar, the Court is reminded that the New York Bar Association administrator told plaintiff Betancourt during a telephone conversation that **"none of my attorneys would take the case because (as it seemed to her) it was a complicated medical malpractice legal matter concerning colon cancer, involving 911 issues, and that it was commenced and litigated by a pro se litigant already."**

101. Further, plaintiffs' efforts to obtain services of private law firms also proved ineffective, citing same policies, concerns or excuses prohibiting against taking a medical malpractice case that is commenced and litigated by a pro se civil litigant.

102. Moreover, both the Legal Aid Society and American Civil Liberties Union have expressed to plaintiffs that they do not represent litigants in a civil matter involving private companies. Still no legal aid organization can provide legal representation to plaintiffs only because they are not managed to handle all areas of the law and due to a lack of funds and internal policies governing their institutions.

103. **Therefore, again we reiterate to Judge Madden, that plaintiffs' only and last recourse is to obtain the assistance of the Court with respect to the issue at hand. We hope, hence, that the present motion is granted in its entirety, and that this Court finds a reasonable and convincing constitutional basis upon which to render the special relief plaintiffs request today.**

104. Notice also is taken of the fact that their motion is submitted unopposed and, thus, the matter rests solely upon the Court's power, authority, discretion and wisdom.

105. *However, we are unequivocally convinced, both as a matter of common sense and in reviewing the rights of plaintiffs under the law, that this complex 911 medical malpractice civil case presents constitutional rights issues of first impression that, we believe, have not been formerly decided and resolved by the courts, state and federal, and that there exist sufficient valid legal and moral reasons upon which to grant plaintiffs' special request thus. Insofar as the US Constitution explicitly demands that this New York State Supreme Court guarantees the Due Process rights of plaintiffs, both substantive and procedural, Judge Madden should come to reason and decide in plaintiffs' favor, thereby issuing a just and humane judicial act awarding plaintiffs* ***"appropriate and indispensable relief under the law and in the interest of Justice."***

**WHEREFORE**, I Alberto Betancourt plaintiff, acting personally and as next of kin and as Representative Administrator of the Estate of my dear mother Ada Rodriguez, deceased but alive in Spirit and present here today hence, respectfully request that such relief of court assigned attorney and an expert witness herein be granted together with any such further relief as to this Court seems just and proper under the law and in the "interest of Justice."

Respectfully yours,

Dated August 30, 2019

Alberto Betancourt
Ada Rodriguez, deceased in the Material World and Alive in Spirit
601 West 112th Street, Apt.5B
New York, New York 10025
(917) 623-6873

TO:

Kaufman Borgeest & Ryan LPP
Eldar Mayouhas
Attorneys for defendants Mount Sinai Hospital et al.,
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600

**EXHIBIT D**

# aida rodriguez

From: raberle@kalawny.com

To: zaplix@yahoo.com

Date: Monday, June 3, 2019, 04:31 PM EDT

Dear Mr. Betancourt, It was nice speaking to you earlier. I reviewed the facts with my partner and unfortunately, we are not interested in assuming the handling of the case you commenced on behalf of your mother. We are not giving legal advice as we are not representing you but we question if the correct diagnosis aprox one month sooner would have changed things. Very sorry for your loss. Best of luck! Thank you for consulting our firm, but this is not a case that our office can aassist you with. respectfully, rich aberle

Richard M. Aberle, Esq.

KASTON & ABERLE, LLP
259 Mineola Boulevard
Mineola, New York 11501
(516) 873-3040 - Office
(516) 873-5166 - Fax
e-mail: raberle@KAlawNY.com
Website: www.KAlawNY.com

This e-mail communication and any attachments are intended only for the addressees and are privileged, confidential and exempt from disclosure under applicable law. Consequently, inadvertent disclosure shall not waive the attorney-client privilege as to this communication, or otherwise. If you are not the intended recipient, disclosure of the contents of this communication to others is strictly prohibited. Please notify me if you received this email in error by replying to it and, after doing so, delete all copies of the e-mail and any attachments. Thank you.

**EXHIBIT E**

# Plaintiffs' Notice of Motion to Reargue and to Reconsider Judge Madden's Prior Order of May 23, 2019 and for Court Assigned Counsel, to be heard on August 1, 2019 at 10 am

From: alberto betancourt (zaplix@yahoo.com)

To: emayouhas@kbrlaw.com

Date: Monday, July 22, 2019, 11:58 PM EDT

Dear Attorney Mayouhas,

Enclosed please find "Plaintiffs' Notice of Motion to Reargue and to Reconsider Judge Madden's Prior Order of May 23, 2019 and for Court Assigned Counsel." I am including the attached Affidavit in Support of the Motion. The motion is to be heard on August 1, 2019 at 10 am before Judge Madden at the Courthouse 60 Centre Street. As we have agreed and you personally said it is fine of the parties to do so, this Motion is being served upon defendants via email and a hard copy is being mailed to your office as well.

Thank you for your attention of this matter.

Sincerely yours,

Alberto Betancourt
Ada Rodriguez
Plaintiffs Pro se

601 West 112th Street, Apt.5B
New York, New York 10025
zaplix@yahoo.com
(917) 623-6873

PLAINTIFFS' NOTICE OF MOTION TO REARGUE AND RECONSIDER PRIOR ORDER AND TO ASSIGN COUNSEL JULY 22, 2019.docx
16.6kB

PLAINTIFFS' AFFIDAVIT IN SUPPORT OF NOTICE OF MOTION TO REARGUE AND RECONSIDER PRIOR ORDER AND TO ASSIGN COUNSEL JULY 22, 2019.docx
32.4kB