UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADA RODRIGUEZ, Decedent, and ALBERTO
BETANCOURT, personally, and as Legal
Representative and Next of Kin of his mother
ADA RODRIGUEZ, Decedent,

                  Plaintiffs,

           -against-

UNITED STATES, et al.,

                Defendants.

1:21-CV-10679 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Alberto Betancourt, who is appearing *pro se*, filed this action on his own behalf and as the "Legal Representative and Next of Kin" of his deceased mother, Ada Rodriguez.[1] Plaintiff asserts claims under the Federal Tort Claims Act, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, the Administrative Procedure Act, and the James Zadroga 9/11 Health and Compensation Act of 2010, as well as under federal criminal statutes, 18 U.S.C. §§ 371 and 1031, and state law. The Court also construes Plaintiff's complaint as asserting claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff seeks damages, as well as declaratory and injunctive relief.

      Plaintiff names the following defendants: (1) the United States of America; (2) the United States Congress: (3) the United States Department Health & Human Services ("HHS"); (4) HHS Secretary Xavier Becerra; (5) the Centers for Disease Control and Prevention ("CDC"); (6) CDC Director Rochelle P. Walensky; (7) the World Trade Center Health Program ("WTCHP");

---

[1] In this Order, the Court refers to Plaintiff Alberto Betancourt as the sole plaintiff in this action.

(8) Acting Administrator of the WTCHP, John Howard, M.D.; (9) the National Institute for Occupational Safety & Health; (10) the State of New York; (11) the "New York State Congress" (the New York State Legislature); (12) the New York State Department of Health; (13) the New York City Department of Health & Mental Hygiene; (14) the "Mount Sinai Hospital Corporation"; (15) the Director of the WTCHP at Mount Sinai Hospital, Michael A Crane; (16) "Saint Lukes Hospital at Mount Sinai Hospital"; (17) the New York State Unified Court System; (18) New York State Supreme Court Justice Joan Madden; (19) New York State Supreme Court Justice Eileen A. Rokower; (20) Kauffman, Borgeest & Ryan LLP; (21) Eldar Mayouhas, Esq.; and (22) "John Doe/Jane Doe."

Plaintiff has also filed a "motion for court assigned counsel and expert medical witness doctor." (ECF 3.) By order dated January 6, 2022, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the reasons set forth below, the Court dismisses this action.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

     The Supreme Court of the United States has held that, under Rule 8, a complaint must

include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough

factual detail to allow the Court to draw the inference that the defendant is liable for the alleged

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court

must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true

"[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal

conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-

pleaded factual allegations, the Court must determine whether those facts make it plausible – not

merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

     Plaintiff alleges the following in his 379-page complaint: Plaintiff and his mother, Ada

Rodriguez, served as "volunteer emergency first responders" at Ground Zero at the World Trade

Center following the events of September 11, 2001. Rodriguez volunteered between September

2001 and December 2001; Plaintiff volunteered between September 2001 and October 2001. In

2002, both of them were treated at Mount Sinai Hospital "for various health conditions[,]

including physical, emotional and mental injuries." (ECF 2, at 31.) They both became patients of

Mount Sinai Hospital's World Trade Center Health Monitoring and Screening Program; Plaintiff

continues to be a patient in that program, and his mother, Rodriguez, was a patient in that

program until her death on November 16, 2015. As participants in that program, Plaintiff and

Rodriguez initially received "mental health therapy and a once-a-year medical screening or tests and other medical exams and treatment." (*Id.*) As time passed, however, the Government defendants and Mount Sinai Hospital "began to . . . limit those medical services." (*Id.*) Plaintiff asserts that the purpose of the program is to screen for and treat medical conditions associated with Ground Zero at the World Trade Center, including cancers.

### A.      Allegations about Ada Rodriguez

On September 17, 2015, Rodriguez arrived at Mount Sinai Hospital's emergency room, complaining about "severe unbearable pain[] and suffering[] in her abdomen . . . area, discomfort[] and pain in using her bowels, an inability to properly use her bowels . . ., vomiting and diarrhea, and other medical difficulties that she was experiencing at the time." (*Id.* at 17.) Rodriguez "was misdiagnosed and told that she had only a simple bacterial infection and was sent home very quickly." (*Id.*) Physicians took an x-ray of Rodriguez, which "'was dark and not clear at all'" and, despite the lack of clarity in the x-ray, they failed to take another x-ray. (*Id.*) Rodriguez was sent home despite "still complaining in agony of terrible abdominal pains and suffering." (*Id.*)

On October 23, 2015, Rodriguez was admitted to Mount Sinai Hospital, where, on or about October 27, 2015, she underwent surgery to treat her colon cancer – cancer that had been previously recognized as originating from Rodriguez's work at Ground Zero at the World Trade Center – and she was released five days later. Plaintiff alleges that physicians at Mount Sinai Hospital failed in their duty of care to Rodriguez, failed to diagnose Rodriguez's cancer early, and failed to admit Rodriguez again, after her surgery, to treat a pulmonary embolism that she developed after her surgery, which ultimately caused her death. On November 13, 2015, three days before Rodriguez's death, Plaintiff called a nurse at Mount Sinai to report that Rodriguez's blood pressure was low. The nurse told him, among other things, that "'Mount Sinai Hospital

does not want to readmit [Rodriguez] because if they do so[,] Medicare will not pay the hospital expenses or bills related to the medical services rendered to the patient as per existing Medicare policy.'" (*Id.* at 41.)

**B.    Allegations about Plaintiff**

Since 2002, Plaintiff has received treatment at Mount Sinai Hospital "for serious and permanent injuries he sustained at Ground Zero" in September 2001, including "nerve injuries, neck and spine injuries, muscle wear and tear injuries, muscle and brain spasms and other illnesses. . . ." (*Id.* at 34-35.) Michael A Crane, Director of the WTCHP at Mount Sinai Hospital, however, "suddenly and without notice and/or without affording [Plaintiff] an opportunity to respond or to appeal, unfairly[,] wrongfully[,] and unlawfully terminated and denied those medical services and treatments" for Plaintiff. (*Id.* at 35.) Plaintiff continues to suffer from those injuries. On or about October 27, 2015, security personnel removed Plaintiff from Mount Sinai Hospital while Rodriguez was undergoing surgery.

Plaintiff alleges that the government defendants have failed to supervise Mount Sinai Hospital. In addition, he alleges that he "has not been able to receive his medical treatment" from the WTCHP at Mount Sinai Hospital "due to his reasonable suspicion and fear that the . . . government defendants [are] acting together in conspiracy with Mount Sinai Hospital." (*Id.* at 69.) For these same reasons, Plaintiff believes that "his mother was wrongfully killed by the defendants." (*Id.*)

**C.    Allegations of discrimination**

Plaintiff alleges that the defendants' actions "were discriminatory and [that the defendants] are engaged in an unlawful practice that unfairly deprives persons of color or minorities[,] like [Plaintiff and Rodriguez,] who are Hispanic[,] of equal civil rights under the law." (*Id.* at 129.) He "sincerely believe[s] . . . that [he and Rodriguez] have been discriminated

against by defendants because [he and Rodriguez] are . . . Hispanic." (*Id.*) "[B]y reason of the . . . unlawful inhumane negligent and fraudulent actions of defendants at the . . . [9/11 World Trade Center] Health Program, the defendants have neglected, mistreated, abused, rejected and discriminated against [Plaintiff and Rodriguez] . . . on the basis of their race, color, ethnicity, [and] national origin." (*Id.*)

**D.    The pending state court action**

On November 17, 2017, Plaintiff filed a *pro se* action in the New York Supreme Court, New York County, arising from Rodriguez's death, and that action, *Betancourt v. Mount Sinai Hosp.*, Index No. 101628/2017 (N.Y. Sup. Ct., N.Y. Cnty.), is pending. In the present action before this Court, Plaintiff asserts claims against New York Supreme Court Justices who have presided over Plaintiff's state court action, arising from alleged irregularities in that action. He also sues Eldar Mayouhas, the attorney representing Mount Sinai Hospital in the state court action, and that attorney's law firm, Kaufmann, Borgeest & Ryan LLP, based on allegations arising from their actions associated with the state court action.

## DISCUSSION

**A.    Plaintiff cannot assert claims in this action on behalf of the estate of Rodriguez**

The Court must dismiss the claims that Plaintiff asserts on behalf of the estate of his deceased mother, Ada Rodriguez. The provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). Where the "administrator and sole

6

beneficiary of an estate with no creditors seeks to appear *pro se* on behalf of the estate," he may be permitted to do so because "[]he is in fact appearing solely on [his] own behalf, because []he is the only party affected by the disposition of the suit." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019) (citing *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010)). This is because "the assignment of the sole beneficiary's claims to a paper entity – the estate – rather than to the beneficiary h[im]self, is only a legal fiction." *Id.* (citing *Guest*, 603 F.3d at 21). But "[w]here there are other beneficiaries, 'an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors . . . will be affected by the outcome of the proceedings.'" *Guest*, 603 F.3d at 20 (quoting *Iannaccone*, 142 F.3d at 559).

Plaintiff does not allege that he is an attorney, or that he is the sole beneficiary of Rodriguez's estate. Thus, based on the facts offered in his complaint, Plaintiff may only assert claims on behalf of himself. Accordingly, the Court dismisses the claims that Plaintiff asserts on behalf of the estate of Rodriguez, without prejudice.

## B.   The Federal Defendants

The Court must dismiss Plaintiff's claims against the United States of America, as well as the United States Congress, the United States Department Health & Human Services ("HHS"), the Centers for Disease Control and Prevention ("CDC"), the World Trade Center Health Program ("WTCHP"), and the National Institute for Occupational Safety & Health, which are all entities of the federal government,[2] and against HHS Secretary Becerra, CDC Director Walensky, and Acting WTCHP Administrator Howard, in their official capacities as federal officials (collectively referred to as "the federal defendants"). The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including

---

[2] The WTCHP is a program operated by the CDC. *See* https://www.cdc.gov/wtc.

suits against federal agencies and individual federal officers in their official capacities, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

1.    **The Federal Tort Claims Act**

The Federal Tort Claims Act, codified at 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. § 1346(b)(1). "The proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015).

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may thereafter challenge the agency's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity. *See* § 2401(b). If no written final determination is made by the appropriate federal entity within six

months of the date of the claimant's filing of the administrative claim, the claimant may then

bring a FTCA action in a federal district court. *See* § 2675(a). While this exhaustion requirement

is jurisdictional and cannot be waived, *see Celestine v. Mount Vernon Neighborhood Health Ctr.*,

403 F.3d 76, 82 (2d Cir. 2005), "the FTCA's time bars are nonjurisdictional and subject to

equitable tolling," *Kwai Fun Wong,* 575 U.S. at 420.

Plaintiff has not alleged facts demonstrating that he filed an administrative claim under

the FTCA with a federal government entity for damages and subsequently received a final

written determination before bringing this action; he has also failed to allege facts showing that it

has been more than six months since he has filed such an administrative claim. Accordingly, to

the extent that Plaintiff seeks relief under the FTCA, the Court dismisses those claims under the

doctrine of sovereign immunity for lack of subject matter jurisdiction.[3] *See* Fed. R. Civ. P.

12(h)(3); *see also* 28 U.S.C. § 1915(e)(2)(B)(iii) (*sua sponte* dismissal of an IFP action that

"seeks monetary relief against a defendant who is immune from such relief").

## 2.    The Administrative Procedure Act

The Administrative Procedure Act ("APA") is another limited waiver of sovereign

immunity, allowing for judicial review of a federal agency's final administrative action; it does

not allow for monetary damages. *See* 5 U.S.C. §§ 702, 704; *Cnty. of Suffolk v. Sebelius*, 605 F.3d

135, 140-41 (2d Cir. 2010). Under the APA, a plaintiff may ask a federal court to hold that a final

federal agency action is unlawful or otherwise incorrect. The court can (1) "compel agency

---

[3] Plaintiff's invocation of the James Zadroga 9/11 Health & Compensation Act of 2010 does not provide a basis for subject matter jurisdiction of Plaintiff's claims against federal entities. That Act does "not waive sovereign immunity, but instead explicitly preclude[s] judicial review." *Wewe v. Mt. Sinai Hosp.*, 518 F. Supp. 3d 643, 649 (E.D.N.Y. 2021), *appeal dismissed sub nom.*, *Wewe v. World Trade Ctr. Health & Monitor Program*, No. 21-514, 2021 WL 3893774 (2d Cir. June 24, 2021).

action unlawfully withheld or unreasonably delayed[,]" and (2) set aside the agency's action, findings, and conclusions if the court finds them to be:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to [5 U.S.C. §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2). The proper defendant for an APA claim is either the United States of America, the agency whose action is being challenged, or the appropriate federal officer. 5 U.S.C. § 703. Judicial review of possible violations of Title VI of the Civil Rights Act of 1964 ("Title VI") by a federal agency can be conducted under the APA where a claim is within the scope of that statute. *See* 42 U.S.C. § 2000d-2; *United States v. Yonkers Bd. of Educ.*, 594 F. Supp.466, 472-73 n.11 (S.D.N.Y. 1984).

To the extent that Plaintiff asserts claims against the federal defendants under the APA, including any claims arising from their alleged violations of Title VI, Plaintiff's claims cannot be pursued under the APA, because he alleges no facts showing that he is challenging a final administrative action of any federal agency. In addition, he is precluded from seeking monetary damages as to such claims. Accordingly, to the extent that Plaintiff asserts claims against the federal defendants under the APA, including any claims for violations of Title VI, the Court dismisses them under the doctrine of sovereign immunity for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *see also* § 1915(e)(2)(B)(iii).

C.      **The State Defendants**

The Court understands that Plaintiff is asserting claims against the State of New York, "the New York State Congress" (the New York State Legislature), the New York State Department of Health, the New York State Unified Court System, and against Justices Joan Madden and Eileen A. Rokower, in their official capacities as state judges (collectively referred to here as "the State Defendants"), under 42 U.S.C. § 1983. The Court must dismiss these claims under the doctrine of Eleventh Amendment immunity.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Congress has not abrogated the States' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

The Eleventh Amendment precludes Plaintiff's claims under Section 1983 against the State of New York itself. *See Green*, 474 U.S. at 72-74; *Halderman*, 465 U.S. at 101-02. It also precludes his claims under Section 1983 against arms of the State of New York, such as the New York State Legislature, *Boyle v. New York Legislature*, No. 09-CV-0385, 2009 WL 10706852, at *2 (E.D.N.Y. Feb. 17, 2009), the New York State Department of Health, *Seifelnasr v. Medicad*,

11

No. 20-CV-5512, 2020 WL 4505679, at *2-3 (S.D.N.Y. Aug. 4, 2020), the New York State

Unified Court System, *see Gollomp*, 568 F.3d at 368, and Justices Madden and Rokower, in their

official capacities as state judges, with respect to Plaintiff's claims under Section 1983 for

damages, *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020).

Accordingly, the Court dismisses these claims under the doctrine of Eleventh Amendment

immunity for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *see also*

§ 1915(e)(2)(B)(iii).

**D.      Judicial immunity**

The Court must also dismiss Plaintiff's claims under Section 1983 against Justices

Madden and Rokower in their personal capacities, under the doctrine of judicial immunity.

Under this doctrine, judges are absolutely immune from civil suit for damages for any actions

taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11-12

(1991). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v.*

*Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). This is because "[w]ithout insulation from liability,

judges would be subject to harassment and intimidation. . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d

Cir. 1994). Moreover, as amended in 1996, Section 1983 provides that "in any action brought

against a judicial officer for an act or omission taken in such officer's judicial capacity,

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief

was unavailable." 42 U.S.C. § 1983.

There are only two sets of circumstances in which judicial immunity does not apply:

(1) when the judge takes action that is outside the judge's judicial capacity, or (2) when the judge

takes action, that, although judicial in nature, is in the absence of all jurisdiction. *Mireles,* 502

U.S. at 11-12. Generally, "acts arising out of, or related to, individual cases before the judge are

considered judicial in nature." *Bliven*, 579 F.3d at 210. "[T]he scope of [a] judge's jurisdiction

must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff's claims under Section 1983 against Justices Madden and Rokower arise from their actions while presiding over Plaintiff's pending state court civil action. For these reasons, the Court dismisses these claims under the doctrine of judicial immunity and as frivolous.[4] *See* § 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

## E.    Claims under *Bivens*

The Court construes Plaintiff's complaint as asserting claims for damages under *Bivens* against HHS Secretary Becerra, CDC Director Walensky, and Acting WTCHP Administrator Howard. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights. . . . The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). A plaintiff asserting claims under *Bivens* must allege facts showing a federal official's direct and personal involvement in the alleged constitutional violation. *See Reynolds v. United States*, No. 21-CV-4763, 2021 WL 3501201, at *2 (S.D.N.Y. Aug. 9, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020)).

---

[4] Plaintiff cannot properly seek injunctive relief against Justice Madden or Justice Rokower under Section 1983 because the statute permits injunctive relief against a judge only if a declaratory decree was violated or declaratory relief is unavailable and, here, Plaintiff may appeal those judges' decisions to the New York Supreme Court, Appellate Division, First Department, and to the New York Court of Appeals. *See generally Berlin v. Meijias*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

Plaintiff alleges no facts showing Defendants Becerra, Walensky, or Howard were directly and personally involved in violations of his constitutional rights. The Court therefore dismisses Plaintiff's claims under *Bivens* against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**F.      The New York City Department of Health & Mental Hygiene**

The Court also understands Plaintiff's complaint as asserting claims under Section 1983 against the New York City Department of Health & Mental Hygiene ("DOHMH"). The Court must dismiss these claims because an agency of the City of New York, such as DOHMH, is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Gertskis v. City of New York Dep't of Health & Mental Hygiene*, No. 13-CV-2024, 2014 WL 2933149, at *5 n.2 (S.D.N.Y. June 27, 2014) (DOHMH is not a proper defendant); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

In light of Plaintiff's *pro se* status and clear intention to assert claims against the City of New York, the Court construes the complaint as asserting claims against the City of New York. When a plaintiff sues a municipality under Section 1983, such as the City of New York, however, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be

subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York caused a violation of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against DOHMH and the City of New York for failure to state a claim on which relief may be granted.[5] *See* § 1915(e)(2)(B)(ii).

## G.   Claims under Section 1983 against the remaining defendants

The Court must dismiss Plaintiff's claims under Section 1983 against the remaining defendants – (1)"Mount Sinai Corporation"; (2) Michael A. Crane, Director of the World Trade Center Program at Mount Sinai Hospital; (3) "Saint Lukes Hospital at Mount Sinai Hospital"; (4) Kauffman, Borgeest & Ryan LLP; (4) Eldar Mayouhas, Esq.; and (5) "John Doe/Jane Doe."

To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins,* 487 U.S. 42, 48-49

---

[5] To the extent that Plaintiff asserts that government officials violated his constitutional rights by not investigating malfeasance with respect to how the World Trade Center Health Program or Mount Sinai Hospital is operated, he fails to state a claim upon which relief can be granted because government officials have no constitutionally-imposed duty to investigate or enforce the law. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989).

(1988): *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor.") (internal quotation marks and citation omitted, italics in original). Private entities are therefore not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability in the following three situations: (1) when the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the state provides significant encouragement to the entity, the entity willfully participates in joint activity with the state, or the entity's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted).

The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the state. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity acted as a state actor for the purpose of Section 1983 liability, a court must first "identify[] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted). The fact that an entity receives public funds does not turn private

action into state action, and acts of private contractors do not become acts of the government because of the contractors' engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841.

In addition, absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a party in a state civil action by private counsel or a private law firm does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983. *See Grant v. Hubert*, No. 09-CV-1051, 2009 WL 764559, at *1 (E.D.N.Y. Mar. 20, 2009) ("It is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law."); *Jaffer v. Patterson*, No. 93-CV-3452, 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) ("Private law firms and attorneys . . . are not state actors for section 1983 purposes."), *appeal dismissed*, 43 F.3d 1457 (2d Cir. 1994) (table decision).

Plaintiff has alleged no facts showing that any of the remaining defendants acted as state actors when they allegedly injured him. "Mount Sinai Corporation" and "Saint Lukes Hospital at Mount Sinai Hospital" are private entities, and Michael A. Crane is an employee of one of those private entities. Eldar Mayouhas, Esq., is an attorney employed by Kauffman, Borgeest & Ryan LLP, a private law firm that is representing Mount Sinai Hospital in Plaintiff's pending state court litigation. Plaintiff also alleges no facts showing that "John Doe/Jane Doe" is a state actor. The Court therefore dismisses Plaintiff's claims under Section 1983 against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## H.     Remaining claims under Title VI

The Court further dismisses Plaintiff's claims under Title VI against the defendants who are not federal defendants. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Within the State of New York, there is a three-year limitations period to bring a claim under Title VI. *See Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011) (summary order) (citing *Morse v. Univ. of Vt.*, 973 F.2d 122, 126 (2d Cir. 1992)). Such a claim accrues "when a plaintiff knows or has reason to know of the injury which forms the basis of his" claim. *Khalil v. Pratt Inst.*, No. 16-CV-6731, 2017 WL 8813136, at *6 (E.D.N.Y. Dec. 11, 2017), *report & recommendation adopted*, 2018 WL 705306 (E.D.N.Y. Feb. 2, 2018). This limitations period may be subject to equitable tolling, including when the plaintiff can demonstrate that "a defendant fraudulently conceals the existence of a cause of action." *Khalil*, 2018 WL 705306, at *2.

To the extent that Plaintiff asserts any claims under Title VI against the defendants who are not federal defendants, arising from events that allegedly occurred on or before the date of Rodriguez's death on November 16, 2015, Plaintiff's claims are untimely. The applicable limitations period expired, at the latest, on or about November 16, 2018, and Plaintiff filed his complaint years later, on December 14, 2021. In addition, Plaintiff alleges no facts showing why the limitation period should be equitably tolled. Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be granted because they are clearly untimely. *See* § 1915(e)(2)(B)(ii); *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[A]lthough the statute of limitations is ordinarily an affirmative defense that the defendant must raise at the pleadings stage . . . , district courts may dismiss an action *sua sponte*

on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citations omitted).

Even if Plaintiff's untimely claims under Title VI were timely, and to the extent that Plaintiff asserts other claims under Title VI arising from the alleged ongoing denial of treatment by Mount Sinai Hospital officials, his complaint fails to state a claim on which relief may be granted under Title VI. To state a claim under Title VI, a plaintiff must allege facts showing: (1) "the defendant discriminated against him on the basis of race[,] [color, or national origin]; (2) "that that discrimination was intentional"; and (3) "and that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted); *see Bailey v. N.Y. Law Sch.*, No. 19-3473, 2021 WL 5500078, at *4 (2d Cir. Nov. 24, 2021) (summary order). Here, Plaintiff alleges no facts showing that Mount Sinai Hospital officials have discriminated against him because of his race, color, or national origin; he merely alleges that he has concluded that they have discriminated against him because of his race. "These allegations are simply not enough to support [Plaintiff's] conclusory and speculative assertion that []he was targeted on the basis of [his] race," color, or national origin, for the purpose of stating a claim under Title VI. *Jackson v. Wells Fargo Home Morg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order), *cert. denied*, 141 S. Ct. 1381 (2021). Accordingly, for all the reasons discussed in this section, the Court dismisses Plaintiff's remaining claims under Title VI for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

I.  **Private prosecution**

The Court must dismiss Plaintiff's claims under federal criminal law. Plaintiff cannot initiate the arrest and prosecution of an individual in this court because "the decision to prosecute

is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against a defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## J.     The Anti-Injunction Act

Plaintiff asks this Court to intervene in his pending state court litigation. (ECF 2, at 84, 115, 117.) This relief is prohibited, however, by the Anti-Injunction Act, 28 U.S.C. § 2283. This Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, "any injunction against state court proceedings otherwise proper . . . must be based on one of the specific statutory exceptions [in the Act] if it is to be upheld." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). State-court proceedings "should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately" the Supreme Court of the United States. *Id.* The Act "is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977).

Plaintiff has alleged nothing to suggest that any of the exceptions to the Act's prohibition against federal court intervention into state court proceedings applies. The Court therefore

dismisses Plaintiff's claims in which he asks this Court to intervene in his pending state court litigation, as prohibited by the Anti-Injunction Act.[6]

### K.    Claims under state law

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### L.    The Court denies Plaintiff leave to amend

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

---

[6] To the extent that Plaintiff is attempting to remove the action that he brought in state court to this court, he may not do so, as only a state court defendant may remove an action to a federal district court. *See* 28 U.S.C. § 1446(a).

**CONCLUSION**

The Court dismisses this action for the reasons discussed above. The Court denies Plaintiff's pending motion as moot. (ECF 3.)

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff Alberto Betancourt and note service on the docket.

SO ORDERED.

Dated:    January 31, 2022
          New York, New York

                                          /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge